Rafey Balabanian (SBN 315962)
rbalabanian@edelson.com
Lily Hough (SBN 315277)
lhough@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

*Counsel for Plaintiff and the Putative Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| JANE DOE, a minor, represented by her father and next friend, JOHN DENNIS, individually and on behalf of all others similarly situated, | Case No. |
| *Plaintiff,* | **CLASS ACTION COMPLAINT FOR:** |
| v. | (1) **Violation of Cal. Bus. & Bus. Prof. Code § 17200,** *et seq.* |
| ROBLOX CORPORATION, a Delaware corporation, | (2) **Violation of Cal. Civ. Code. § 1750** *et seq.* |
| *Defendant.* | (3) **Fraud** |
| | (4) **Conversion** |
| | (5) **Unjust Enrichment** |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Jane Doe,[1] a minor, represented by her father and next friend, John Dennis, brings this Class Action Complaint and Demand for Jury Trial against Defendant Roblox Corporation ("Roblox") to seek compensation for Defendant's deceptive and unfair conduct. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief.

---

[1]    Plaintiff, a minor, hereby respectfully requests the Court's permission to proceed anonymously, at least for the purpose of pre-trial public filings. The Ninth Circuit does not appear to require a plaintiff to obtain leave to proceed anonymously. *See Doe v. Penzato*, No. 10–cv–5154–MEJ, 2011 WL 1833007, at *4 (N.D. Cal. May 13, 2011) ("Although some Circuits require plaintiffs to obtain leave of the court before filing an anonymous pleading, the Ninth Circuit does not."). Should this Court determine that Plaintiff must seek leave to proceed anonymously, she will file the appropriate motion.

CLASS ACTION COMPLAINT

## NATURE OF THE ACTION

1.      Defendant Roblox is one of the largest and fastest growing gaming platforms in the world, designed to bring users together in a virtual universe, or "metaverse." Developers create games and experiences, which are then populated by user-created avatars. Users play games, explore universes, and purchase items made by developers in a virtual marketplace. Roblox makes money when users purchase digital content for their avatars to use in Roblox's virtual universe.

2.      While the COVID-19 pandemic forced the closure of brick-and-mortar businesses across the globe, the market for Defendant Roblox's product surged, as the digital world offered the only escape to people forced to stay at home. Roblox's revenue jumped 68% in the first nine months of 2020, while its userbase surged 82%.

3.      The vast majority of those users share one characteristic: *they are children.*

4.      At least 70% of Roblox's users are under the age of 18, with more than half of all of its users being under the age of 13. And those children spend an enormous amount of time and money exploring the Roblox world day in and day out.

5.      However, even though the loyalty of millions of children has turned Roblox into a wild success during a time when many other businesses have suffered, Roblox systematically takes advantage of them.

6.      Despite its short and relatively new existence, Roblox has already earned significant negative attention as a dangerous space for its predominately child-focused userbase. For instance, there is a legion of complaints and publications describing how Roblox's child users are exposed to predatory conduct from other—primarily adult—users on the platform, including, "[s]imulated violence, simulated sex, simulated rape . . . A lot of these things are happening on these platforms, and people are unaware that it's happening."[2] The platform is also known to attract hackers and financial predators looking to steal in-game currency from other players.

---

[2]      James Crummel, *Roblox risks: hidden dangers in your child's favorite games*, ABC27.COM (Feb. 25, 2020, 10:54 AM), https://bit.ly/3hNRvHQ.

7.    But the predatory conduct taking place on Defendant's platform reaches far beyond that which occurs at the hands of other nefarious users and third parties. Defendant itself seeks to fleece its own users in a clever content deleting scheme.

8.    Roblox faces a problem of competing financial incentives: trademarked, vulgar, or otherwise objectionable content is in high demand and genuinely valuable to the platform's bottom line, but so is the perception that Roblox respects trademarks and maintains community standards. Roblox designed a content deletion, disguised as "content moderation," scheme to escape this double-bind and to ensure a financially beneficial outcome for Roblox.

