ANTHONY J WEIBELL, State Bar No. 238850
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
E-mail: aweibell@wsgr.com

Attorneys for Defendant
ROBLOX CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JANE DOE, et al. | Case No. 3:21-cv-03943-WHO |
| Plaintiffs, | **DEFENDANT ROBLOX CORPORATION'S COMBINED MOTION TO DISMISS AND MOTION TO STRIKE THE FIRST AMENDED COMPLAINT** |
| v. | |
| ROBLOX CORPORATION, | |
| Defendant. | Date:    February 16, 2022<br>Time:    2:00 PM<br>Judge:   Hon. William H. Orrick<br>Courtroom: 2, 17th Floor |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ..................................................................................viii

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................................1

INTRODUCTION ..................................................................................................................1

STATEMENT OF FACTS AND ALLEGATIONS .........................................................................2

    A.    The Roblox Platform is a Virtual Universe .........................................................2

    B.    Roblox Users Must Manifest Assent to the Roblox Terms of Use .......................3

    C.    Content Moderation and the Robux Credit Program ...........................................5

    D.    Plaintiff's Allegations and Remediation Thereof................................................6

ARGUMENT .......................................................................................................................7

I.    THE ACTION SHOULD BE DISMISSED AS BOTH UNRIPE AND MOOT...............7

    A.    Legal Standard...................................................................................................7

    B.    This Action is Not Ripe.......................................................................................8

    C.    This Action is Moot............................................................................................9

II.    THE CLASS AND MONETARY CLAIMS SHOULD BE STRICKEN .........................9

III.    THE ACTION SHOULD BE DISMISSED UNDER RULE 12(B)(6) ...........................10

    A.    Legal Standard.................................................................................................10

    B.    All Claims Fail Because Plaintiff Expressly Agreed to the Policy at Issue .........11

    C.    Plaintiff's Claims Are Barred by the Communications Decency Act.................13

    D.    Plaintiff Cannot Plead the Required Elements of Her Claims ............................16

        1.    The UCL Claim Fails ............................................................................16

        2.    The CLRA Claim Fails...........................................................................20

        3.    The Fraud Claim Fails............................................................................21

        4.    The Conversion Claim Fails...................................................................21

        5.    The Unjust Enrichment Claim Fails........................................................22

        6.    The Breach of the Implied Covenant Claim Fails....................................22

    E.    The Claims for Injunctive Relief Fail ...............................................................23

CONCLUSION ..................................................................................................................23

# TABLE OF AUTHORITIES

<u>Page</u>

### CASES

*Ahern v. Apple Inc.*,
 411 F. Supp. 3d 541 (N.D. Cal. 2019) .......................................................................17

*Aron v. U-Haul Co. of Cal.*,
 143 Cal. App. 4th 796 (2006) .....................................................................................18

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ....................................................................................................10

*Back v. Sebelius*,
 684 F.3d 929 (9th Cir. 2012) ...................................................................................7, 9

*Bank of N.Y. v. Fremont Gen. Corp.*,
 514 F.3d 1008 (9th Cir. 2008) ....................................................................................21

*Barnes v. Yahoo!, Inc.*,
 570 F.3d 1096 (9th Cir. 2009) ..............................................................................13, 15

*Bates v. UPS, Inc.*,
 511 F.3d 974 (9th Cir. 2007) ......................................................................................23

*Batzel v. Smith*,
 333 F.3d 1018 (9th Cir. 2003) ....................................................................................13

*Baxter v. Intelius, Inc.*,
 No. 09-01031, 2010 U.S. Dist. LEXIS 104218
 (C.D. Cal. Sept. 16, 2010) ..........................................................................................19

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ....................................................................................................10

*Ben Ezra, Weinstein, & Co. v. Am. Online Inc.*,
 206 F.3d 980 (10th Cir. 2000) ....................................................................................14

*Block v. eBay, Inc.*,
 747 F.3d 1135 (9th Cir. 2014) ....................................................................................19

*Brodsky v. Apple Inc.*,
 445 F. Supp. 3d 110 (N.D. Cal. 2020) ........................................................................22

*Brosnan v. Dry Cleaning Station Inc.*,
 No. 08-02028-EDL, 2008 U.S. Dist. LEXIS 44678
 (N.D. Cal. June 6, 2008)................................................................................................8

*Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*,
 2 Cal. 4th 342 (1992) ..................................................................................................22

*Cel-Tech Commc'ns v. L.A. Cellular Tel. Co.*,
 20 Cal. 4th 163 (1999)................................................................................................17

*Clemens v. DaimlerChrysler Corp.*,
    534 F.3d 1017 (9th Cir. 2008) ..................................................................18

*Coffee v. Google, LLC*,
    No. 20-03901-BLF, 2021 U.S. Dist. LEXIS 26750
    (N.D. Cal. Feb. 10, 2021) ...............................................................14, 20

*Doe v. Epic Games, Inc.*,
    435 F. Supp. 3d 1024 (N.D. Cal. 2020) ......................................................20

*Edison v. United States*,
    822 F.3d 510 (9th Cir. 2016) ....................................................................8

*Epstein v. Wash. Energy Co.*,
    83 F.3d 1136 (9th Cir. 1996) ...................................................................10

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) (en banc) ............................................13, 15

*Free Range Content, Inc. v. Google Inc.*,
    No. 14-02329-BLF, 2016 U.S. Dist. LEXIS 64365
    (N.D. Cal. May 13, 2016) ........................................................................8

*GT Sec., Inc. v. Klastech GmbH*,
    No. 13-03090-JCS, 2014 U.S. Dist. LEXIS 88237
    (N.D. Cal. June 27, 2014) ........................................................................8

*Ham v. Hain Celestial Grp., Inc.*,
    70 F. Supp. 3d 1188 (N.D. Cal. 2014) .......................................................23

*Hamilton v. Dixon*,
    168 Cal. App. 3d 1004 (1985) .............................................................11, 13

*Hill v. Roll Int'l Corp.*,
    195 Cal. App. 4th 1295 (2011) .................................................................22

*Hodsdon v. Mars, Inc.*,
    891 F.3d 857 (9th Cir. 2018) ...................................................................17

*Holomaxx Techs. Corp. v. Microsoft Corp.*,
    No. 10-04924-JF, 2011 U.S. Dist. LEXIS 94316
    (N.D. Cal. Aug. 23, 2011) ......................................................................13

*Holomaxx Techs. v. Microsoft Corp.*,
    783 F. Supp. 2d 1097 (N.D. Cal. 2011) .....................................................14

*I.B. ex rel. Fife v. Facebook, Inc.*,
    905 F. Supp. 2d 989 (N.D. Cal. 2012) .......................................................20

*In re Firearm Cases*,
    126 Cal. App. 4th 959 (2005) ...................................................................17

*In re Google, Inc. Privacy Policy Litig.*,
    No. 12-01382-PSG, 2013 U.S. Dist. LEXIS 171124
    (N.D. Cal. Dec. 3, 2013) .........................................................................17

*In re iPhone 4S Consumer Litig.*,
    637 F. App'x 414 (9th Cir. 2016) ........................................................................17

*In re Juul Labs, Inc.*,
    No. 20-02345-WHO, 2021 U.S. Dist. LEXIS 157126
    (N.D. Cal. Aug. 19, 2021) ....................................................................................10

*Janda v. T-Mobile, USA, Inc.*,
    No. 05-03729-JSW, 2009 U.S. Dist. LEXIS 24395
    (N.D. Cal. Mar 13, 2009),
    *aff'd*, 378 F. App'x 705 (9th Cir. 2010) ............................................................19

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ............................................................................18

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ..............................................................................11

*Klayman v. Zuckerberg*,
    753 F.3d 1354 (D.C. Cir. 2014) .........................................................................14

*Klein v. Chevron U.S.A., Inc.*,
    202 Cal. App. 4th 1342 (2012) ..........................................................................22

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ............................................................................11

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011) ........................................................................................16

*Lacour v. Marshalls of CA, LLC*,
    No. 20-07641-WHO, 2021 U.S. Dist. LEXIS 82472
    (N.D. Cal. Apr. 29, 2021) .....................................................................................9

*Lancaster v. Alphabet Inc.*,
    No. 15-05299-HSG, 2016 U.S. Dist. LEXIS 88908
    (N.D. Cal. July 8, 2016) ...............................................................................14, 15

*Levitt v. Yelp! Inc.*,
    No. 10-01321-EMC, 2011 U.S. Dist. LEXIS 124082
    (N.D. Cal. Oct. 26, 2011),
    *aff'd*, 765 F.3d 1123 (9th Cir. 2014) .................................................................14

