UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JANE DOE,

              Plaintiff,

     v.

ROBLOX CORPORATION,

              Defendant.

Case No.  3:21-cv-03943-WHO

**ORDER ON MOTION TO DISMISS AND STRIKE**

Re: Dkt. No. 25

Defendant Roblox Corporation ("Roblox") owns and operates an online "metaverse" in which users control avatars of themselves. Users can purchase an in-game currency and spend it on virtual items for their avatars, some of which are generated by other users. Plaintiff Jane Doe, who is a minor, alleges that Roblox incentivizes its users—who are mostly minors—to purchase these items, and that it takes a cut of the profits. Unbeknownst to users, she claims, Roblox will delete some items without warning to induce users to buy more. Doe alleges that this deletion scheme is an unlawful business practice and is fraudulent, and brings related claims on behalf of herself and a putative class. Roblox moves to dismiss. The motion is largely denied; it is granted with leave to amend on Doe's claim under the "unfair" prong of California's Unfair Competition Law.

## BACKGROUND

Roblox is incorporated in Delaware with its principal place of business in California. First Amended Complaint ("FAC") [Dkt. No. 22] ¶ 15. In 2004, it created a "metaverse," also called Roblox, in which users generate a three-dimensional virtual world. *Id.* ¶ 20. In Roblox, approximately seven million users have generated content like avatars of themselves, apparel for the avatars, and other virtual objects. *See id.* ¶¶ 20, 24–29. Roblox uses "Robux," an in-game

United States District Court
Northern District of California

currency that can be purchased with real money. *Id.* ¶ 25. Users can use Robux to purchase virtual items from Roblox. *Id.* ¶¶ 25–26. Robux can also be used to purchase virtual items created by other users; when that occurs, Roblox also takes a percentage of the sale (currently, 30 percent). *Id.* ¶ 27.

According to the Complaint, more than half of Roblox's users are under age 13. *Id.* ¶ 20. When creating a Roblox account, users must enter their birthday. *Id.* ¶ 21. Roblox allegedly does not warn users whose birthdays show that they are minors that they should obtain parental permission to create an account. *Id.* ¶ 22. When a user creates an account, Roblox provides a message stating that "[b]y clicking Sign Up, you are agreeing to the Terms of Use including the arbitration clause" above a "Sign Up" button. *Id.* ¶ 21. "Terms of Use" is written in a different color, underlined, and hyperlinked to the site's terms. *Id.*

Doe[1] is 12 years old and created a Roblox account when she was 10. *Id.* ¶¶ 50–51. She purchased hundreds of Robux with gift cards. *Id.* ¶ 52. She used the Robux to make many in-game purchases, such as clothing for her avatar. *Id.* ¶ 53. According to her, she believed that she "owned" those virtual items and that they "would remain in her inventory and usable on the platform." *Id.* ¶ 54.

Three types of provisions in Roblox's Terms of Use are relevant. First, the Terms of Use include policies about content moderation. *See generally* Dkt. No. 25-2 ("TOU").[2] They provided

---

[1] Doe seeks to proceed pseudonymously due to her youth. "In this circuit, we allow parties to use pseudonyms in the unusual case when nondisclosure of the party's identity is necessary to protect a person from harassment, injury, ridicule or personal embarrassment." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067–68 (9th Cir. 2000). To test whether use of a fictious name is appropriate, courts ask whether "the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Id.* at 1068. Roblox has not objected to Doe proceeding pseudonymously—though she has not moved to do so—and her father and next friend is not proceeding under a fictious name. The Ninth Circuit has recognized that child plaintiffs are especially vulnerable. *See id.* Accordingly, in the absence of any indication of unfairness to Roblox, Doe may continue to proceed under a fictious name to avoid the potential embarrassment associated with being the lead plaintiff in a suit like this.

[2] Roblox's request for judicial notice of the Terms of Use in place when Doe created an account is GRANTED because Doe does not object, they are referenced extensively in and central to the allegations of the FAC, and their accuracy is not subject to reasonable dispute due to being a publicly accessible web page. *See* Fed. R. Evid. 201 (standard for judicial notice); *Datel Holdings*

that "there may be situations where games, avatar items, or other content may be removed from the Service (due to violations of these Terms or for other reasons).  We will have no liability for any losses you may incur as a result, and will not be liable to refund any Robux or other funds you spent in or for that game or content." *Id.* § 5.A(3).  They also provided that Roblox may "at any time and without prior notice, screen, remove, edit, or block any [User Generated Content ("UGC")] that in our sole judgment violates these Terms or is otherwise objectionable" and that the user agreed "to waive, and do waive, any legal or equitable right or remedy you have or may have against us with respect to UGC." *Id.* § 6.B(9).

Second, the Terms of Use contained provisions governing Robux.  They provide that users actually acquire a "limited license" to use Robux, which gives users a "non-exclusive, revocable, personal, limited, non-transferable (except as specifically set out in Section 4A(2)(e) below) right and license to use Robux only for your personal, entertainment use exclusively in connection with the Service as permitted by us, subject to these Terms." *Id.* § 4.A(1).  They also provided that Robux were not a "substitute for real currency." *Id.* § 4.A(3).