9.    The trick is simple: Roblox encourages users to purchase in-game content on the platform which it has made available—and from which Roblox earns real money—without performing any meaningful oversight to ensure that the content coming into its marketplace complies with the platform's policies. *After* its users have paid for their purchases, Roblox then performs sham "content moderation" by deleting content which it has determined violates its policies. Roblox then refuses to refund anything to its users for their deleted content. When users report that their content has disappeared in error and demand refunds, Roblox cleverly deflects its irresponsible profit-seeking behavior by alleging that the content violated the platform's policies, without any actual detail, offering Roblox cover to engage in a fraudulent content deleting scheme.

10.    Even more problematic is Defendant's deletion of content that does not appear to violate any policies whatsoever, and appears to only be an arbitrary choice to remove content from circulation, thereby creating a demand to buy new content.

11.    The result is a win-win for Roblox. Removing content that may on its face violate the platform's policies earns Roblox the appearance of content moderation, while dovetailing with Roblox's financial interests. The scheme allows Roblox to deflect blame for deleting users' content without issuing refunds, forcing users to make new purchases to replace their in-game experience.

12.    Defendant Roblox must be held accountable for its content deleting scheme. This class action complaint seeks to compensate users for in-game content that they purchased on

Defendant Roblox's platform, utilizing Defendant's currency, and which Defendant systemically deleted under the cover of "content moderation."

**PARTIES**

13.     Plaintiff Jane Doe and her father and next friend John Dennis are natural persons and residents of the State of Michigan.

14.     Defendant Roblox Corporation is a corporation existing under the laws of the State of Delaware, with its principal place of business located at 970 Park Place, San Mateo, California 94403. Roblox regularly conducts and transacts business in this District and throughout the United States.

**JURISDICTION AND VENUE**

15.     This Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332(d)(2) because, as to all proposed Class members, (a) at least one member of the Class, which consists of at least 100 members, is a citizen of a different state than Defendant, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to this action.

16.     This Court has personal jurisdiction over Defendant because it transacts business in this State, and because the tortious conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this State.

17.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendant conducts business transactions in this District, and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

18.     Venue is proper in this District for Plaintiff's claims under Cal. Civ. Code § 1780(d) for the reasons stated in the accompanying Declaration of Lily E. Hough.

**FACTUAL BACKGROUND**

*The Roblox Platform*

19.     Created in 2004, Roblox is an interactive "metaverse" that creates a "new category of human interaction." An average of 36.2 million people from around the world migrate to Roblox

CLASS ACTION COMPLAINT                                4

daily to interact in a 3D digital world that is entirely user generated, built by a community of nearly 7 million developers. More than half of these users are under the age of 13, and users average 2.6 hours on the site daily, more than twice as much time as users spend daily on the popular social network TikTok.

20.    The platform consists of two primary layers: the Roblox Client and the Roblox Studio. The Roblox Client is the application that allows users to explore 3D digital worlds through the eyes of an avatar, which each user customizes with clothing, gear, animations, simulated gestures, emotes, or other objects. The Roblox Studio is the toolkit developers and creators use to build, publish, and operate 3D experiences and content for the Roblox Client, including the aforementioned objects, which they sell in a user-to-user marketplace known as the Avatar Shop. Defendant earns money, in part, by taking a commission from user-to-user transactions in the Avatar Shop, as well as by offering its own proprietary content for purchase in the Avatar Shop. *See* Figure 1.



(**Figure 1**)

21.     Underscoring everything on the platform, and representing the core revenue generator for Roblox, is the exclusive in-game currency, known as "Robux." Roblox offers for sale various quantities of its in-game currency. For instance, players can purchase 400 Robux for $4.99 or 10,000 Robux for $99.99. Users receive additional promotional Robux if they subscribe and purchase Robux on a re-occurring basis every month.

22.     All purchases and transactions on Roblox are carried out through Robux. Robux can then be converted back into real-world currency via the Developer Exchange Program, or it can be maintained on the platform and used to reinvest in developer tools, promotions, or other purchases on the platform.

23.     Defendant Roblox benefits financially from transactions made on its platform. Not only does Roblox sell Robux in-game currency for real money, but it also takes a 30% commission from every user-to-user transaction in the Avatar Shop.