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
    350 F.3d 1018 (9th Cir. 2003) ..............................................................................7

*Mai v. Supercell Oy*,
    No. 20-05573-EJD, 2021 U.S. Dist. LEXIS 178949
    (N.D. Cal. Sept. 20, 2021) ..................................................................................16

*Morgan v. Wallaby Yogurt Co.*, No. 13-00296-WHO, 2013 U.S. Dist. LEXIS
    144959 (N.D. Cal. Oct. 4, 2013) ........................................................................20

*Mui Ho v. Toyota Motor Corp.*,
    931 F. Supp. 2d 987 (N.D. Cal. 2013) ...............................................................20

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
    591 F.3d 250 (4th Cir. 2009)................................................................................14

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) .........................................................................................7

*Oestreicher v. Alienware Corp.*,
    544 F. Supp. 2d 964 (N.D. Cal. 2008),
    *aff'd*, 322 F. App'x 489 (9th Cir. 2009) ..........................................................18

*Oracle Am., Inc. v. CedarCrestone, Inc.*,
    938 F. Supp. 2d 895 (N.D. Cal. 2013) ............................................................16

*Overton v. Uber Techs., Inc.*,
    333 F. Supp. 3d 927 (N.D. Cal. 2018) ............................................................21

*PC Drivers Headquarters, LP v. Malwarebytes Inc.*,
    371 F. Supp. 3d 652 (N.D. Cal. 2019) ............................................................15

*Principal Life Ins. Co. v. Robinson*,
    394 F.3d 665 (9th Cir. 2005)..............................................................................7

*Rogers v. Lyft, Inc.*,
    452 F. Supp. 3d 904 (N.D. Cal. 2020).................................................................9

*Rojas-Lozano v. Google, Inc.*,
    159 F. Supp. 3d 1101 (N.D. Cal. 2016) ..........................................................20

*S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*,
    72 Cal. App. 4th 861 (1999)............................................................................17

*Salinas Valley Mem'l Healthcare Sys. v.
    Monterey Peninsula Horticulture, Inc.*,
    No. 17-07076-LHK, 2019 U.S. Dist. LEXIS 104483
    (N.D. Cal. June 21, 2019)..................................................................................8

*Sencion v. Saxon Mortg. Servs., Inc.*,
    No. 10-03108-PSG, 2011 U.S. Dist. LEXIS 8567
    (N.D. Cal. Jan. 28, 2011)................................................................................16

*Sikhs for Justice "SFJ", Inc. v. Facebook Inc.*,
    144 F. Supp. 3d 1088 (N.D. Cal. 2015),
    *aff'd*, 697 F. App'x 526 (9th Cir. 2017) ....................................................13, 15

*Smith v. Facebook, Inc.*,
    262 F. Supp. 3d 943 (N.D. Cal. 2017),
    *aff'd*, 745 F. App'x 8 (9th Cir. 2018) .........................................................12, 22

*Song Fi Inc. v. Google, Inc.*,
    108 F. Supp. 3d 876 (N.D. Cal. 2015) ............................................................22

*Spiegler v. Home Depot U.S.A., Inc.*,
    552 F. Supp. 2d 1036 (C.D. Cal. 2008),
    *aff'd*, 349 F. App'x 174 (9th Cir. 2009) ..........................................................19

*Sprewell v. Golden State Warriors*,
     266 F.3d 979 (9th Cir. 2001)............................................................................................10

*Sud v. Costco Wholesale Corp.*,
     229 F. Supp. 3d 1075 (N.D. Cal. 2017),
     *aff'd*, 731 F. App'x 719 (9th Cir. 2018) ........................................................................18

*Swartz v. KPMG LLP*,
     476 F.3d 756 (9th Cir. 2007)......................................................................................11, 18

*Sweet v. Google Inc.*,
     No. 17-03953-EMC, 2018 U.S. Dist. LEXIS 37591
     (N.D. Cal. Mar. 7, 2018) ...............................................................................................11

*Tattoo Art, Inc. v. TAT Int'l, LLC*,
     711 F. Supp. 2d 645 (E.D. Va. 2010)...............................................................................8

*Vess v. Ciba-Geigy Corp. USA*,
     317 F.3d 1097 (9th Cir. 2003).........................................................................................18

*White v. Lee*,
     227 F.3d 1214 (9th Cir. 2000)...........................................................................................7

*Wilson v. Frito-Lay N. Am., Inc.*,
     961 F. Supp. 2d 1134 (N.D. Cal. 2013) ..........................................................................18

*Wilson v. Hewlett-Packard Co.*,
     668 F.3d 1136 (9th Cir. 2012)..........................................................................................18

*Wolf v. Walt Disney Pictures & Television*,
     162 Cal. App. 4th 1107 (2008)........................................................................................22

*Wolfson v. Brammer*,
     616 F.3d 1045 (9th Cir. 2010)...........................................................................................7

*Zeran v. Am. Online, Inc.*,
     129 F.3d 327 (4th Cir. 1997)............................................................................................13

**STATUTES**

U.S. Const. art. III, § 2, cl. 1 ...................................................................................................7

17 U.S.C. § 512(c).............................................................................................................5, 17

47 U.S.C. § 230(c)...........................................................................................13, 14, 15, 24

47 U.S.C. § 230(f)(2) ............................................................................................................14

Cal. Bus. & Prof. Code § 17204 ...........................................................................................16

Cal. Civ. Code § 1770 ...........................................................................................................20

Cal. Civ. Code § 3515 ...........................................................................................................11

1

**RULES**

2   Fed. R. Evid. 201(b) ................................................................................................11

3   Fed. R. Civ. P. 9(b) .............................................................................................18, 21

4   Fed. R. Civ. P. 12(b)(1) ..........................................................................................7, 8

5   Fed. R. Civ. P. 12(b)(6) .........................................................................7, 8, 10, 11

6   Fed. R. Civ. P. 12(f) .......................................................................................7, 9, 10

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on February 16, 2022 at 2:00 PM or as soon thereafter as the matter may be heard, before the Honorable William H. Orrick of the United States District Court for the Northern District of California, Courtroom 2, 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Roblox Corporation ("Roblox") will move, and hereby does move, this Court pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for an order dismissing the claims asserted by the Plaintiff in this action in the First Amended Class Action Complaint ("FAC") with prejudice for lack of subject matter jurisdiction and for failure to state a claim, respectively. Roblox further moves this Court pursuant to Federal Rules of Civil Procedure 12(f) for an order striking the class allegations and claims for monetary relief because Plaintiff and the putative class are bound by a valid class action waiver and arbitration agreement.

The motion is based upon this Notice of Motion; the Memorandum of Points and Authorities in support thereof; the Declaration of Matt Brown in support thereof that is filed herewith ("Brown Decl.") with accompanying exhibits; Defendant's Request for Judicial Notice; the Proposed Order filed herewith; the pleadings, records, and papers on file in this action; oral argument of counsel; and any other matters properly before the Court.

**STATEMENT OF THE ISSUES**

1.      Should the claims be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction because there is no case or controversy, as required by Article III of the U.S. Constitution?

2.      Should the class allegations and monetary claims be stricken under Fed. R. Civ. P. 12(f) because Plaintiff is bound by a valid class action waiver and arbitration agreement?

3.      Should the claims against Roblox and the requests for injunctive relief be dismissed with prejudice under Fed. R. Civ. P. 12(b)(6) because they are precluded by the parties' agreement and the Communications Decency Act and otherwise fail to state a claim?

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

This case should never have been filed. It is based on conduct expressly permitted by the parties' agreement and protected by the Communications Decency Act; it involves no pecuniary, tangible, or emotional injury to Plaintiff; it was filed in violation of Plaintiff's obligation to provide notice and engage in dispute resolution prior to any legal proceedings or arbitration; and it violates Plaintiff's class action waiver and arbitration agreement. Beyond all this, Roblox has *already granted the relief* requested by Plaintiff for herself and the putative class, rendering this action entirely moot.

Notably, Plaintiff's complaint is not based on any injury in the real world. Plaintiff complains that *virtual* pajamas and pants created by another Roblox user that she acquired for her Roblox avatar to wear in the Roblox virtual universe were disabled by Roblox sooner than she expected and without any return of the virtual "Robux" credits she used to acquire those items. But that is exactly what Roblox told Plaintiff might happen and exactly what Plaintiff agreed to in her contract with Roblox. Moreover, Roblox's right to remove user-generated content from its online platform is protected by federal law (the Communications Decency Act) and is typically required by federal law, such as the Digital Millennium Copyright Act and other laws.