Third, the Terms of Use included provisions about legal relief against Roblox.  They provided that "YOU AND WE AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR OUR INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING." *Id.* § 11.A.  They included several more specific provisions to elaborate on this point. *See id.*  They also provided that the user and Roblox agreed to arbitrate all disputes with several specific exceptions (such as intellectual property rights). *Id.* § 11.C(1).  And they required users to submit complaints informally to Roblox to negotiate a resolution for at least 60 days before initiating suit or arbitration. *Id.* § 11.C(3).

At some point, Roblox deleted several of Doe's virtual items "without warning or explanation." *Id.* ¶ 55.  Doe alleges that this deletion was part of a broader "scheme," *id.* at 9, that

*Ltd. v. Microsoft Corp.*, 712 F. Supp. 2d 974, 985 (N.D. Cal. 2010) (taking judicial notice of terms of use on these bases).

Roblox employed.[3]  Roblox, says Doe, does everything it can to encourage users to buy virtual items with Robux.  *Id.* ¶ 35.  And users expect that they "effectively own the items they purchase" for "as long as they continue to play the game."  *Id.* ¶ 37.  When items are uploaded by users to sell, they are only displayed for sale once Roblox approves them.  *Id.*  But, Doe alleges, "unbeknownst to users, this pre-approval process . . . does not include vetting the uploaded items for compliance" with the Terms of Use.  *Id.* ¶ 38.  Instead, Roblox allegedly deletes them after people have purchased them so that it can still make a profit off of them.  *Id.* ¶¶ 38–39.  Although Roblox represents that it only does this when an item violates the Terms of Use, Doe claims that it removes content that does not "appear" to violate any policies.  *Id.* ¶ 40.  Doe alleges that too is done so that users will purchase the same item again or purchase a similar item.  *See id.* ¶¶ 40–41.  Doe asserts that "[t]his is not a design flaw"; Roblox "fails to take steps to prevent previously deleted content from reappearing" so that people—and especially children—will spend more money.  *Id.* ¶ 41.  Doe cites several specific examples of this occurring.  *See id.* ¶¶ 41–42.  She claims that Roblox carries out this "scheme" on its most popular items, to maximize profit.  *Id.* ¶ 44.

Doe—represented by her father and next friend, John Dennis—brought this suit in May 2021 and filed her FAC in November 2021.  Doe alleges that Roblox's alleged content moderation scheme violates California's Unfair Competition Law ("UCL") and Consumers Legal Remedies Act ("CLRA"), and constitutes fraud, conversion, unjust enrichment, and breach of the covenant of good faith and fair dealing.  She seeks to represent a class of "[a]ll Roblox users who purchased content on the Roblox platform that was later deleted" and a subclass of minors in that group.  *See id.* ¶ 58.

## LEGAL STANDARD

### I.   MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(1)

---

[3] Doe separately alleges that children on Roblox have been exposed to lewd behavior, profanity, and other similar acts.  *See* FAC ¶¶ 30–34.  But this case is not about that type of behavior, so I do not recite those allegations here.

is a challenge to the court's subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  "Federal courts are courts of limited jurisdiction," and it is "presumed that a cause lies outside this limited jurisdiction."  *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994).  The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested.  *Id.*

A challenge pursuant to Rule 12(b)(1) may be facial or factual.  *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  In a facial attack, the jurisdictional challenge is confined to the allegations pleaded in the complaint.  *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).  The challenger asserts that the allegations in the complaint are insufficient "on their face" to invoke federal jurisdiction.  *See Safe Air Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  To resolve this challenge, the court assumes that the allegations in the complaint are true and draws all reasonable inference in favor of the party opposing dismissal.  *See Wolfe*, 392 F.3d at 362.

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Safe Air*, 373 F.3d at 1039.  To resolve this challenge, the court "need not presume the truthfulness of the plaintiff's allegations." *Id.* (citation omitted).  Instead, the court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."  *Id.* (citations omitted). Once the moving party has made a factual challenge by offering affidavits or other evidence to dispute the allegations in the complaint, the party opposing the motion must "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction."  *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989); *see also Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).

## II.      MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### A.   Generally

Under FRCP 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *See Bell Atl. Corp. v.*

United States District Court
Northern District of California

*Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  There must be "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level."  *See Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff.  *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment."  *See Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

**B.  Rule 9(b)**

FRCP 9(b) imposes a heightened pleading standard where a complaint alleges fraud or mistake.  Under FRCP 9(b), to state a claim for fraud, a party must plead with "particularity the circumstances constituting the fraud," and the allegations must "be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong."  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citation omitted).  "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged."  *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted).

**DISCUSSION**

## I.    JURISDICTION

Roblox argues that this case is moot and unripe.  "Article III of the United States Constitution limits federal court jurisdiction to actual, ongoing cases or controversies."  *Wolfson v. Brammer*, 616 F.3d 1045, 1053 (9th Cir. 2010) (internal quotation marks and citation omitted).  In a (proposed) class action like this, "if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."  *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) (quoting *O'Shea v. Littleton,* 414 U.S. 488, 494 (1974)).