### The Hidden Dangers Lurking in the Roblox Community

24.     With most schools in the United States operating remotely in the last year and playdates on hold due to the COVID-19 pandemic, kids have increasingly turned to the Roblox platform for community. According to a survey conducted by Roblox, 52% of teens said they spent the same or more time with real-life friends via Roblox and other online game and voice/chat programs than in person, and 40% surveyed said the platform improved their online friendships. Users can communicate via the live chat feature, where chats for players 12 and under are filtered.

25.     Throughout the company's short history, however, there have been incidents of lewd behavior and failures of the program's systems allegedly designed to monitor such behavior. Such scandals include so-called "condo games" showing nude avatars engaging in forms of intercourse and using profane language. One journalist observed that one virtual condo game "den showcased an array of sex toys. The private rooms upstairs were furnished only with beds. The basement was a torch-lit sex dungeon."[3]

---

[3]     Burt Helm, *Sex, lies, and video games: Inside Roblox's war on porn*, FASTCOMPANY (Aug. 19, 2021), https://bit.ly/346tnIA.

26.     The Roblox platform—especially these "condo games"—provide a breeding ground for online predators looking to groom children for sexual abuse. Indeed, journalists have identified adult condo game players going as far as trying to start separate, private conversations with underage players to share or solicit sexualized photos. One such "condo game" operator admitted to *FastCompany* that "he actually profits from predatory activity by soliciting sexualized photos from female users he meets on Discord and packaging those photos for interested buyers."[4]

27.     Roblox created structures to monitor for and remove so-called "condo games" like this, but the public quickly identified various techniques to get around the filters. Journalists have chronicled the "war on porn" taking place on the Roblox platform, which it is largely losing.

28.     Notwithstanding the pervasive user-on-user abuse taking place on Roblox's platform, the company itself also preys on its vulnerable customers. At the core of Roblox's business model is a fraudulent scheme designed to take advantage of children by routinely deleting their content without providing any refund or credit, under the cover of "content moderation."

### *The Roblox Content Deleting Scheme*

29.     Roblox players purchase items for their avatars through the Avatar Shop. There, users can purchase and equip their avatar with anything from a new hair style to an eye patch, clothing, and more fantastical items like horns and weapons.

30.     Users and developers sell items in the Avatar Shop. Items range in price from one Robux up to several million Robux for certain items such as limited-edition items offered for sale by Defendant Roblox itself. *See, e.g.*, Figures 2-3.



(**Figure 2**)                    (**Figure 3**)

---

[4]     *Id.*

31. Roblox users expect that the items they purchase through the Avatar Shop are usable on the Roblox platform and will remain in their inventory absent any violative conduct by the user. Implicit in this expectation is the understanding that content violating trademarks or the platform's community standards would not be available for purchase in the Avatar Shop.

32. However, Roblox employs extremely lax content moderation (if any at all) when content is initially added to the Avatar Shop for purchase. Instead, Roblox elicits the appearance of content moderation by taking allegedly violative content down, but only after users have already purchased it. As a result, users sometimes have only a fleeting moment to enjoy their newly-purchased items from the Avatar Shop. Roblox has deleted items days, months, and even years after the user has made the purchase. Worst of all, Roblox refuses to refund or credit users' accounts after it deleted these items.

33. Roblox supposedly deletes items deemed inappropriate or in violation of intellectual property rights such as clothing items featuring the Nike logo. But Roblox does nothing to prevent these items from being sold in the Avatar Shop in the first place. Rather than preventing users from selling and purchasing items through the Avatar Shop that allegedly violate the platform's policies, Roblox's structure is designed to "moderate" items *only after* thousands of users purchased and paid for them.

34. Roblox's sham "content moderation" is nothing more than a cover for its attempt to generate additional revenue from its users—which are predominantly children. In fact, Roblox routinely removes content that doesn't on its face appear to violate *any of the platform's policies*, and its structure for "moderating" content fails to do so with consistency, accuracy, or any transparency. When it takes the drastic measure of removing purchased content from a user's inventory (rendering it unusable), Roblox offers no explanation of what policy the item actually violated, how it generally makes such determinations or how to appeal its decisions.