Even so, in an ongoing effort to create a more enjoyable experience for all users, Roblox has already granted Plaintiff and all eligible users exactly what Plaintiff has asked for in her First Amended Complaint—without any obligation to do so. Roblox has (i) credited back the amount of spent Robux to Plaintiff's account, (ii) agreed to do the same for all other users who did not violate the Roblox Terms, (iii) implemented an ongoing automated system to return Robux to all users for items removed in the past and future, and (iv) promised to maintain this policy.

For these reasons, Plaintiff's First Amended Complaint should be dismissed with prejudice, the class allegations and monetary relief claims should be stricken, and/or the action should be dismissed for lack of a justiciable case or controversy.

## STATEMENT OF FACTS AND ALLEGATIONS

A.      **The Roblox Platform is a Virtual Universe**

Roblox operates an online platform ("the Roblox Platform") that hosts a user-generated digital world where users create virtual games and experiences, connect with other users to enjoy user-created games and user-created virtual experiences, and use virtual apparel and other content created by themselves and other users. FAC ¶ 1; Brown Decl. ¶ 2. The Roblox Platform is created by players for players. FAC ¶¶ 1, 20. That is, Roblox users develop the games, experiences, and virtual items that are available on the Platform for themselves and other users. FAC ¶ 1; Brown Decl. ¶ 2.

Within the Roblox Platform virtual universe, there is a virtual economy that uses a digital currency called "Robux." FAC ¶ 25; Brown Decl. ¶ 6. Robux are merely a license issued by Roblox to engage in certain in-platform activity and are not a real money virtual currency. Brown Decl. ¶ 6 & Ex. 1 § 4.A(1). Nor can Robux be legally sold by users or others in the real world for real money. Brown Decl. ¶ 6 & Ex. 1 § 4.A(3). Robux can only be sold by Roblox. *Id.*; FAC ¶¶ 25-26. Nor can Robux be purchased in the real world with real money except from Roblox. *Id.* Once a user purchases Robux from Roblox, the user can spend those Robux on the Roblox Platform in any manner that Roblox allows, including trading Robux to access experiences, games, virtual apparel and other content on the Roblox Platform. FAC ¶¶ 24-26; Brown Decl. ¶ 7. But once purchased, Robux can never thereafter be converted or exchanged for real money by the purchaser.[1] Brown Decl. ¶ 7.

---

[1] The Roblox "DevEx" Program mentioned in the FAC pursuant to which Roblox will buy back certain Robux from certain users is not at issue in this action. This past year, 4,300 users qualified for and were registered in the DevEx Program. Brown Decl. ¶ 8. Plaintiff in this action does not allege or appear to be one of the 4,300 participants in the DevEx Program. *Id.* Under that program, when users create virtual experiences and items on the Roblox Platform, they can collect some of the Robux that is spent by other users to access that content. *Id.* Robux earned in this manner are called "Earned Robux." While *purchased* Robux can never be converted or exchanged for real money by the purchaser, users who have been admitted to the DevEx Program may be eligible to have Roblox buy back their *Earned* Robux. *Id.*

### B.   Roblox Users Must Manifest Assent to the Roblox Terms of Use

To participate on the Roblox Platform, users must first create a Roblox account. Brown Decl. ¶ 3. During the process of creating an account, users are presented with the Roblox Terms of Use agreement ("Roblox Terms") (Brown Decl. Ex. 1) and are required to manifest their assent to that contract by clicking a button that says "By clicking Sign Up, you are agreeing to the Terms of Use." *Id*. The account will not be activated absent the user's acceptance of the Roblox Terms. *Id.* Users who engage in other activity involving the Roblox Platform, such as those who make purchases of Robux, must likewise manifest that they agree to the Roblox Terms. *Id.* The Roblox Terms expressly incorporate other Roblox policies, including the Roblox Community Rules (Brown Decl. Ex. 2). Brown Decl. ¶ 5. The Roblox Terms are always also available on the Roblox website:   https://en.help.roblox.com/hc/en-us/articles/115004647846-Roblox-Terms-of-Use. Brown Decl. ¶ 3.

By necessity, as a platform that hosts user-generated content created by millions of users, the Roblox Terms vest Roblox with significant control and discretion over the operation of the Roblox Platform to protect the rights of all users and third parties. Even Plaintiff concedes that there is "user-on-user abuse" that Roblox must be equipped to deal with on the Roblox Platform. FAC ¶ 34. For example, the Roblox Terms reserve Roblox's right to modify and remove content from the service without liability to users:

- "We reserve the right to modify or discontinue the Service at any time (including by limiting or discontinuing certain features of the Service) without notice to you. We will have no liability whatsoever on account of any change to the Service." Brown Decl. Ex. 1 § 2.B.

- "[T]here may be situations where games, avatar items, or other content may be removed from the Service (due to violations of these Terms or for other reasons). We will have no liability for any losses you may incur as a result, and will not be liable to refund any Robux or other funds you spent in or for that game or content." Brown Decl. Ex. 1 § 5.A(3).

- "UGC [User Generated Content] Disclaimer. We are under no obligation to edit or control UGC that you or others Provide, and will not be in any way responsible or liable for UGC. We may, however, at any time and without prior notice, screen, remove, edit, or block any UGC that in our sole judgment violates these Terms or is otherwise objectionable. . . . You agree to waive, and do waive, any legal or equitable right or remedy you have or may have against us with respect to UGC." Brown Decl. Ex. 1 § 6.B(9).

The Roblox Terms also clearly state that Roblox may, but is not required to, pre-screen user-generated content:

- "[W]e reserve the right, but shall have no obligation, to pre-screen, refuse to accept, post, display or transmit your Content Services through the Service in whole or in part at any time for any reason or no reason, with or without notice and with no liability." Brown Decl. Ex. 1 § 2.A(1).

The Roblox Terms also make clear that (i) users who purchase Robux receive only a revocable license to use Robux on the Roblox Platform; and (ii) any trade of Robux for virtual items is not a legally enforceable transaction that can create a cause of action against Roblox:

- "If we offer you the ability to acquire a limited license to use Robux, we hereby grant you a non-exclusive, revocable, personal, limited, non-transferable (except as specifically set out in Section 4A(2)(e) below) right and license to use Robux only for your personal, entertainment use exclusively in connection with the Service as permitted by us, subject to these Terms." Brown Decl. Ex. 1 § 4.A(1).

- "Robux do not: (a) have an equivalent value in real currency (except as through the DevEx program); (b) act as a substitute for real currency; (c) act as consideration for any legally enforceable contract (except where We grant a license to use Robux or as through the DevEx program); or (d) earn interest. . . . Transactions involving the exchange or Robux for virtual items or virtual services on the Platform are not legally enforceable, may not form the basis of any private right of action against Us . . . ." Brown Decl. Ex. 1 § 4.A(3).

The Roblox Terms further include a class action waiver, arbitration agreement, and informal dispute resolution requirement:

- "No Class Actions and Severability. YOU AND WE AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR OUR INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING, except as otherwise provided by the European General Data Protection Regulation. You and we agree as follows: (a) neither you nor we will seek to have a Dispute heard as a class action, private attorney general action, or in any other proceeding in which either party acts or proposes to act in a representative capacity; (b) no arbitration or proceeding can be combined with another without the prior written consent of all parties to the arbitration or proceeding; and (c) if the class action waiver or any part of this Section 11 is found to be illegal or unenforceable as to all or some parts of a Dispute, those parts will be severed and proceed in a court of law, with the remaining parts proceeding in arbitration." Brown Decl. Ex. 1 § 11.A.

- "Agreement to Arbitrate. You and we agree to arbitrate all Disputes (except those exceptions specifically set out in the next subsection) between you and us or our affiliates, except Disputes related to our intellectual property rights. You and we empower the arbitrator with the exclusive authority to resolve any Dispute, including without limitation whether or not any part of these Terms is void or voidable." Brown Decl. Ex. 1 § 11.C(1).

- "Informal Negotiations. To help get you and us to a resolution and to control costs for you and us regarding any Dispute, you and we agree to first attempt to informally discuss and try to negotiate a resolution to any Dispute (except the Disputes specifically set out below) for at least 60 days from when notice of the Dispute is sent. Those informal negotiations will commence upon written notice from you to us or us to you. We will send our notice to your registered email address and any billing address that you provided to us. You will send your notice to Roblox Corporation, Legal Department, 970 Park Place, Suite 100, San Mateo, CA 94403. After 60 days, you or we may commence arbitration." Brown Decl. Ex. 1 § 11.C(3).