### A.  Ripeness

Roblox argues that Doe's claims for damages are not ripe because the Terms of Use contain a provision requiring that plaintiffs give the company an opportunity for informal dispute resolution before filing suit.[4]  *See* Motion to Dismiss and Strike ("Mot.") [Dkt. No. 25]  7–9.  Doe replies that Roblox has not met its burden to show that the Terms of Use are valid or enforceable.  *See* Opposition to the Mot. ("Oppo.") [Dkt. No. 33] 7–10.  For the reasons that follow, I agree with Doe.

Whether Doe is bound by the Terms of Use is a question of state law; both parties rely on cases applying California law and I follow suit.  *See* Oppo. 8; Reply ISO Mot. ("Reply") [Dkt. No. 38] 3.  The Ninth Circuit has, several times, addressed how to determine whether a valid internet contract was formed under California law in circumstances like these.  *See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022); *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014).[5]  The alleged agreement that Roblox puts forward here is what courts have often

---

[4] Roblox initially appeared to argue that the entire case should be dismissed on ripeness grounds, Mot. 8 (arguing that "this lawsuit" is unripe), but effectively conceded in its reply brief that the contractual provision at issue does not apply to suits for injunctive relief, Dkt. No. 38 at 4 n.2.

[5] These cases addressed the validity and enforceability of arbitration agreements.  But to make that determination, "federal courts apply ordinary state-law principles that govern the formation of contracts."  *Nguyen*, 763 F.3d at 1175 (internal quotation marks and citation omitted).  So the principles in those cases apply equally here.

United States District Court
Northern District of California

called a "sign-in wrap" agreement—an agreement in which an internet user's assent is allegedly shown by clicking a button to sign up for a service accompanied by a message that, by doing so, the user is agreeing to terms of use. *See, e.g.*, *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75–76 (2d Cir. 2017) (collecting cases).[6]

Under California law, a valid contract requires the "mutual consent of the parties," which is "generally achieved through the process of offer and acceptance." *DeLeon v. Verizon Wireless, LLC*, 207 Cal. App. 4th 800, 813 (2012) (internal citations omitted). This "mutual consent" is "determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings." *Id.* Accordingly, even if an offeree does not know all of the terms of an offer, he "may be held to have accepted, by his conduct, whatever terms the offer contains" so long as there was a sufficient "outward manifestation or expression of assent." *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 992 (1972). But "when the offeree does not know that a proposal has been made to him this objective standard does not apply. Hence, an offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious." *Id.* at 993 (internal citations omitted).

In these particular circumstances, and at this procedural posture, I conclude that Roblox has not met its burden to show that Doe assented to the Terms of Use.

To start, there is no evidence that Doe had "actual notice" that she was agreement to the terms of use. *Nguyen*, 763 F.3d at 1176. In the absence of that showing, "the validity of the . . . agreement turns on whether the website puts a reasonably prudent user on *inquiry notice* of the terms of the contract." *Id.* at 1177 (emphasis added). As a general matter, that question depends on the "design and content of the website and the agreement's webpage." *Id.* Here, there is no "checkbox" that must be affirmatively selected to indicate consent. As a result, "an enforceable

---

[6] Though, recently, the Ninth Circuit appeared to treat similar agreements as "browsewrap-type" agreements. *See Berman*, 30 F.4th at 857–58. No matter the label, however, the key question is about the substance of the alleged agreement.

1    contract will be found based on an inquiry notice theory only if: (1) the website provides

2    reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the

3    consumer takes some action, such as clicking a button or checking a box, that unambiguously

4    manifests his or her assent to those terms."  *Berman*, 30 F.4th at 856.

5           When Doe signed up for Roblox's service—and, according to Roblox, assented to the

6    Terms of Use—she was 10 years old.  FAC ¶ 51.  Yet the only indication that she was signing on

7    to the complex, dense, and legalistic Terms of Use was (again, according to Roblox) the following

8    notice:

9
10
11

12
13
14
15
16
17

18    *See* Reply 2 (citing FAC ¶ 21) (full image in FAC).[7]

19           Doe would not have been put on inquiry notice by this agreement.  Even if the notice

20    would be sufficiently conspicuous and understandable for an adult, it is not for a child—at least as

21    a matter of law at this pre-evidentiary stage.  When Doe created her account, she had to take a

22    series of concrete actions like entering a username, birthday, etc.  Then, she had to click the bright,

23    large "Sign Up" button.  Above that button is a much less conspicuous statement indicating that

24    _____

25    [7] This image is from November 2021, not when Doe created her account.  *See* FAC ¶ 21.  She
     included it in the complaint for illustrative purposes.  It was Roblox, not Doe, who put it forward
26    as the relevant agreement.  I do not determine today whether it is appropriate to treat it that way; I
     only conclude that, *if* it was, it is still insufficient to show mutual assent.  Roblox also included
27    another similar sign-in wrap agreement in its Reply that it pulled from the Internet Archive from,
     it says, when Doe would have signed up for her account.  *See* Reply 2.  Submission of brand new
28    evidence in a reply brief is improper—especially when the case is at the pleadings stage and the
     evidence is pulled from an extra-pleadings source—so I decline to consider it.  And in any event,
     the same analysis is likely to apply to it.