35. Unsurprisingly, the majority of Defendant's item removals are capricious and are untethered from any platform policy violations. Deleted items are often not offensive, inappropriate, or infringe upon any trademark or intellectual property. Indeed, users have publicly complained that

Roblox has deleted items even if "there was nothing inappropriate about them to get deleted." *See* Figure 4.

generateID 8 months ago

> That is complete BS. My daughter paid 84 Robux for pants and they were just deleted. There was nothing inappropriate about them to get them deleted. There should be a warning or refund system. Otherwise, they could just keep deleting everything for no reason to force people to buy more things.

**(Figure 4)**

36.     Of course, Defendant's decision to sell first and "moderate" later has obvious monetary benefit for Roblox. By the time Defendant has deleted items from the Avatar Shop and users' inventories, it has already taken its 30% commission from the sale. Roblox retains all monetary benefit after deleting items from its platform while its players are left with nothing.

37.     Users and developers often re-introduce previously deleted items on the Avatar Shop—including items previously removed for violating third-party trademarks—and Roblox does nothing to "moderate" this content before users are able to find it again in the Avatar Shop. This design flaw is no accident; Roblox hopes that users will replace and re-purchase deleted items so that it can, once again, realize a commission from the sale. To illustrate, Roblox deleted an item called "Black Nike Tank Top" from the Avatar Shop. The developer then released and sold an *identical item* to Roblox users three days later—a black tank top with a Nike logo—and Roblox, once again, benefited from each transaction. *See* Figures 5-6.



**(Figure 5)**



**(Figure 6)**

38.     Furthermore, Roblox takes no additional actions to "moderate" developers who consistently create content for sales in the Avatar Shop, even if Roblox continuously deletes that developer's items. Roblox knows and appreciates that the biggest offenders of its platform's policies are also its "golden goose" that drives its revenue.

39.     If true content moderation were Roblox's goal, it would take some measures to remove developer accounts that consistently create content in violation of Roblox's policies. But Roblox allows these accounts to thrive. For instance, one such group of developer-sellers, which identifies itself as "Solo Clothing Maker," has created a plethora of items for sale, but a large portion of its inventory has been removed subject to Roblox's content "moderation." *See* Figure 7. Yet, Roblox permits this group—and many like it—to operate and sell items in the Avatar Shop with impunity.



(**Figure 7**, showing two entire pages featuring items that have been deleted from one developer. This developer has many more pages showing content deleted by Roblox.)

40.    Roblox also focuses its content moderation scheme on the bestselling and most popular items from the Avatar Store. In the case of the aforementioned "Solo Clothing Maker" group, Roblox "moderated" eight of its top 10 bestselling items. *See* Figure 8.



(**Figure 8**)

41.     Roblox identifies popular items with a large following in part based on the number of users that have added the item as a favorite. A Roblox user can add an item they like as a favorite by clicking on the "star" icon adjacent to the product in the Avatar Shop. As shown in <u>Figures 9-10</u>, for example, Roblox routinely deletes items where over 1 million users (and potentially millions more) have shown interest in an item and added it as a favorite.



(**Figure 9**)



(**Figure 10**)

42.     If its content moderation scheme wasn't enough, Roblox goes even further to intentionally lure users into purchasing items that it *knows* violate its policies and will inevitably be removed from the platform. Roblox recommends similar items next to previously "moderated" items which often contain the same intellectual property violations. For instance, next to a previously removed "Black Nike Tank Top" Roblox recommends that a user also purchase a "vintage gray nike sweater" and other clothing items containing Nike logos. *See* <u>Figure 11.</u>

(**Figure 11**)

43.     The best descriptions of Roblox's content moderation scheme come from the company's own employees. One former employee recounted: "[t]he manager that was in charge of us demanded that we have a set quota on the amount of content and accounts moderated each day, even going as far as to banning users off the platform who clearly have done nothing that violated our Trust & Safety policies . . . . The way we were required to treat the platform's users with clearly false reasons of termination of their service just to meet the required quota that managers told us to meet if we couldn't reach it with legitimate reasons was the last straw."[5]

44.     There is also a legion of consumer complaints illuminating the financial incentives behind Roblox's content moderation scheme, which leads children to repeatedly lose items and re-purchase them. For example, one parent complained that her child purchased 300 Robux worth of items only for Roblox to remove the items. *See* Figure 12. Other consumers have complained about the "loss of previous digital purchased items on Roblox," and Roblox's refusal to "help recover account items worth hundreds of dollars." *See* Figures 13-14.