## C.     Content Moderation and the Robux Credit Program

Roblox takes the welfare of its users very seriously. Roblox is committed to removing content from its platform that violates its content policies or infringes third-party and intellectual property rights, as required by law. *See* FAC ¶ 40. Because virtual items and other content on the Roblox Platform are user-generated, Roblox may at times be required to "moderate" (meaning, remove from the platform) content pursuant to a Digital Millennium Copyright Act takedown notice from a copyright owner or similar legal notice. Brown Decl. ¶ 9; *see also* 17 U.S.C. § 512(c) (requiring online service providers to "expeditiously" remove content upon receipt of a valid takedown notice from the copyright owner). Roblox may also need to moderate content that it discovers otherwise violates the Roblox Terms. Brown Decl. ¶ 9; *see also* FAC ¶ 40. In these situations, it is sometimes the case that the user who acquired a virtual item that violates the Roblox Terms had *themselves* created or participated in creating the item or knew that the item violated the Roblox Terms. Brown Decl. ¶ 9.

Because Roblox wants its users to have an enjoyable experience on the Roblox Platform, long before this lawsuit was filed, Roblox had been grappling with the issue of how to implement a feasible process, not subject to significant abuse by bad actors, that would allow users to be credited back the Robux spent on virtual items that are subsequently moderated. Brown Decl. ¶ 10. This presented a difficult engineering problem with no easy solution, and the only cause for delay was limited engineering resources, not any desire to profit from moderated items. *Id.*

After months of development, on September 9, 2021, Roblox launched an automated process for crediting Robux to existing Roblox users who experienced or will experience moderation of a virtual item for violation of the Roblox Terms of Use. Brown Decl. ¶ 14. Affected users received a notice that they were eligible for a Robux credit for moderated items and were

asked to agree that they did not create the moderated items and did not know the moderated items violated the Roblox Terms at the time they acquired them. *Id.* Users then received a notice for each moderated item showing the amount of Robux credit applied to their account for that item. *Id.* The engineering of this automated process was complicated and took months for Roblox to implement due to engineering difficulties. Brown Decl. ¶ 15. Now that it is in place, Roblox has promised to continue to operate it on an ongoing basis to issue credits to eligible users for items that are moderated in the future. *Id.*

### D.      Plaintiff's Allegations and Remediation Thereof

Plaintiff alleges she is a Roblox user with a Roblox account. FAC ¶¶ 50-51. Plaintiff alleges that she traded some Robux to access certain virtual apparel items created by other users that were thereafter removed from the Roblox Platform pursuant to Roblox's content moderation policy and did not (prior to the filing of her complaint) receive a Robux credit for the lost access. FAC ¶¶ 53, 55, 57. Based on these allegations, Plaintiff asserts claims on behalf of herself and a putative class of persons for (1) violations of California's Unfair Competition Law ("UCL"); (2) violations of California's Consumer Legal Remedies Act ("CLRA"); (3) fraud; (4); conversion; (5) unjust enrichment; and (6) breach of the covenant of good faith and fair dealing.

Plaintiff filed her lawsuit against Roblox without any prior written notice of the dispute to the Roblox Legal Department, as required by the Roblox Terms. Brown Decl. ¶ 11 & Ex. 1 § 11.C(3). After the filing of this action, the Robux allegedly spent by Plaintiff on moderated items were credited back to her account in full to the best of Roblox's knowledge. Brown Decl. ¶ 13. Roblox also notified Plaintiff, through legal counsel, that Plaintiff and other active Roblox users would be eligible to receive a credit of Robux for virtual items that were subsequently moderated by Roblox if those users have not violated the Roblox Terms and were not aware at the time that the items violated the Roblox Terms. Brown Decl. ¶ 12. Roblox also stated that Roblox would provide notice of this credit to all other eligible users and would maintain this policy going forward. *Id.*

**ARGUMENT**

This case should properly be dismissed on the merits under Rule 12(b)(6) for failure to state a claim. However, there are threshold jurisdictional and procedural defects that can first be addressed and resolved under Rule 12(b)(1) and Rule 12(f) before turning to Rule 12(b)(6).

## I.   THE ACTION SHOULD BE DISMISSED AS BOTH UNRIPE AND MOOT

This action should be dismissed under Rule 12(b)(1) for lack of a justiciable case or controversy required by Article III of the U.S. Constitution because (1) Plaintiff failed to engage in the mandatory informal dispute resolution process that is a contractual condition precedent to any adjudication of a dispute between the parties, and (2) Roblox has already granted the requested relief to Plaintiff and the putative class. The First Amended Complaint and the relief sought therein are therefore both unripe and moot.

### A.   Legal Standard

A civil action should be dismissed under Federal Rule of Civil Procedure 12(b)(1) where there is no justiciable case or controversy. U.S. Const. art. III, § 2, cl. 1 (limiting federal court jurisdiction to "actual case[s] or controvers[ies]"). An actual case or controversy must exist at all stages of review and "not just at the time the action is filed." *Wolfson v. Brammer*, 616 F.3d 1045, 1053 (9th Cir. 2010). "[O]ur law makes clear that 'if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.'" *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)).

"If a case is not ripe for review, then there is no case or controversy, and the court lacks subject-matter jurisdiction." *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005). A court likewise has no jurisdiction if a former case or controversy ceases to exist. *Back v. Sebelius*, 684 F.3d 929, 933 (9th Cir. 2012) (a case is moot where the defendant offers the plaintiff what was asked or what could be awarded). In either situation, the action must be dismissed. *See id.*

Where, as here, a defendant brings a factual attack on jurisdiction under 12(b)(1), courts "need not presume the truthfulness of the plaintiffs' allegations," *White v. Lee*, 227 F.3d 1214,

1  1242 (9th Cir. 2000), and may "look beyond the pleadings to the parties' evidence." *Edison v.*

2  *United States*, 822 F.3d 510, 517 (9th Cir. 2016).

3  **B.      This Action is Not Ripe**

4  Where a plaintiff is contractually obligated to engage in pre-filing dispute resolution and

5  fails to do so, the lawsuit is not ripe for adjudication and must be dismissed "without leave to

6  amend." *Salinas Valley Mem'l Healthcare Sys. v. Monterey Peninsula Horticulture, Inc.*, No. 17-

7  07076-LHK, 2019 U.S. Dist. LEXIS 104483, at *18 (N.D. Cal. June 21, 2019) (dismissing action

8  without leave to amend because plaintiff violated dispute resolution provision that was condition

9  precedent to filing lawsuit); *Free Range Content, Inc. v. Google Inc.*, No. 14-02329-BLF, 2016

10  U.S. Dist. LEXIS 64365, at *37 (N.D. Cal. May 13, 2016) (dismissing claims where plaintiffs

11  failed to give defendants notice before filing suit, which notice was a contractual "condition

12  precedent to filing suit"); *Brosnan v. Dry Cleaning Station Inc.*, No. 08-02028-EDL, 2008 U.S.

13  Dist. LEXIS 44678, at *2-4 (N.D. Cal. June 6, 2008) (failure to engage in pre-filing dispute

14  resolution pursuant to a contract "warrants dismissal").[2]

15  Here, Plaintiff was contractually obligated to send "notice to Roblox Corporation, Legal

16  Department, 970 Park Place, Suite 100, San Mateo, CA 94403" of any dispute and to "first attempt

17  to informally discuss and try to negotiate a resolution to any Dispute (except the Disputes

18  specifically set out below) for at least 60 days from when notice of the Dispute is sent" prior to

19  submitting the dispute to arbitration (or litigation). Brown Decl. Ex. 1 § 11.C(3). She failed to do

20  so. Brown Decl. ¶ 11. As discussed below, had Plaintiff engaged in the required dispute resolution,

21  the resolution that has now been provided by Roblox (*see infra* Section I.C) could have been

22

23  _____

24  [2] The defendants in these cases raised the ripeness issue in the context of a Rule 12(b)(6)
motion, but agreements to engage in pre-filing alternative dispute resolution may also be

25  considered in a Rule 12(b)(1) context. *See, e.g.*, *GT Sec., Inc. v. Klastech GmbH*, No. 13-03090-
JCS, 2014 U.S. Dist. LEXIS 88237, at *61 (N.D. Cal. June 27, 2014) ("Rule 12(b)(1) is appropriate

26  for dismissing claims subject to arbitration because it 'is a flexible rule' that often serves as a
vehicle for raising residual defenses . . . ."); *Tattoo Art, Inc. v. TAT Int'l, LLC*, 711 F. Supp. 2d

27  645, 648-49 (E.D. Va. 2010) ("[T]he Court finds that because Plaintiff failed to request mediation
of the underlying dispute prior to commencing litigation, the instant action must be dismissed

28  [under Rule 12(b)(1)]."). Because the result of dismissal is the same either way, the Court could
alternatively analyze this issue under Rule 12(b)(6).