United States District Court
Northern District of California

clicking that button has the effect of is agreeing to hyperlinked terms of use. A child—even a reasonably prudent one—would not be on inquiry notice that she was assenting to an agreement from this set of facts. The nature of Roblox's service reinforces this. As alleged, "at least" 70 percent of Roblox users are minors. FAC ¶ 4. More than half are under age 13. *Id.* Roblox is alleged to be aware of the age of its uses because it requires them to input their birthday when signing up. *Id.* ¶ 21. Despite this, Roblox does not include any sort of age-related protections that some other websites use, such as requiring parental permission. *See id.* ¶¶ 22–23.

Taken together, these considerations lead me to conclude that Doe did not give a sufficient outward manifestation of intent to be bound by the Terms of Use. She was 10 years old. Roblox knew her age. It did not require her to get an adult's permission or supervision. And the only indication that she was agreement to complicated terms of use was a not-so-conspicuous disclaimer above a bright sign-up button.

Neither party has found a case that addresses this situation, but usual principles of contract formation support Doe's position. The law has long recognized that children have less capacity than adults to assent to contractual terms. *See, e.g.*, *Ballard v. Anderson*, 4 Cal. 3d 873, 878 (1971). Indeed, California law (like the common law) permits minors to disaffirm most contracts, rendering them void. Cal. Fam. Code § 6710.[8] California "law shields minors from their lack of judgment and experience." *Berg v. Traylor*, 148 Cal. App. 4th 809, 818 (2007) (internal quotation marks and citation omitted). It is important for contract law to "protect a minor against himself and his indiscretions and immaturity as well as against the machinations of other people." *Id.* (internal quotation marks and citation omitted).

When it comes to contract formation or interpretation, courts often take into account particular features of individuals doing the contracting. Courts will often, for instance, consider whether a party is legally sophisticated or not. *See, e.g.*, *Meadows v. Dickey's Barbecue Restaurants Inc.*, 144 F. Supp. 3d 1069, 1078 (N.D. Cal. 2015) (Tigar, J.). Or courts consider whether individuals were impaired or intoxicated, even if they gave manifestations of assent,

---

[8] Doe does not intend to fully disaffirm the contract here. *See* Dkt. No. 47.

United States District Court
Northern District of California

because those manifestations would be less objectively reasonable.  *See, e.g.*, Restatement (Second) of Contracts § 12.  Here, both putative contracting parties were aware that Doe was a minor; in light of that fact, it is unreasonable to conclude that she manifested objective assent to be bound.

I recognize that, as a general matter, California provides that "a minor may make a contract in the same manner as an adult, subject to the power of disaffirmance."  Cal. Fam. Code § 6700. But that does not change the analysis above.  I do not hold that Doe could not make the contract in the same manner as an adult, I just apply the well-established principles that parties' outward manifestations of assent that matter and that, in these circumstances, those manifestations are insufficient to show a valid contract was formed.  This statutory provision does not, as I read it, require that every child be treated as a similarly situated adult would, regardless of what objective manifestations of assent there were or were not.

Accordingly, Doe was not bound to attempt to informally resolve her dispute before suing; I reject Roblox's ripeness argument.

**B.  Mootness**

Roblox argues that this case is moot.  *See* Mot. 7–9.  I disagree.

"A case becomes moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Porter v. Jones*, 319 F.3d 483, 489 (9th Cir. 2003) (internal quotation marks and citation omitted).  A defendant bears a "heavy burden" to show that the case it moot:  It must be "impossible for a court to grant any effectual relief whatever to the prevailing party."  *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 862 (9th Cir. 2017) (internal quotation marks and citations omitted).

Roblox argues that the case is moot because, as it states in a sworn declaration, it has voluntarily credited Doe (and users like her) Robux to make up for deletion of their virtual items. *See* Declaration of Matt Brown [Dkt. No. 25-1] ¶¶ 12–14.  According to it, "[a]fter the filing of this action, Roblox notified Plaintiffs, through legal counsel, that Plaintiffs and other active Roblox users would be eligible to receive a credit of Robux for virtual items . . . that were subsequently moderated by Roblox if those users have not violated the Roblox Terms and were

not aware at the time that the item violated the Roblox Terms of Use." *Id.* ¶ 12.  It developed an automated process for doing the same for items that *did* violate the Terms of Use.  *Id.* ¶ 14.  It has promised to do the same for "all other eligible users" and it has "offered to promise to maintain this policy going forward." *Id.*  And it "offered to reimburse Plaintiffs for reasonable attorneys' fees incurred to file the lawsuit based on the actual number of hours spent by Plaintiffs' attorneys on the matter to that point." *Id.*  As a result, "[t]o the best of Roblox's knowledge, the Robux allegedly spent by Plaintiffs on moderated items has already been credited back to their account in full, not just Roblox's 30% commission of Robux on the transaction." *Id.* ¶ 13.