---

[5]     *Working at Roblox*, Glassdoor.com (Feb. 16, 2021), https://bit.ly/3bL3ySu.

1

2

3

**Most Recent Customer Review**

Amber Y

 ⭐ ☆ ☆ ☆ ☆ (1 star)          12/27/2020

Do not buy roblox money for your children. My
child bought a outfit for 300 roblox and it was
deleted so she was out everything she bought.
What a scam.

(**Figure 12**)

**Complaint Type:** Problems with Product/Service       **Status:** BBB unable to locate business ⑦

12/31/2019

Roblox committed fraud through enticement of a minor child and to the detriment of a
tender-age, minor child's understanding of complicated rules and regulations written by
Roblox. It is without argument that Roblox is a game primarily designed for minor children.
It is a fact that Roblox charges real money for children to purchase upgrades in the game
to enhance player experience. Roblox creates or allows situations to occur that allow
Roblox to wrongly justify a termination of account or suspension of account or loss of
previous digital purchased items on Roblox, thus creating fraud against a minor, and/or
credit card fraud, and/or computer - internet fraud, and/or fraud by extortion as Roblox
reinstates accounts but forces the minor child (user / player) to re-purchase all previous
items in order to regain previous role status and upgrades for optimal game enjoyment.
This kind of activity is not only an ethical breach, but likely violates state and federal
criminal laws and laws...

(**Figure 13**)

**Complaint Type:** Problems with Product/Service       **Status:** Answered ⑦

09/09/2019

Company refuses to help recover account items worth hundreds of dollars. This is a
corporate plot intent on draining my wallet further with a brick wall and a U-Turn sign
every time I try to contact them. I am reaching out to BBB because the corporation is
sending scripted messages and unprofessionally handling this. Having a bad community
is not a reason to have unhelpful responses to issues. The company policy says we can
only be recompensated once ever if anything happens to our account and states that
they expect our accounts to be safe, but I have experienced coercion and blackmail and
there was no way to solve this issue. I sought help, and I got ignored. I wish for a
response.

(**Figure 14**)

## PLAINTIFF JANE DOE'S EXPERIENCE

45.     Plaintiff Jane Doe is a minor who plays Roblox. Plaintiff has personally purchased

hundreds of Robux through the use of Roblox gift cards that were under her complete ownership

and control.

46.     Plaintiff utilized her in-game currency to make numerous purchases, including purchasing clothing for her avatar. Among those purchases were pajamas and jeans.

47.     Plaintiff made these purchases with the understanding that the items would remain in her inventory and be usable on the platform. She reasonably believed that they would be deleted for so-called content moderation only if she personally misused them in violation of the platform's policies.

48.     Unfortunately, Roblox deleted several of Plaintiff's purchased items without warning or explanation. The deleted items did not contain offensive or trademarked content.

49.     And, importantly, Roblox did not offer, and refused to provide when Plaintiff requested, a refund for the deleted content.

## CLASS ALLEGATIONS

50.     **Class Definition:** Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of herself and the Class defined as follows:

> All Roblox users who purchased content on the Roblox platform that was later deleted.

Excluded from the Class are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

51.     **Numerosity:** The exact number of members of the Class is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has refused to reimburse thousands of consumers like and including Plaintiff.

52.     **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to, the following:

      a.   Whether Defendant's actions were likely to deceive members of the public and constituted a fraudulent business practice under California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200);

      b.   Whether Defendant's actions constitute fraud;

      c.   Whether Defendant's actions constitute conversion; and

      d.   Whether Defendant was unjustly enriched.