1   provided before the filing of the suit and before the expenditure of this Court's resources. As in

2   *Salinas*, *Free Range*, and *Brosnan*, Plaintiff's failure requires dismissal without leave to amend.

3       **C.      This Action is Moot**

4       This action should also be dismissed as moot because, in an ongoing effort to create a more

5   enjoyable experience for all users, Roblox already granted Plaintiff (and all users) what she has

6   asked for (even though Roblox had no obligation to do so). *Back v. Sebelius*, 684 F.3d 929, 933

7   (9th Cir. 2012) (a case is moot where the defendant offers the plaintiff what is asked or what could

8   be awarded).

9       Plaintiff's only alleged personal detriment is that she lost access to user-generated virtual

10  pajamas and virtual pants for her avatar on the Roblox Platform when those items were moderated,

11  and the Robux she used to acquire them were not credited back to her virtual account. *See* FAC

12  ¶¶ 53, 55, 57. Notwithstanding the fact that this is exactly what Roblox told her might happen and

13  what she agreed to, *see infra* Section III.B, subsequent actions taken by Roblox have completely

14  resolved this alleged injury and the relief Plaintiff seeks. Specifically, Roblox has (i) credited back

15  the amount of spent Robux to Plaintiff's account, (ii) agreed to do the same for all other users who

16  did not violate the Roblox Terms, (iii) implemented an ongoing automated system to return Robux

17  to all users for items moderated in the past and future, and (iv) promised to maintain this policy.

18  Brown Decl. ¶ 12-14.

19      Because the Court would do no more for Plaintiff than this (especially given that her

20  complaint fails to state a claim), the action should be dismissed as moot.

21  **II.     THE CLASS AND MONETARY CLAIMS SHOULD BE STRICKEN**

22      As another threshold matter, the Court should strike from this action the allegations that do

23  not belong, namely, the class allegations and requests for monetary relief. Courts will strike such

24  allegations from a complaint where the plaintiffs have agreed to a class action waiver and

25  arbitration agreement. *Rogers v. Lyft, Inc.*, 452 F. Supp. 3d 904, 918 (N.D. Cal. 2020) (granting

26  motion to strike class allegations "because the plaintiffs waived the right to represent a class in

27  any forum"); *Lacour v. Marshalls of CA, LLC*, No. 20-07641-WHO, 2021 U.S. Dist. LEXIS 82472,

28  at *19-20 (N.D. Cal. Apr. 29, 2021) (granting Rule 12(f) motion to strike all class allegations

because the parties' agreement "waives the right to bring a class action"); *In re Juul Labs, Inc.*, No. 20-02345-WHO, 2021 U.S. Dist. LEXIS 157126, at *51 (N.D. Cal. Aug. 19, 2021) (granting motion to compel or strike where consumer claims were subject to class action waiver and arbitration agreement); Fed. R. Civ. P. 12(f) (court may strike any "immaterial . . . matter").

Here, Plaintiff agreed to a valid class action waiver and to arbitrate claims for monetary relief. Brown Decl. ¶¶ 3-4 & Ex. 1 § 11.A ("You and we agree . . . [that] neither you nor we will seek to have a Dispute heard as a class action, private attorney general action, or in any other proceeding in which either party acts or proposes to act in a representative capacity . . . ."); *id.* § 11.C(1) ("You and we agree to arbitrate all Disputes (except those exceptions specifically set out in the next subsection) between you and us or our affiliates, except Disputes related to our intellectual property rights."). Because Plaintiff is bound by a valid class action waiver and arbitration agreement, the class and monetary relief allegations should be stricken.

## III.    THE ACTION SHOULD BE DISMISSED UNDER RULE 12(B)(6)

### A.    Legal Standard

A complaint that "fail[s] to state a claim upon which relief can be granted" should be dismissed under Rule 12(b)(6). Fed. R. Civ. P. 12(b)(6). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [will] not suffice." *Iqbal*, 556 U.S. at 678. While the Court accepts as true all material allegations in the complaint, it need not accept the truth of conclusory allegations or unwarranted inferences, nor should it accept legal conclusions as true merely because they are cast in the form of factual allegations. *Id.* at 678-79; *accord Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.").

The Court should also not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th

Cir. 2001). In addition, "in order to prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting documents upon which their claims are based, a court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). This rule also "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). Thus, incorporation by reference is appropriate "even though the plaintiff does not explicitly allege the contents of [a] document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

The Court may thus properly consider the Roblox Terms and Roblox Community Rules attached to the Declaration of Matt Brown (Brown Decl. Exs. 1-2), which comprise the contract terms that govern the parties' relationship upon which Plaintiff's FAC is based. FAC ¶¶ 23, 38, 40, 84(d), 85-86, 110-116. These publicly accessible webpages delineate the precise contours of what Plaintiff refers to throughout the FAC as Roblox's "policies" and "content moderation" practices. FAC ¶¶ 10-11, 34, 40-44, 46-48, 54, 70-71, 73, 86. Plaintiff's causes of action rest on allegations about the contents of these policies and practices, the rights they confer to users, and the representations that Roblox makes about them. FAC ¶¶ 70-71, 84-85, 93, 95. The content of these documents is also properly subject to judicial notice because they were publicly posted and archived by a third party (Internet Archive, archive.org), and are thus "not subject to reasonable dispute" and come from a "source[] whose accuracy cannot reasonably be questioned." *See* Request for Judicial Notice (citing *Khoja*, 899 F.3d at 999 (quoting Fed. R. Evid. 201(b))).

## B.    All Claims Fail Because Plaintiff Expressly Agreed to the Policy at Issue

It is a bedrock principle of law that no cause of action will lie where it is based on otherwise lawful conduct expressly permitted by a governing contract. Cal. Civ. Code § 3515 ("He who consents to an act is not wronged by it."). It "would defy all logic" to impose liability on an entity for doing what is expressly permitted by the parties' contract. *Hamilton v. Dixon*, 168 Cal. App. 3d 1004, 1012 (1985). Hence, courts routinely dismiss lawsuits that challenge conduct agreed to in the parties' contract. *See, e.g.*, *Sweet v. Google Inc.*, No. 17-03953-EMC, 2018 U.S. Dist. LEXIS

37591, at *27 (N.D. Cal. Mar. 7, 2018) ("[A]ll of [plaintiff's] claims (the § 17200 claim; the claims for breach of contract, the implied covenant, and quasi-contract; and the claim for tortious interference) are subject to dismissal given the explicit terms of the agreement. Moreover, the dismissal is with prejudice."); *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955 (N.D. Cal. 2017) (contract and tort claims were barred where based on conduct expressly allowed by Facebook's Terms of Use), *aff'd*, 745 F. App'x 8 (9th Cir. 2018).

That is the situation here: although Plaintiff complains that Roblox removed virtual items from her virtual inventory without refunding the Robux she used to acquire the items, Roblox expressly told Plaintiff this could happen, and Plaintiff agreed to this. Specifically, Plaintiff was told and agreed:

> [T]here may be situations where games, avatar items, or other content may be removed from the Service (due to violations of these Terms or for other reasons). *We will have no liability for any losses you may incur as a result, and will not be liable to refund any Robux or other funds you spent in or for that game or content.*

Brown Decl. Ex. 1 § 5.A(3) (emphasis added).

> UGC [User Generated Content] Disclaimer. We are under no obligation to edit or control UGC that you or others Provide, and will not be in any way responsible or liable for UGC. We may, however, *at any time and without prior notice, screen, remove, edit, or block any UGC* that in our sole judgment violates these Terms or is otherwise objectionable. . . . *You agree to waive, and do waive, any legal or equitable right or remedy you have or may have against us with respect to UGC.*

Brown Decl. Ex. 1 § 6.B(9) (emphasis added).

Moreover, Plaintiff was told and agreed that once purchased, Robux had no real-world value, and virtual transactions involving Robux on the Roblox Platform were not legally enforceable and could not give rise to any cause of action against Roblox:

> If we offer you the ability to acquire a limited license to use Robux, we hereby grant you a non-exclusive, *revocable*, personal, limited, non-transferable (except as specifically set out in Section 4A(2)(e) below) right and license to use Robux only for your personal, entertainment use exclusively in connection with the Service as permitted by us, subject to these Terms. . . .