This does not render the case moot.  First, the claims for damages are not moot at least because the parties disagree about whether Doe actually received this credit.  Doe represents, relying on an allegation in the FAC, that she has not received this credit.  FAC ¶ 57.  While I take Roblox's point that it is odd that Doe has not countered its sworn declaration with one of her own, this portion of the dispute is sufficiently real and concrete at this early stage.  Additionally, a voluntary program whose full scope is not yet known is less certain to remedy harm than a judicial judgment.  And Doe has not had an opportunity to examine this alleged reimbursement in discovery.  I will not, based solely on an untested declaration, find that Doe and the class have already been accorded complete monetary relief.

Second, the claims for injunctive relief are not moot at least because it is not clear that Roblox's unilateral decision to credit affected users will achieve the full scope of relief that an injunction would award.  Roblox states only that it "offered to promise to maintain" the policy on deletions that do not violate the Terms of Use; an unaccepted offer, including in the context of settlement offers to moot a case, is a "legal nullity." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 161 (2016), *as revised* (Feb. 9, 2016) (holding that an unaccepted settlement offer does not moot a case).  Separately, an injunction would allow Doe to have faith that Roblox will adhere to its (alleged) obligations in a way that a unilateral—and not necessarily legally binding—promise cannot. *Cf. Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (holding that deceived consumers have standing to pursue injunctions in these circumstances).  Parties do not get to moot injunctive-relief suits just by committing to behave lawfully going forward. *Cf., e.g.,*

1   *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014) ("The voluntary cessation of challenged

2   conduct does not ordinarily render a case moot because a dismissal for mootness would permit a

3   resumption of the challenged conduct as soon as the case is dismissed.").[9]

## II.   CLASS ALLEGATIONS

Roblox argues that the class claims should be stricken because the Terms of Use include a class action waiver. But because Roblox has not shown, at least at this early stage, that the Terms of Use are binding on Doe, *see supra* Section I, I reject this argument as well.

## III.   FAILURE TO STATE A CLAIM

### A.   Terms of Use

Roblox argues that Doe cannot bring a valid cause of action because she agreed to the policies at issue when she agreed to the Terms of Use. Mot. 11–12. Because I find that Doe did not assent to them, *see supra* Section I, they cannot foreclose relief on this ground.

### B.   Communications Decency Act

Roblox argues that Doe's claims are barred by Section 230 of the Communications Decency Act of 1996 ("CDA"). Mot. 13–15. I disagree.

Under Section 230, "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). It also states,

No provider or user of an interactive computer service shall be held liable on account of—

> (A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or
>
> (B) any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in paragraph (1).

47 U.S.C. § 230(c)(2). But "this grant of immunity applies only if the interactive computer service provider is not also an 'information content provider,' which is defined as someone who is

---

[9] Roblox argues that the claims for injunctive relief should be dismissed under Rule 12(b)(6) for the same reasons that they are moot. Mot. 23. For the same reasons, I reject that argument.

United States District Court
Northern District of California

'responsible, in whole or in part, for the creation or development of' the offending content." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (en banc) (quoting 47 U.S.C. § 230(f)(3)).  In passing Section 230, Congress "sought to spare" service providers the "grim choice" between taking responsibility for often enormous volumes of content or deleting nothing at all for fear of having that responsibility placed on it anyway.  *See id.* at 1163.

"The majority of federal circuits have interpreted the CDA to establish broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service."  *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007) (internal quotation marks and citation omitted).  In this Circuit, "[i]mmunity from liability exists for (1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider."  *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019) (internal quotation marks and citation omitted).

Here, two of the elements of the test are not in serious dispute.  Roblox is a "provider . . . of an interactive computer service."  *Id.*  And the information at issue is "information provided by another information content provider," *id.*, the users of Roblox's service who created the virtual items.

The parties' dispute comes down to whether Doe's claims seek to "treat" Roblox "as a publisher or speaker" of that information.  *See id.*  In assessing this question, "what matters is not the name of the cause of action—defamation versus negligence versus intentional infliction of emotional distress—what matters is whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another."  *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101–02 (9th Cir. 2009), *as amended* (Sept. 28, 2009).  Said otherwise, "courts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.'"  *Id.* at 1102.  The Ninth Circuit has held that "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230."

1   *Roommates.Com*, 521 F.3d at 1170–71.

2       In this case, Doe does not seek to treat Roblox as a publisher or speaker of the user-

3   generated content.  Liability would instead attach for Roblox's own failure to disclose that it can

4   delete previously purchased items with no warning.  Roblox is essentially functioning as a seller

5   of virtual merchandise, not a publisher of information.  Forcing Roblox to disclose that virtual

6   items may be deleted does not "boil[] down to deciding whether to exclude material that third

7   parties seek to post online." *Id.*  Nor does it even "require [Roblox] to monitor third-party

8   content," so it "falls outside of the CDA's immunity." *HomeAway.com, Inc. v. City of Santa*

9   *Monica*, 918 F.3d 676, 682 (9th Cir. 2019).  All it requires is a disclosure about how Roblox's

10  own online marketplace works.  And this case is far afield from the "prototypical service

11  qualifying for CDA immunity," which "is an online messaging board (or bulletin board) on which

12  Internet subscribers post comments and respond to comments posted by others." *Dyroff*, 934 F.3d

13  at 1097 (internal quotation marks, alteration, and citation omitted).