53.     **Typicality:** Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and members of the Class sustained damages arising out of Defendant's uniform wrongful conduct.

54.     **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff's claims are representative of the claims of the other members of the Class. That is, Plaintiff and members of the Class sustained damages as a result of Defendant's uniform conduct. Plaintiff also has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor her counsel have any interest adverse to the Class.

55.     **Policies Generally Applicable to the Class:** This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward members of the Class, and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's practices challenged herein apply to and affect

members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

56.     **Superiority:** This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions ensured.

57.     Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned through additional investigation and discovery.

**FIRST CAUSE OF ACTION**
**CALIFORNIA UNFAIR COMPETITION LAW,**
**CAL. BUS. & PROF. CODE § 17200,** *et seq.*
**(On Behalf of Plaintiff and the Class)**

58.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

59.     Defendant Roblox violated California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200 *et seq.*, by engaging in the fraudulent and unfair business acts and practices alleged, as further specified below.

60.     The UCL prohibits any unlawful, unfair, or fraudulent business act or practice, including the employment of any deception, fraud, false pretense, false promise, misrepresentation,

or concealment, suppression, or omission of any material fact. A business practice need only meet one of the three criteria (unlawful, unfair, or fraudulent) to be considered a violation of the statute.

61.     Defendant's business practices are unlawful because, as detailed below, they constitute numerous violations of the CLRA and Cal. Bus. & Prof. Code § 7160.

62.     Defendant's business practices are fraudulent because its representations about its content moderation policies were likely to deceive the general public and because Defendant falsely represented that the items available for purchase on its platform had characteristics or were of a particular standard that they were not. The integrity of content is a material term of a transaction on Defendant's platform because it directly affects the sustainability and usability of the content, which in turn affects a consumer's choice of, or conduct regarding, whether to purchase an item; thus, any deception or fraud related to the integrity of the content is materially misleading. Defendant's fraudulent business practices include advertising items for purchase that it intended to delete later (or had reason to believe would be deleted later under its content moderation scheme) and misrepresenting the nature of its content deletion as content "moderation".

63.     Defendant's business practices are also unfair. A business act or practice is "unfair" under the UCL if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims. A business act or practice is also "unfair" under the UCL if the conduct or practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. Defendant has engaged in unfair business practices, specifically, by failing to adequately scrutinize content for policy violations *before* the content could be purchased (by its child-focused userbase), then deleting the content after the fact and refusing to issue refunds. This conduct is unfair because the injuries caused by it are not outweighed by any countervailing benefits to consumers or competition, and the injury is one that consumers themselves could not reasonably have avoided. Given the lack of transparency about Defendant's content moderation standards and the information asymmetry between Defendant and consumers regarding how (and when) Defendant would perform so-called content "moderation," Defendant knew or had reason to know

that consumers could not have reasonably known or discovered the integrity of the content (and the likelihood that it would be deleted for violating the platform's policies) before they purchased it.

64.     Defendant knew or had reason to know that consumers would be injured if it deleted content after consumers purchased it.

65.     Plaintiff has standing to bring these claims under the UCL because she was injured and lost money or property, including but not limited to money paid for Roblox content, as a result of Roblox's fraudulent and unfair business practices. Among other things, Plaintiff would not have bought the content that she did had she known about Defendant's content moderation scheme, or she would have paid a lower price for the content she did purchase.

66.     Defendant's fraudulent, unlawful, and unfair conduct occurred during the sale of a consumer product, and therefore occurred in the course of Defendant's business practices.

67.     Defendant's fraudulent, unlawful, and unfair conduct directly and proximately caused Plaintiff's and the Class's damages.

68.     But for Defendant's conduct as described herein, Plaintiff and the Class would not have purchased the content that was later deleted.

69.     Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff seeks equitable relief to prevent the continued use of Defendant's unfair and fraudulent practices and to restore to the Class all money Defendant has acquired by means of its fraudulent and unfair business practices.