> *Robux do not*: (a) have an equivalent value in real currency (except as through the DevEx program); (b) act as a substitute for real currency; (c) *act as consideration for any legally enforceable contract* (except where We grant you a license to use Robux or as through the DevEx program); or (d) earn interest. . . . *Transactions involving the exchange or Robux for virtual items or virtual services on the Platform are not legally enforceable, may not form the basis of any private right of action against Us . . . .*

1    Brown Decl. Ex. 1 § 4.A (emphasis added).

2        Because Plaintiff agreed to these terms, she cannot now sue Roblox for doing exactly what

3    Roblox told her would happen when user-generated content is removed from the Roblox Platform.

4    To allow her to do so "would defy all logic." *Hamilton*, 168 Cal. App. 3d at 1012. This action

5    should therefore be dismissed.

6        **C.    Plaintiff's Claims Are Barred by the Communications Decency Act**

7        This action should also be dismissed because any effort to hold Roblox liable for exercising

8    its editorial and contractual discretion to remove *user-generated* content from its online platform

9    is barred by Section 230(c) of the Communications Decency Act ("CDA"), 47 U.S.C. § 230(c).

10       Section 230(c) protects online operators from liability for editorial decisions they make

11   concerning material posted on their services. *Batzel v. Smith*, 333 F.3d 1018, 1027-28 (9th Cir.

12   2003) (CDA was enacted, in part, "to encourage interactive computer services and users of such

13   services to self-police the Internet"). As the Ninth Circuit has explained: "any activity that can be

14   boiled down to deciding whether to exclude material that third parties seek to post online is

15   perforce immune under section 230." *Fair Hous. Council of San Fernando Valley v.*

16   *Roommates.com, LLC*, 521 F.3d 1157, 1170-71 (9th Cir. 2008) (en banc).

17       Indeed, the CDA "shields from liability all publication decisions, whether to edit, to

18   remove, or to post, with respect to content generated entirely by third parties." *Barnes v. Yahoo!,*

19   *Inc.*, 570 F.3d 1096, 1105 (9th Cir. 2009); *see also Sikhs for Justice "SFJ", Inc. v. Facebook Inc.*,

20   144 F. Supp. 3d 1088, 1093-96 (N.D. Cal. 2015) (applying Section 230(c)(1) to dismiss claims

21   against Facebook for removing user's page), *aff'd*, 697 F. App'x 526 (9th Cir. 2017). These

22   provisions provide a "robust immunity." *Holomaxx Techs. Corp. v. Microsoft Corp.*, No. 10-

23   04924-JF, 2011 U.S. Dist. LEXIS 94316, at *6 (N.D. Cal. Aug. 23, 2011). Accordingly, "lawsuits

24   seeking to hold a service provider liable for its exercise of a publisher's traditional editorial

25   functions—such as deciding whether to publish, withdraw, postpone or alter content—are barred."

26   *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997); *see also Batzel*, 333 F.3d at 1031

27   n.18 (same).

28

CDA immunity should be resolved "at the earliest possible stage of the case." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254-55 (4th Cir. 2009) (because Section 230(c) provides "an *immunity from suit* rather than a mere defense to liability," it is "effectively lost if a case is erroneously permitted to go to trial"). Courts thus routinely grant immunity on motions to dismiss. *See, e.g.*, *Lancaster v. Alphabet Inc.*, No. 15-05299-HSG, 2016 U.S. Dist. LEXIS 88908, at *8 (N.D. Cal. July 8, 2016); *Holomaxx Techs. v. Microsoft Corp.*, 783 F. Supp. 2d 1097, 1103 (N.D. Cal. 2011); *accord Klayman v. Zuckerberg*, 753 F.3d 1354, 1359 (D.C. Cir. 2014).

The CDA bars Plaintiff's claims in this case. There can be no dispute that the Roblox Platform is an "interactive computer service." *See* 47 U.S.C. § 230(f)(2) (defining "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server"). And Roblox's contractual discretion to remove *third-party user-generated* content that it believes may violate the Roblox Terms or Roblox Community Rules is exactly the kind of "editorial and self-regulatory functions" that Section 230(c) protects. *Ben Ezra, Weinstein, & Co. v. Am. Online Inc.*, 206 F.3d 980, 986 (10th Cir. 2000); *Klayman*, 753 F.3d at 1359 ("the very essence of publishing is making the decision whether to print or retract a given piece of content"); *Levitt v. Yelp! Inc.*, No. 10-01321-EMC, 2011 U.S. Dist. LEXIS 124082, at *5, *23 (N.D. Cal. Oct. 26, 2011) ("editorial decisions such as whether to publish or de-publish a particular review" are publisher functions covered by 230(c)'s immunity; dismissing claim that Yelp "unlawfully manipulated the content of their business review pages"), *aff'd*, 765 F.3d 1123 (9th Cir. 2014).

A consistent line of decisions from this District have applied Section 230(c) to dismiss claims that seek to impose liability on online services for making similar types of editorial decisions. In *Coffee*, the court held that Section 230(c) barred all claims arising from Google's distribution of and profiting from apps in the Google Play app store in which kids could spend real money to buy virtual currency to acquire expensive and allegedly deceptive "loot boxes" that might contain nothing of significant value. *Coffee v. Google, LLC*, No. 20-03901-BLF, 2021 U.S. Dist. LEXIS 26750, at *24 (N.D. Cal. Feb. 10, 2021). In *PC Drivers*, the court held that Section

230(c) immunized an online malware service that blocked consumers from accessing the plaintiff's services "even for customers who have already paid for a PC Drivers' subscription." *PC Drivers Headquarters, LP v. Malwarebytes Inc.*, 371 F. Supp. 3d 652, 660-62 (N.D. Cal. 2019). In *SFJ*, the court held that Facebook's removal of a user's page from the service was "publisher conduct immunized by the CDA." 144 F. Supp. 3d at 1095. The court observed that "removing content is something publishers do, and to impose liability on the basis of such conduct necessarily involves treating the liable party as a publisher." *Id.* (quoting *Barnes*, 570 F.3d at 1103). And in *Lancaster*, the court held that YouTube was immune under Section 230(c) for removing videos and advertising from the plaintiff's YouTube channel and thereby diverting her profits to third parties. 2016 U.S. Dist. LEXIS 88908, at *8.

The same result is warranted in this case. Plaintiff seeks to hold Roblox liable for its decisions to publish and then remove third-party user-generated virtual content from the Roblox Platform sooner than Plaintiff allegedly expected. That is a paradigmatic example of a publisher decision protected by Section 230. As the Ninth Circuit has explained: "It is because such conduct is *publishing conduct* that we have insisted that section 230 protects from liability 'any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online.'" *Barnes*, 570 F.3d at 1103 (quoting *Roommates*, 521 F.3d at 1170-71); *see also Lancaster*, 2016 U.S. Dist. LEXIS 88908, at *8 ("[T]he Court holds that § 230(c)(1) of the CDA precludes as a matter of law any claims arising from Defendants' removal of Plaintiff's videos and GRANTS the motion to dismiss to the extent that Plaintiff seeks to impose liability as a result of said removals.").

For these reasons, Plaintiff's claims fail as a matter of law, and the FAC should be dismissed with prejudice. *See Lancaster*, 2016 U.S. Dist. LEXIS 88908, at *8 ("Any amendment would be futile, and thus the Court dismisses such claims with prejudice"); *SFJ*, 144 F. Supp. 3d at 1096 (dismissing claims with prejudice because Section 230 "must be interpreted to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles" (quoting *Roommates*, 521 F.3d at 1175)).

### D.       Plaintiff Cannot Plead the Required Elements of Her Claims

Even beyond these categorical defects in the First Amended Complaint, each individual claim suffers from its own defects that cannot be cured by amendment.

#### 1.       The UCL Claim Fails

Plaintiff's UCL claim fails for several reasons: (1) Plaintiff has not "lost money or property"; (2) Roblox's alleged conduct was not "unlawful"; (3) Roblox's alleged conduct was not "unfair"; and (4) Plaintiff fails to identify with specificity any fraudulent statement or omission by Roblox.

*First*, Plaintiff lacks standing to assert a UCL claim because only plaintiffs who have "suffered injury in fact and . . . lost money or property as a result of the unfair competition" have standing to bring a UCL claim. Cal. Bus. & Prof. Code § 17204. Plaintiff has not "lost money or property," because she has suffered no "form of economic injury." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011). "Courts have held that in-game currency used for [in-game virtual items] is not an economic injury within the meaning of the UCL." *Mai v. Supercell Oy*, No. 20-05573-EJD, 2021 U.S. Dist. LEXIS 178949, at *7-8 (N.D. Cal. Sept. 20, 2021) (citing and discussing cases).