14      None of Roblox's cases compel a different conclusion.  Take its two most on-point ones.

15  *Coffee v. Google, LLC*, held that Google was immunity under Section 230 in a suit that sought to

16  bar it from placing applications containing loot boxes on its store.  No. 20-CV-03901-BLF, 2021

17  WL 493387, at *6 (N.D. Cal. Feb. 10, 2021).  This suit, in contrast, does not seek to tell Roblox

18  what it can and cannot post from third parties; it seeks instead to have Roblox disclose to

19  consumers that it has the ability to delete purchased content.  And *Sikhs for Justice "SFJ", Inc. v.*

20  *Facebook, Inc.*, 144 F. Supp. 3d 1088, 1096 (N.D. Cal. 2015), *aff'd*, 697 F. App'x 526 (9th Cir.

21  2017), just held that Facebook was not liable for choosing to remove certain Facebook pages, even

22  if that practice was allegedly discriminatory.  Again, Doe does not seek to impose liability for acts

23  of speaking or publishing.

24      **C.  UCL**

25      Roblox identifies several purported problems with the UCL claim.  *See* Mot. 16–20.  The

26  UCL prohibits any "unlawful, unfair, or fraudulent business act or practice."  Cal. Bus. & Prof.

27  Code § 17200.  The "unlawful" prong claim is derivative of the other alleged violations, so it rises

28  or falls with them.  *See, e.g.*, *Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1496 (2003).

United States District Court
Northern District of California

1    The "fraudulent" prong claim is discussed below with the other theories of fraud.

### i.    UCL Standing

To possess statutory standing under the UCL, "a plaintiff [must] have lost money or property."  *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 323 (2011) (internal quotation marks and citation omitted).  Roblox argues that "the loss of virtual items by Plaintiff and the Robux she used to acquire them does not represent an economic injury" and that she merely had a "revocable license" to use them.  *See* Mot. 16.

Doe has adequately alleged an economic injury: she purchased Robux that she alleges was done without adequate warning that she would fruitlessly spend them on items that would be unjustly deleted.  While Roblox cites cases that have held that purchases of in-game currency are not a sufficient economic injury in some circumstances, they did not address a situation based on a failure-to-disclose claim.  Many are premised on the idea that consumers got *exactly* what they expected, they just did not like the results.  *See Mai v. Supercell Oy*, No. 5:20-CV-05573-EJD, 2021 WL 4267487, at *3 (N.D. Cal. Sept. 20, 2021) ("Courts have held that in-game currency *used for loot boxes* is not an economic injury within the meaning of the UCL." (emphasis added)); *Mason v. Mach. Zone, Inc.*, 140 F. Supp. 3d 457, 465 (D. Md. 2015), *aff'd*, 851 F.3d 315 (4th Cir. 2017) ("At the moment of that antecedent transaction, Plaintiff's 'loss,' if any, was complete: then and there she had swapped something of value (real money) for something of whimsy (pretend 'gold').").

### ii.    Unfair Prong

Roblox argues that Doe has not alleged a violation of the "unfair" prong of the UCL because "[r]emoving content from the Roblox platform that violates the Roblox Terms, as disclosed and agreed to in the Roblox Terms, does not offend an established public policy and is not immoral, unethical, oppressive, unscrupulous, or substantially injurious to customers."  Mot. 17 (internal quotation marks, alteration, and citations omitted).  And Roblox invokes the holding of several courts that "where the plaintiffs' unfair prong claims overlap entirely with their claims of fraud, the plaintiffs' unfair prong claim cannot survive."  *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 561 (N.D. Cal. 2019) (internal quotation marks and citations omitted).  Doe does not dispute

United States District Court
Northern District of California

16

1   that this second principle is correct, so I assume for present purposes that it is.  Doe also does not

2   explain how the unfair prong claim would differ from the fraud claims.  Based on Doe's silence,

3   this claim is dismissed with leave to amend to the extent it is based on the unfair prong.

4             **CLRA, Fraud, and UCL Fraudulent Prong**

5                      **i.      Adequacy of Pleading**

6             The CLRA, UCL fraudulent prong, and fraud claims are, at this stage, analyzed under the

7   same standard.  Roblox argues that Doe has failed to state a claim because there are no actionable

8   misrepresentations and because the pleading is not sufficiently specific under FRCP 9(b).  Mot.

9   17–21.  For the reasons that follow, I reject its argument.