**SECOND CAUSE OF ACTION**
**Public Injunctive Relief for Violations of**
**California's Consumer Legal Remedies Act**
**(On Behalf of Plaintiff and the Class)**
**(Cal. Civ. Code. § 1750 *et seq.*)**

70.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

71.     Plaintiff brings this Count on behalf of the general public and/or for the primary benefit of the general public, and her benefit only incidentally as a member of the general public, to enjoin conduct injurious to the general public.

72.     California's Consumer Legal Remedies Act ("CLRA") sets forth a list of prohibited "unfair or deceptive" practices in a "transaction" relating to the sale of "goods" or "services" to a "consumer."

73.     The Legislature's intent in promulgating the CLRA is reflected in Section 1760, which mandates that its terms are to be "liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection."

74.     The content available in Defendant's Avatar Shop constitutes a "good" under Cal. Civ. Code § 1761(a).

75.     Plaintiff is a "consumer" under Cal. Civ. Code § 1761(d) and has suffered damage as a result of the use or employment by Defendant of the methods, acts, or practices set forth below, which are unlawful under Cal. Civ. Code § 1770(a).

76.     Plaintiff, on behalf of the general public, requests that the Court—to protect and enforce important public rights and restrain conduct injurious to the general public—enter a permanent injunction prohibiting Defendant, its agents, servants, employees, and all person acting in concert with it, from engaging in the following conduct with respect to the sale of the content:

(a)     representing that the content in the Avatar Shop has the approval of Roblox and/or a use or benefit that it does not (or failing to disclose that it does not), in violation of Cal. Civ. Code §§ 1770(a)(2), (5), (7) & (16);

(b)     advertising the content in the Avatar Shop for use on the Roblox platform with the intent to later deprive consumers of the use of their purchased content, in violation of Cal. Civ. Code § 1770(a)(9);

(c)     representing that the purchase of content in the Avatar Shop confers the right to keep and use the content, when it does not (or failing to disclose that it does not), in violation of Cal. Civ. Code § 1770(a)(14); and/or

(d)     offering to enter into contractual relationships with the general public governed by unconscionable contract clauses, in violation of Cal. Civ. Code § 1770(a)(19).

77.     Defendant has exclusive knowledge about the integrity of the content in the Avatar Shop, that is, whether the content violates Defendant's policies and/or whether it could be deleted after it is purchased from the Avatar Shop. The risk that content available in the Avatar Shop will be "moderated" and thus deleted after being purchased is not conspicuously disclosed to users, and Defendant's methodology and policies for "moderating" content are not transparent.

78.     The integrity of the content in the Avatar Shop is material information about the content because a reasonable consumer would not purchase the content (or would pay less for it) if they were aware that the content was at risk of being deleted, at no fault of the consumer. Thus, Defendant had a duty to disclose to users—in a manner sufficient to place both children and their parents on notice— the fact that the content in its Avatar Shop had not undergone any content review, would be purchased at the user's own peril, was at risk of being deleted after the purchase point, would be rendered unusable, and would not be eligible for a refund. Defendant failed to disclose these material facts for which Defendant had exclusive knowledge and which were not reasonably accessible to consumers, including Plaintiff.

79.     As a result of Defendant's unlawful conduct, Plaintiff suffered economic damages as stated herein.

80.     Plaintiff presently seeks only injunctive relief under this count. If Defendant fails to remedy the violations alleged herein within 30 days of receipt of this notice of violations, Plaintiff will amend this Complaint to add claims for actual, punitive, and statutory damages pursuant to the CLRA.

81.     In addition to the public injunctive remedies set forth above, Plaintiff also seeks an award of attorneys' fees pursuant to the private attorney general doctrine, codified at Cal. Civ. Proc. Code § 1021.5, for enforcing important rights "affecting the public interest."

### THIRD CAUSE OF ACTION
### FRAUD
### (On Behalf of Plaintiff and the Class)

82.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

83.     Defendant sold items via the Avatar Shop and retained a monetary benefit from each and every sale in the form of a 30% commission. Plaintiff and the Class—which are predominantly children—expected that items offered for sale through the Avatar Shop have been approved by Roblox and will be able to use their purchased items as long as they themselves abided by the platform's policies.