Here, the loss of virtual items by Plaintiff and the Robux she used to acquire them does not represent an economic injury. Moreover, Plaintiff agreed in the Roblox Terms that the Robux (i) were not her property but merely a "revocable" license to use Robux, (ii) had no "equivalent value in real currency," (iii) did not "act as a substitute for real currency," (iv) did not "act as consideration for any legally enforceable contract," and (v) when used to acquire virtual items, did not involve a transaction that could "form the basis of any private right of action against [Roblox]." Brown Decl. Ex. 1 § 4.A. The UCL claim should thus be dismissed for lack of standing.

*Second*, Roblox's conduct was not "unlawful" under the UCL because the other claims upon which her "unlawful" UCL claim depends fail to state a claim, as discussed below. *See Sencion v. Saxon Mortg. Servs., Inc.*, No. 10-03108-PSG, 2011 U.S. Dist. LEXIS 8567, at *14-15 (N.D. Cal. Jan. 28, 2011) (dismissal is warranted where a plaintiff fails to allege factual support for each element of an independently unlawful act upon which a UCL claim rests); *Oracle Am.,*

*Inc. v. CedarCrestone, Inc.*, 938 F. Supp. 2d 895, 908 (N.D. Cal. 2013) (section 17200 claim failed because underlying antitrust claim dismissed).

*Third*, Plaintiff asserts no viable claim under the "unfair" prong of the UCL. Removing content from the Roblox platform that violates the Roblox Terms, as disclosed and agreed to in the Roblox Terms, does not "offend[] an established public policy" and is not "immoral, unethical, oppressive, unscrupulous, or substantially injurious to customers." *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886-87 (1999); *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 867 (9th Cir. 2018) (applying the *South Bay* test). Balancing "the utility of [Roblox's] conduct against the gravity of the harm to [Plaintiff]," *id.*, certainly weighs in favor of protecting users and the intellectual property rights of third parties by removing content that violates their rights. Plaintiff's non-pecuniary loss of access to virtual pajamas for her in-game avatar is far from the "substantial injury" that is required to outweigh countervailing benefits and establish an unfair practice under the UCL. *See, e.g.*, *In re Firearm Cases*, 126 Cal. App. 4th 959, 981 (2005) ("[T]he challenged practice must be the likely cause of substantial injury.").

In contrast, Roblox is required by law to remove infringing content upon notice from a copyright owner and in other contexts. *See, e.g.*, 17 U.S.C. § 512. Compliance with the law is an exceedingly high justification for conduct that is otherwise alleged to be "unfair." *See, e.g.*, *Cel-Tech Commc'ns v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 183 (1999) ("Acts that the Legislature has determined to be lawful may not form the basis for an action under the [UCL] . . . ."); *Hodsdon*, 891 F.3d at 866 (under the *Cel-Tech* test, "for an act to be 'unfair,' it must 'threaten' a violation of law or 'violate the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law'"). Additionally, where a plaintiff's claims under the "unfair" prong "'overlap entirely with their claims of fraud,' the plaintiff's unfair prong claim cannot survive." *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 561 (N.D. Cal. 2019).

*Fourth*, Plaintiff asserts no viable claim under the UCL's "fraudulent" prong. "Plaintiffs must allege specific facts to show that the members of the public are likely to be deceived" by a specific misrepresentation. *In re Google, Inc. Privacy Policy Litig.*, No. 12-01382-PSG, 2013 U.S. Dist. LEXIS 171124, at *44-45 (N.D. Cal. Dec. 3, 2013); *accord In re iPhone 4S Consumer Litig.*,

637 F. App'x 414, 415-16 (9th Cir. 2016). "[T]o be actionable under the UCL, a concealed fact must be material in the sense that it is likely to deceive a reasonable consumer." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025-26 (9th Cir. 2008) (citing *Aron v. U-Haul Co. of Cal.*, 143 Cal. App. 4th 796, 806 (2006)).

Federal Rule of Civil Procedure 9(b) applies to UCL claims based on allegedly fraudulent practices. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-25 (9th Cir. 2009). Under this standard, a plaintiff must include particularized allegations identifying the alleged misrepresentations and showing how they were fraudulent. *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 968 (N.D. Cal. 2008) ("[P]laintiffs seeking to satisfy Rule 9(b) must 'set forth an explanation as to why the statement or omission complained of was false and misleading.'"), *aff'd*, 322 F. App'x 489 (9th Cir. 2009). The allegations must contain "'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

Plaintiff's fraud claim here fails on each of these bases. As an initial matter, it is unclear what the basis is for this claim. Plaintiff does not identify any specific misstatement by Roblox that was supposedly false or misleading, much less provide any of the detail required by Rule 9(b), such as the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz*, 476 F.3d at 764. This "time, place, and manner" information is essential in pleading any fraud claim, yet it is entirely absent here. *See, e.g.*, *Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1139 (N.D. Cal. 2013) ("To satisfy Rule 9(b), a pleading must identify the who, what, when, where and how of the misconduct charged.").

To the extent Plaintiff's claim is based on a theory of fraudulent omission, it does not come close to alleging what is required. "In general, 'California courts have . . . rejected a broad obligation to disclose,'" and an omission claim is permissible only where the defendant had an affirmative legal duty to disclose the information at issue. *Sud v. Costco Wholesale Corp.*, 229 F. Supp. 3d 1075, 1085 (N.D. Cal. 2017) (quoting *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012)), *aff'd*, 731 F. App'x 719 (9th Cir. 2018). Here, Plaintiff claims that "Roblox offers no explanation of what policy the item actually violated, how it generally makes such determinations, or how to appeal its decisions." FAC ¶ 40. Yet Roblox was under no such duty to

do so because, again, Roblox had already expressly disclosed that it could and would remove items discretionarily and without notice. Brown Decl. Ex. 1 § 6.B(9).

Plaintiff's FAC includes only a conclusory assertion that "Defendant had a duty to disclose to users—in a manner sufficient to place both children and their parents on notice—the fact that the content in its Avatar Shop had not undergone any content review." FAC ¶ 86. Plaintiff offers no factual allegations establishing the source of an alleged duty to disclose. Nor could she. Any such alleged duty would contradict the express disclaimers in the Roblox Terms that Roblox "reserve[s] the right, but shall have no obligation, to pre-screen, refuse to accept, post, display or transmit your Content Services through the Service," Brown Decl. Ex. 1 § 2.A(1), and is "under no obligation to edit or control UGC [user-generated content] that you or others Provide, and will not be in any way responsible or liable for UGC." Brown Decl. Ex. 1 § 6.B(9). "Plaintiffs' failure to read the information provided does not constitute a fraudulent business practice." *Baxter v. Intelius, Inc.*, No. 09-01031, 2010 U.S. Dist. LEXIS 104218, at \*16 (C.D. Cal. Sept. 16, 2010).

Even if Plaintiff could somehow identify a misleading statement or omission, her claim still would fail for lack of reasonable reliance. As a matter of law, Plaintiff could not have reasonably relied on her alleged understanding of how the Avatar Shop worked because, as discussed, the express provisions of the Roblox Terms made clear to Plaintiff that Roblox could and would remove virtual items at any time. It is well settled that such clear language in a governing agreement setting forth the terms of the parties' relationship precludes a contracting party from claiming that it reasonably relied on an extra-contractual statement suggesting something different. *See, e.g.*, *Block v. eBay, Inc.*, 747 F.3d 1135, 1140 (9th Cir. 2014) (affirming dismissal of UCL claim because defendant's disclosures required conclusion that plaintiff "could not have relied on the alleged misrepresentations, nor would they have been material"); *Janda v. T-Mobile, USA, Inc.*, No. 05-03729-JSW, 2009 U.S. Dist. LEXIS 24395, at \*26-28 (N.D. Cal. Mar 13, 2009) (dismissing UCL fraud claim where defendant made unambiguous disclosures in service agreements), *aff'd*, 378 F. App'x 705 (9th Cir. 2010); *Spiegler v. Home Depot U.S.A., Inc.*, 552 F. Supp. 2d 1036, 1047-48 (C.D. Cal. 2008) (dismissing UCL fraud claim in light of an unambiguous contract), *aff'd*, 349 F. App'x 174 (9th Cir. 2009).

For all of these reasons, the UCL claim fails.

## 2.     The CLRA Claim Fails

Plaintiff cannot plead a claim under the CLRA because (1) the transactions at issue did not involve the sale or lease of goods or services under the CLRA; and (2) the alleged conduct was neither unfair nor deceptive to a reasonable consumer.