10            As a general matter, "[t]he necessary elements of fraud are: (1) misrepresentation (false

11  representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to

12  defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage." *All. Mortg.*

13  *Co. v. Rothwell*, 10 Cal. 4th 1226, 1239 (1995).  To establish a viable claim, "the plaintiff must

14  show that the reliance was reasonable by showing that (1) the matter was material in the sense that

15  a reasonable person would find it important in determining how he or she would act; and (2) it was

16  reasonable for the plaintiff to have relied on the misrepresentation." *Hoffman v. 162 N. Wolfe*

17  *LLC*, 228 Cal. App. 4th 1178, 1194 (2014), *as modified on denial of reh'g* (Aug. 13, 2014)

18  (citations omitted).  For present purposes, the test under the CLRA and UCL fraudulent prong is

19  similar: they are "governed by the 'reasonable consumer' test." *Williams v. Gerber Prod. Co.*,

20  552 F.3d 934, 938 (9th Cir. 2008) (citations omitted).  Under that test, Doe must show that

21  "members of the public are likely to be deceived." *Id.* (internal quotation marks and citation

22  omitted).  These claims may be stem from affirmative representations or from omissions,

23  concealment, or nondisclosure. *See All. Mortg.*, 10 Cal. 4th at 1239 (fraud); *Hodsdon v. Mars,*

24  *Inc.*, 891 F.3d 857, 861 (9th Cir. 2018) (consumer protection statutes).

25            Roblox first argues that Doe has failed to "identify any specific misstatement by Roblox

26  that was supposedly false or misleading, much less provide any of the detail required by Rule

27  9(b)." Mot. 18.  And it argues that "[t]o the extent Plaintiff's claim is based on a theory of

28  fraudulent omission," Doe has not pointed to a sufficient legal duty to disclose. *Id.*  Doe contends

United States District Court
Northern District of California

that her claims survive on both misrepresentation and omission theories. *See* Oppo. 16–17. I conclude that her misrepresentative conduct theory is viable so there is no need to address the omission theory today.

Doe has adequately alleged that reasonable consumers would have been misled by Roblox's conduct. Under California law, "a cause of action based in fraud may arise from *conduct* that is designed to mislead, and not only from verbal or written statements." *Tenet Healthsystem Desert, Inc. v. Blue Cross of California*, 245 Cal. App. 4th 821, 839 (2016) (emphasis in original). California courts have, accordingly, found misrepresentations implied by conduct alone. *See, e.g.*, *id.*; *Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559, 1567 (1996). That theory applies here. Doe alleges that Roblox's entire business model is geared toward enticing users, especially minors, to purchase virtual items. *See, e.g.*, FAC ¶ 35. The marketplace is designed as a "shop." *Id.* Even when the virtual items are created by other users, Roblox takes a cut of the sale. *Id.* ¶ 27. Roblox also has to approve those items for sale. *Id.* ¶ 37. But, according to Doe, Roblox never discloses that it has a secret practice—in her words, a "scheme"—in which it failed to actually vet those items for compliance and only delete them after users have purchased them. *Id.* ¶¶ 38–39. And, Doe alleges, Roblox "fails to take steps to prevent previously deleted content from reappearing." *Id.* ¶ 41.

Roblox's conduct would plausibly induce reasonable consumers to believe at least that their purchased virtual items would not be deleted for these alleged purposes. A jury could find that a reasonable consumer (especially a minor) would rely on a course of conduct that, from their perspective, would appear to be a straightforward purchase. "Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires consideration and weighing of evidence from both sides and which usually cannot be made on" a motion to dismiss. *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134–35 (2007) (internal quotation marks and citations omitted). So it is here. I cannot say that the information that Roblox could or would make these deletions is "so obviously unimportant that the jury could not reasonably find that a reasonable [consumer] would have been influenced by it." *In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009) (internal quotation marks and citation omitted).

18

I also reject Roblox's suggestion that it sufficiently disclosed this alleged practice in the Terms of Use.  On these allegations, that is a matter for the jury to assess contextually, not for dismissal as a matter of law.  *Cf. id.*  Roblox cites cases in which courts have held that particular disclosures were sufficient to undermine allegedly misleading statements on their individual facts. *See, e.g.*, *Block v. eBay, Inc.*, 747 F.3d 1135, 1140 (9th Cir. 2014) (holding that provisions in a contract were not misleading based on other provisions in the contract).  But as the Ninth Circuit once explained in a consumer protection case, reasonable consumers should not necessarily "be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box."  *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 939 (9th Cir. 2008).  Though that case involved physical packaging, the same fundamental principle applies to this case.  As I have already held, the Terms of Use here were not sufficiently called to Doe's attention to bind her to them.  *See supra* Section I.A.  A reasonable consumer could rely on Roblox's conduct marketing and selling the virtual items and, reasonably, be unaware of the "small print" equivalent of the dense, lengthy terms of use.  *Cf. Williams*, 552 F.3d at 939; *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 683–84 (N.D. Cal. 2021) ("WellPet may be correct that a reasonable consumer would understand the surrounding packaging to clarify these statements, but I cannot so hold on summary judgment. A reasonable consumer might also understand the more prominently placed Wellness Statements to be broader, not narrowed by other specific phrases on the packing.").

The claims are also adequately pleaded under Rule 9(b).  The "who" is Roblox.  The "what" is inducing users to reasonably believing that their purchased virtual items would not be deleted according to the alleged "scheme."  The "when" is when Doe used the service.  The "where" is on Roblox's website.  And the "how" is the course of conduct described above.  *Vess*, 317 F.3d at 1106 (laying out these requirements).  These allegations are specific enough to give Roblox notice of how Doe believes it defrauded her.  *See Kearns*, 567 F.3d at 1124 (discussing the purpose of Rule 9(b)).