84.     Indeed, Defendant concealed from Plaintiff and the Class that Defendant had not moderated the content before it became available for purchase in the Avatar Shop and that Defendant intended to delete the items sold in the Avatar Shop from users' inventories, absent any violative conduct by the user-purchaser. Defendant also concealed from Plaintiff and the Class that it implemented a quota for its employees to delete items from its platform even if they did not violate any of the platform's policies.

85.     Furthermore, Defendant sold and recommended items in the Avatar Shop that it knew it would ultimately remove from its platform and from Plaintiff's and the Class's inventories.

86.     Defendant knew that the integrity of the content in the Avatar Shop is material information which would influence consumers' purchasing decisions, and it intentionally concealed information about the integrity of the content in the Avatar Shop in order to induce consumers to purchase the content.

87.     Defendant knew that its users, and especially children, would rely on its omissions and purchase items in the Avatar Shop. Plaintiff and the Class reasonably relied on Defendant's omissions and purchased items with the reasonable belief that the items would not be deleted absent any violative conduct by Plaintiff and the Class. Plaintiff and the Class suffered damages as a result of this reliance because their content was ultimately removed—through no fault of their own—without being provided a refund or a credit.

88.     Plaintiff and the Class seek an award of compensatory and punitive damages.

**FOURTH CAUSE OF ACTION**
**CONVERSION**
**(On Behalf of Plaintiff and the Class)**

89.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

90.     Plaintiff and the Class have rightful ownership of items they purchased in the Avatar Shop. Plaintiff and the Class did not authorize Defendant to delete the content they purchased, without providing any refund, for the purposes for which Defendant claims the content was deleted.

91.     Through Defendant's content deletion scheme, Defendant removed Plaintiff's and the Class's items, which they purchased and rightfully owned—without providing any notice, explanation, or refund whatsoever. Defendant wrongfully converted Plaintiff's and the Class's purchased content because by deleting it, it interfered with Plaintiff and the Class's right to use the content.

92.     While removing Plaintiff's and the Class's rightfully purchased items, Defendant retained a portion of the sale price or the commission it received from the sale of each item in the Avatar Shop.

93.     As a result of Defendant's wrongful actions, Plaintiff and the Class were deprived of the use of their purchased items and sustained a loss in the form of the purchase price of the item that was wrongfully deleted.

**FIFTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class)**

94.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

95.     Plaintiff and the Class conferred a benefit to Defendant when they purchased items from the Avatar Shop.

96.     Defendant appreciates and/or has knowledge of such benefit.

97.      Defendant unjustly received and retained a benefit when it deleted Plaintiff's and the Class's items without providing a refund or credit.

98.     Principles of equity and good conscience require Defendant to return the purchase price of deleted items to Plaintiff and the Class.

99.     Plaintiff and the Class seek disgorgement and restitution of any money received by Defendant as a result of the conduct alleged herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Jane Doe, by her father and next friend, John Dennis, individually and on behalf of the Class, prays for the following relief:

(a)  An order certifying the Class as defined above, appointing Plaintiff as the representative of the Class, and appointing her counsel as Class Counsel;

(b)  Declaring that Roblox's conduct constitutes a violation under the California UCL and CLRA, fraud, conversion, and unjust enrichment;

(c)  Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class;

(d)  An award of all economic, monetary, actual, consequential, compensatory, and punitive damages available at law and caused by Roblox's conduct;

(e)  An award of reasonable litigation expenses and attorneys' fees;

(f)  An award of pre- and post-judgment interest, to the extent allowable;

(g)  Such other and further relief that the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff Jane Doe, by her father and next friend, John Dennis, requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

**JANE DOE** a minor, represented by her father and next friend, **JOHN DENNIS**, individually and on behalf of all others similarly situated,

Date: May 25, 2021

By:  /s/ Lily E. Hough
        *One of Plaintiff's Attorneys*

Rafey Balabanian SBN 315962)
rbalabanian@edelson.com
Lily Hough (SBN 315277)
lhough@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111

Tel: 415.212.9300
Fax: 415.373.9435