*First*, there can be no claim under the CLRA without "a transaction intended to result or that results in the sale or lease of *goods or services*." Cal. Civ. Code § 1770 (emphasis added). The CLRA defines "goods" as "tangible chattels bought or leased for use primarily for personal, family, or household purposes" and defines "services" as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." *Id.* § 1761(a)-(b). Courts unanimously agree that in-game virtual currency and virtual items are neither a good nor a service for purposes of the CLRA. *See, e.g.*, *Coffee*, 2021 U.S. Dist. LEXIS 26750, at *36 (purchases of virtual currency through the Google Play app store did not qualify as a good or service under the CLRA); *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1046 (N.D. Cal. 2020) ("Plaintiff's CLRA claim therefore fails because the virtual currency at issue is not a good or service."); *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1008 (N.D. Cal. 2012) (Facebook Credits are not covered by the CLRA). Here, because Plaintiff's alleged transactions involve only the acquisition of virtual currency and virtual items, they are not covered by the CLRA.

*Second*, "[a] CLRA claim based on a defendant's omission must be based on an omission 'contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose.'" *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1112-13 (N.D. Cal. 2016) (quoting *Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 996 (N.D. Cal. 2013)). Claims under the CLRA are subject to the same "reasonable consumer" test as are claims brought under the UCL. *See, e.g.*, *Morgan v. Wallaby Yogurt Co.*, No. 13-00296-WHO, 2013 U.S. Dist. LEXIS 144959, at *34 (N.D. Cal. Oct. 4, 2013) ("Because the plaintiffs' CLRA claim is subject to the 'reasonable consumer' standard, the plaintiffs fail to state a claim under the CLRA for the

same reasons they fail to state a claim under [the] 'fraudulent' prong of the UCL."). Thus, Plaintiff's CLRA claim fails for the same reasons the UCL "fraud" claim fails.

### 3.    The Fraud Claim Fails

For the same reasons that Plaintiff's UCL "fraud" claim fails, including failure to allege fraud with the specificity required by Rule 9(b), *see supra* Section III.D.1, the common law fraud claim fails, as both claims are predicated on the same allegedly fraudulent conduct. *Compare* FAC ¶ 70, *with id.* ¶¶ 92-96; *see Overton v. Uber Techs., Inc.*, 333 F. Supp. 3d 927, 950-51 (N.D. Cal. 2018) ("The claim fails under the 'fraudulent' prong of the UCL for the same reason Plaintiffs' fraud claim fails.").

### 4.    The Conversion Claim Fails

To establish conversion, a plaintiff must show "(1) his ownership of or right to possess the property at the time of the conversion, (2) that the defendant disposed of the plaintiff's property rights or converted the property by a wrongful act, and (3) damages." *Bank of N.Y. v. Fremont Gen. Corp.*, 514 F.3d 1008, 1019-20 (9th Cir. 2008). Plaintiff here can show none of these elements because she identifies no property that could have been converted. Plaintiff agreed in the Roblox Terms that Robux (i) were not her property but merely a "revocable" license to use Robux, (ii) had no "equivalent value in real currency," (iii) did not "act as a substitute for real currency," (iv) did not "act as consideration for any legally enforceable contract," and (v) when used to acquire virtual items, did not involve a transaction that could "form the basis of any private right of action against [Roblox]." Brown Decl. Ex. 1 § 4.A; *see also id.* § 4.A(7) ("except for the limited licenses granted under these Terms, we reserve and retain all rights, title, and interest in and to Robux").

Plaintiff also agreed that "[t]ransactions involving the exchange of Robux for virtual items or virtual services on the Platform are not legally enforceable," thereby granting her no ownership or possessory rights in any Robux or virtual items on the Roblox Platform. Brown Decl. Ex. 1 § 4.A(3). She further expressly authorized Defendant to remove virtual items from the Roblox Platform that she may have obtained with Robux. Brown Decl. Ex. 1 §§ 2.A(1), 5.A(3), 6.B(8).

Plaintiff thus cannot establish the ownership or possessory interest that conversion requires, nor any unauthorized conversion of that property, nor any damages; and her claim must fail.

### 5. The Unjust Enrichment Claim Fails

Plaintiff's unjust enrichment claim fails because "California does not recognize a separate cause of action for unjust enrichment." *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 132-34 (N.D. Cal. 2020) (citing *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1307 (2011) ("Unjust enrichment is not a cause of action, just a restitution claim.")). Although "[i]n some circumstances, courts have construed purported claims for unjust enrichment as quasi-contract claims seeking restitution," "an action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter." *Id.* (citing cases); *see also Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1388 (2012) ("A plaintiff may not . . . pursue or recover on a quasi-contract if the parties have an enforceable agreement regarding a particular subject matter."). Moreover, there can be no unjust enrichment where Plaintiff received exactly what she bargained for: the ability to use the virtual clothing so long as it remained on the Roblox Platform. In any event, now that Roblox has credited back the Robux to Plaintiff's account for the moderated items, Brown Decl. ¶¶ 12-13, there can be no further claim for restitution.

### 6. The Breach of the Implied Covenant Claim Fails

Plaintiff has no claim for breach of the implied covenant of good faith and fair dealing because the Roblox Terms expressly permit the conduct alleged.

The California Supreme Court has squarely held that "[a]s to acts and conduct authorized by the express provisions of the contract, no covenant of good faith and fair dealing can be implied which forbids such acts and conduct." *Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 374 (1992); *see also, e.g.*, *Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107, 1121 n.7 (2008) (rejecting implied covenant claim where agreement expressly permitted defendant's conduct). Accordingly, courts in this District routinely dismiss such claims when the conduct alleged is expressly permitted by the applicable terms of service. *See, e.g.*, *Smith*, 262 F. Supp. 3d at 956 (claim for breach of the implied covenant barred by express terms of Facebook Terms of Use); *Song Fi Inc. v. Google, Inc.*, 108 F. Supp. 3d 876, 884-85 (N.D. Cal. 2015) (dismissing implied covenant claim because "conduct authorized by a contract cannot give rise to a claim for breach of the agreement").

Here, the applicable contract between the parties repeatedly and expressly permits Roblox to remove user-generated content from the Roblox Platform at any time without liability to users. Brown Decl. Ex. 1 §§ 2.B, 5.A(3), 6.B(9). The contract also expressly states that Roblox has "no obligation" to pre-screen user-generated content that users upload to the Platform. *Id.* § 2.A(1). Further, the contract expressly states that "[t]ransactions involving the exchange or Robux for virtual items or virtual services on the Platform are not legally enforceable, may not form the basis of any private right of action against Us." *Id.* § 4.A(3).

Because the implied covenant of good faith and fair dealing cannot forbid Roblox from exercising these express rights, Plaintiff's claim for breach of the implied covenant fails.

**E.     The Claims for Injunctive Relief Fail**

To the extent Plaintiff asserts claims for injunctive relief, those claims must fail for the same reason this action is moot: Roblox has already (i) credited back the requested amount of Robux to Plaintiff's account, (ii) agreed to do the same for all other users who did not violate the Roblox Terms, (iii) implemented an ongoing automated system to return Robux to all users for items moderated in the past and future, and (iv) promised to maintain this policy. Brown Decl. ¶¶ 12-14. A party seeking injunctive relief from a federal court must allege not only that she has "suffered or is threatened with a 'concrete and particularized' legal harm" but also that there is "a sufficient likelihood that [she] will again be wronged in a similar way." *Bates v. UPS, Inc.*, 511 F.3d 974, 985 (9th Cir. 2007); *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1196 (N.D. Cal. 2014). Where the plaintiff is now on notice of the defendant's practices, "she cannot allege that she would be fraudulently induced to purchase the products in the future," and her requests for injunctive relief should be "dismissed without leave to amend." *Ham*, 70 F. Supp. 3d at 1196.

Here, because the injunctive relief sought by Plaintiff has already been granted by Roblox and there is no risk of her being misled in the future about the same issue, the claims for injunctive relief should be dismissed.

**CONCLUSION**

For the foregoing reasons, the First Amended Complaint should be dismissed and/or stricken. The dismissal should be with prejudice, as any further amendment would be futile given

that the claims are unripe, moot, and barred by the parties' contract and CDA Section 230(c), among other incurable defects in the individual claims. Dismissal with prejudice is also proper because Plaintiff has already taken the opportunity to amend her complaint after Roblox's first motion to dismiss the original complaint.

Dated: December 10, 2021

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ *Anthony J Weibell*
        Anthony J Weibell

*Attorneys for Defendant*
ROBLOX CORPORATION