### ii.   CLRA Good or Service

Roblox argues in-game currency and in-game purchases are not, as they must be, "goods or

services," Cal. Civ. Code § 1770(a), under the CLRA.  Mot. 20.  Doe does not dispute that there are no "goods" at issue as this case does not involve "tangible chattels bought or leased for use primarily for personal, family, or household purposes."  Cal. Civ. Code § 1761(a).  She argues that the case involves "services."  For the reasons that follow, I agree with Doe.

The CLRA prohibits certain unfair methods of competition and deceptive practices "in a transaction intended to result or that results in the sale or lease of goods or services to any consumer."  *Id.* § 1770(a).  And "services" are "work, labor, and services for other than a commercial or business use."  *Id.* § 1761(b).  Here, Roblox is alleged to carry out an unlawful business practice "in a transaction" that results in the "sale of services."  Roblox provides users access to its metaverse, which is comfortably classified as an online entertainment service.  When a user purchases Robux (with real money), they are engaging in a transaction with Roblox to make use of a part of that entertainment service.  Judge Gonzalez Rogers in this district has suggested that an analogous online word and similar virtual currency may be a "service" under the CLRA, though she declined to make a firm finding without a "full record."  *See C.W. v. Epic Games, Inc.*, No. 19-CV-03629-YGR, 2020 WL 5257572, at *4 (N.D. Cal. Sept. 3, 2020).

Roblox's argument to the contrary depends on several cases.  One was also written by Judge Gonzalez Rogers and predated the case just cited, which declined to adopt the same reasoning.  *See Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1046 (N.D. Cal. 2020).  That aside, *Doe* depended on two other cases, *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989 (N.D. Cal. 2012) (Wilken, J.), and *Berry v. Am. Express Publ'g, Inc.*, 147 Cal. App. 4th 224 (2007).  *I.B.*, which Roblox also relies on, depended largely on *Berry*.  And Roblox's last case relied on *Doe* and *I.B.  See Coffee v. Google, LLC, No.* 20-CV-03901-BLF, 2021 WL 493387, at *11 (N.D. Cal. Feb. 10, 2021).  *Berry* is the taproot for all of these cases.  It held that the issuance of credit was not a CLRA service; it did not address in-game currency.  The California Court of Appeal made that holding based largely on legislative history removing references to "credit" and on its finding that extension of credit is "separate and apart" from the sale or lease itself.  *Berry*, 147 Cal. App. 4th at 230–32.  I disagree with the district courts that extended *Berry* to the context of purchases of in-game currency.  As explained above, when a consumer buys in-game currency,

1   she is engaging with the online entertainment service in one of the key ways consumers are

2   intended to.  That transaction is at the core of the "service."  And neither Roblox nor the district

3   court cases cited pointed to anything in the legislative history that showed an intent to exempt

4   things like in-game currency, which was crucial to *Berry*'s conclusion about credit.

5       **D.  Conversion**

6         Roblox argues that the claim for conversion is inadequately pleaded.  "A conversion occurs

7   where the defendant wrongfully exercises dominion over the property of another."  *Bank of New*

8   *York v. Fremont Gen. Corp.*, 523 F.3d 902, 914 (9th Cir. 2008).  To show conversion, Doe must

9   adequately plead "(1) [her] ownership of or right to possess the property at the time of the

10  conversion, (2) that the defendant disposed of the plaintiff's property rights or converted the

11  property by a wrongful act, and (3) damages."  *Id.*  Roblox's only argument is that the Terms of

12  Use grant a revocable license and rendered the transactions not legally enforceable.  Mot. 21.

13  Because I have found the Terms of Use not binding, I reject Roblox's argument on that narrow

14  ground.

15      **E.  Unjust Enrichment**

16        Roblox argues that the unjust enrichment claim should be dismissed because there was a

17  contract, so Doe is foreclosed from bringing an unjust enrichment claim, which depends on a

18  quasi-contract cause of action.  Mot. 22.  "While California case law appears unsettled on the

19  availability of [unjust enrichment as] a cause of action," the Ninth Circuit "has construed the

20  common law to allow an unjust enrichment cause of action through quasi-contract."  *ESG Cap.*

21  *Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016).  A plaintiff must adequately allege

22  "that the defendant received and unjustly retained a benefit at the plaintiff's expense."  *Id.* at

23  1038–39.  Because I have found that the parties did not assent to a valid contract in the Terms of

24  Use, I again reject Roblox's narrow argument.

25      **F.  Breach of the Implied Covenant**

26        Doe represents that she pursues a claim for breach of the implied covenant of good faith

27  and fair dealing "[i]n the alternative, assuming the Court concludes that an enforceable contract

28  does exist between the parties."  Oppo. 18.  Based on Doe's representation that this claim is not

viable if the Terms of Use are not valid, there is no need to address the parties' arguments about it.

## CONCLUSION

The motion to dismiss is GRANTED WITH LEAVE TO AMEND on the UCL claim to the extent it alleges a violation of the unfair prong.  It is otherwise DENIED.  Any amended complaint shall be filed within 21 days.

**IT IS SO ORDERED.**

Dated: May 9, 2022



William H. Orrick
United States District Judge