Rafey Balabanian (SBN 315962)
rbalabanian@edelson.com
Yaman Salahi (SBN 288752)
ysalahi@edelson.com
P. Solange Hilfinger-Pardo (SBN 320055)
shilfingerpardo@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

Jay Edelson (*pro hac vice* forthcoming)
jedelson@edelson.com
J. Eli Wade-Scott (*pro hac vice* forthcoming)
ewadescott@edelson.com
EDELSON PC
350 N LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Attorneys for Plaintiff and the Putative Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JANE DOE, | CASE NO.: 3:21-cv-03943-WHO |
| Plaintiff, | **PLAINTIFF'S NOTICE OF MOTION AND MOTION IN SUPPORT OF PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT** |
| v. | |
| ROBLOX CORPORATION, | |
| Defendant. | Date: May 3, 2023 |
| | Time: 2:00 pm |
| | Judge: William H. Orrick |
| | Courtroom: 2, 17th Floor |

# TABLE OF CONTENTS

I.      **FACTUAL AND PROCEDURAL BACKGROUND** ....................................... 2

     A.    Factual Background ............................................................................................ 2

     B.    Procedural Background and Settlement Negotiations ...................................... 4

II.     **SUMMARY OF SETTLEMENT TERMS** ............................................................ 6

     A.    Settlement Class .............................................................................................. 6

     B.    Settlement Fund ............................................................................................... 7

     C.    Allocation ........................................................................................................ 7

     D.    Prospective Relief ........................................................................................... 8

     E.    Payment of Settlement Notice and Administrative Costs ............................... 8

     F.    Payment of Attorney's Fees, Costs, and Service Award ................................ 8

     G.    Release of Liability ......................................................................................... 9

III.    **THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS** .................................................................................................................... 9

     A.    The proposed Settlement Class is sufficiently numerous. .................................. 10

     B.    Common questions predominate over individual questions within the proposed Settlement Class. ............................................................................. 10

     C.    Plaintiff Doe is typical of the proposed Settlement Class. ................................ 15

     D.    Plaintiff Doe and Proposed Class Counsel are adequate to represent the proposed Settlement Class. ............................................................................. 15

     E.    A class action is the superior means of resolving this case. ............................. 16

IV.    **THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL.** ........ 17

     A.    Doe and proposed Class Counsel have adequately represented the Class. ........... 17

     B.    The Settlement was negotiated at arm's length, and lacks any of the hallmarks of collusion identified by the Ninth Circuit in *Bluetooth*. .................... 19

     C.    The Settlement secures outstanding relief for the Class. ..................................... 21

     D.    The Settlement is not a coupon settlement. ......................................................... 24

     E.    The Settlement treats Class Members equitably relative to each other. ............... 25

V.      **THE COURT SHOULD APPROVE THE PROPOSED FORM AND MANNER OF NOTICE** .......................................................................................... 26

VI.    **CONCLUSION** ......................................................................................................... 28

1

# **TABLE OF AUTHORITIES**

2

3

**Cases** **Page(s)**

4

*All. Mortg. Co. v. Rothwell*,
  10 Cal. 4th 1226 (1995) ................................................................................... 11

5

*Akaosugi v. Benihana Nat. Corp.*,
6  282 F.R.D. 241 (N.D. Cal. 2012) ...................................................................... 10

7

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) .......................................................................................... 16
8

9 *Astiana v. Hain Celestial Grp., Inc.*,
  783 F.3d 753 (9th Cir. 2015) ............................................................................ 14

10

*Berger v. Home Depot USA, Inc.*,
11  741 F.3d 1061 (9th Cir. 2014) .......................................................................... 11

12

*Broomfield v. Craft Brew All., Inc.*,
13  No. 17-cv-01027-BLF, 2018 WL 4952519 (N.D. Cal. Sept. 25, 2018) ........................... 11

14 *Casillas v. Berkshire Hathaway Homestate Ins. Co.*,
  79 Cal. App. 5th 755 (2022) ............................................................................. 14

15

16 *Chambers v. Whirlpool Corp.*,
  980 F.3d 645 (9th Cir. 2020) ............................................................................ 24

17

*Cmty. Resources for Indep. Living v. Mobility Works of Cal., LLC*,
18  533 F. Supp. 3d 881 (N.D. Cal. 2020).............................................................. 20

19 *Cottle v. Plaid Inc.*,
  340 F.R.D. 356 (N.D. Cal. 2021) ....................................................... 14, 15, 16, 17, 20
20

21 *Destefano v. Zynga, Inc.*,
  No. 12-cv-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ............................... 21

22

*Engalla v. Permanente Med. Grp., Inc.*,
23  15 Cal. 4th 951 (1997) ...................................................................................... 13

24

*Erica P. John Fund, Inc. v. Halliburton Co.*,
25  563 U.S. 804 (2011) .......................................................................................... 10

26 *Evans v. Zions Bancorp., N.A.*,
  No. 2:17-CV-01123 WBS DB, 2022 WL 16815301 (E.D. Cal. Nov. 8, 2022) ............... 26

27

28 *Falco v. Nissan N. Am. Inc.*,
  No. CV 13-00686 DDP, 2016 WL 1327474 (C.D. Cal. Apr. 5, 2016) ........................... 13

*Gumm v. Ford*,
    No. 5:15-cv-41-MTT, 2019 WL 479506 (M.D. Ga. Jan. 17, 2019) ................................. 18

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ................................................................................. 10

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) .................................................................................... 15

*Harrison v. Bank of Am. Corp.*,
    No. 19-CV-00316-LB, 2021 WL 5507175 (N.D. Cal. Nov. 24, 2021) ....................... 1, 23

*Hoffman v. 162 North Wolfe LLC*,
    228 Cal. App. 4th 1178 (2014) ................................................................................ 12

*In re Bluetooth Headset Products Liability Litigation*,
    654 F.3d 935 (9th Cir. 2011) ....................................................................... 17, 19 , 20

*In re ConAgra Foods, Inc.*,
    90 F. Supp. 3d 919 (C.D. Cal. 2015) ........................................................................ 11

*In re Facebook Biometric Info. Privacy Litig.*,
    No. 21-15553, 2022 WL 822923 (9th Cir. Mar. 17, 2022) ........................................ 26

*In re First Alliance Mortg. Co.*,
    471 F.3d 977 (9th Cir. 2006) .................................................................................... 13

*In re Hyundai & Kia Fuel Economy Litig.*,
    926 F.3d 539 (9th Cir. 2019) .................................................................................... 10

*In re JUUL Labs, Inc., Mktg. Sales Practices & Prods. Liab. Litig.*,
    609 F. Supp. 3d 942 (N.D. Cal. 2022) ..................................................................... 11

*In re MacBook Keyboard Litig.*,
    No. 5:18-CV-02813-EJD, 2022 WL 17409738 (N.D. Cal. Dec. 2, 2022) ..................... 25

*In re MGM Mirage Sec. Litig.*,
    708 Fed. App'x 894 (9th Cir. 2017) ......................................................................... 21

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................................................... 26

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ............................................................................. 25, 27

*In re Snap Inc. Securities Litig.*,
    No. 2:17-CV-03679-SVW, 2021 WL 667590 (C.D. Cal. Feb. 18, 2021) ..................... 18

*In re TikTok, Inc., Consumer Privacy Litig.*,
    565 F. Supp. 3d 1076 (N.D. Ill. 2021) .............................................................................. 5

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
    445 F. Supp. 3d 508 (N.D. Cal. 2020) ............................................................................ 26

*Juarez v. Social Finance, Inc.*,
    No. 20-CV-03386-HSG, 2022 WL 17722382 (N.D. Cal. Dec. 15, 2022) ................. 15, 26

*Knapp v. Art.com, Inc.*,
    283 F. Supp. 2d 823 (N.D. Cal. 2017) ............................................................................ 23

*Leyva v. Medline Indus. Inc.*,
    716 F.3d 510 (9th Cir. 2013) ........................................................................................... 17

*LiMandri v. Judkins*,
    52 Cal. App. 4th 326 (1997) ............................................................................................ 12

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ......................................................................................... 18

*Luz Bautista-Perez v. Juul Labs, Inc.*,
    No. 20-CV-01613-HSG, 2022 WL 307942 (N.D. Cal. Feb. 2, 2022) ............................. 20

*McClure v. State Farm Life Ins. Co.*,
    341 F.R.D. 242 (D. Ariz. 2022) ...................................................................................... 14

*McKnight v. Hinojosa*,
    54 F.4th 1069 (9th Cir. 2022) ......................................................................................... 25

*Mindys Cosmetics, Inc. v. Dakar*,
    611 F.3d 590 (9th Cir. 2010) ........................................................................................... 14

*O'Connor v. Uber Techs., Inc.*,
    No. 13-CV-03826-EMC, 2019 WL 1437101 (N.D. Cal. Mar. 29, 2019) ........................ 18

*Officers for Justice v. Civ. Serv. Comm'n of City & Cnty. of S.F.*,
    688 F.2d 615 (9th Cir. 1982) ........................................................................................... 23

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
    944 F.3d 1035 (9th Cir. 2019) ......................................................................................... 20

*Schneider v. Chipotle Mexican Grill*,
    336 F.R.D. 588 (N.D. Cal. 2020) .................................................................................... 27

*Silber v. Mabon*,
    18 F.3d 1449 (9th Cir. 1994) ........................................................................................... 27

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ................................................................................ 20

*Taafua v. Quantum Glob. Techs., LLC*,
    No. 18-CV-06602-VKD, 2020 WL 4732342 (N.D. Cal. Aug. 14, 2020) ...................... 24

*Trump v. Twitter Inc.*,
    602 F. Supp. 3d 1213 (N.D. Cal. 2022) ............................................................... 11

*Vaccarino v. Midland Nat'l Life Ins. Co.*,
    No. CV 11-5858 CAS, 2013 WL 3200500 (C.D. Cal. June 17, 2013) ........................ 13

*Vianu v. AT&T Mobility LLC*,
    No. 19-CV-03602-LB, 2022 WL 16823044 (N.D. Cal. Nov. 8, 2022) ......................... 20

*Vizcaino v. Microsoft Corp.*,
    97 F.3d 1187 (9th Cir. 1996) ............................................................................... 20

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ..................................................................................... 9, 12

**Statutes**

28 U.S.C. § 1712 ................................................................................................ 24

**Rules**

Fed. R. Civ. P. 23 ......................................................................................... *passim*

**Miscellaneous Authority**

United States District Court for the Northern District of California, *Procedural Guidance for*
    *Class Action Settlements* (Aug. 4, 2022) § 1 ................................................. *passim*

Restatement (Second) of Torts
    § 551(2)(e) ..................................................................................................... 12

4 Newberg and Rubenstein on Class Actions
    § 13 (6th ed.) ............................................................................................ 9, 19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on May 3, 2023, at 2:00 p.m., or at such other time as may be set by the Court, Plaintiff Jane Doe will appear, through counsel, before the Honorable William H. Orrick or any Judge sitting in his stead, in Courtroom 2, 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, and then and there, respectfully move the Court, pursuant to Federal Rule of Civil Procedure 23(e), to grant preliminary approval of a proposed class action settlement reached between Plaintiff and Defendant Roblox Corporation.

Plaintiff's motion is based upon this Notice, the Memorandum of Points and Authorities filed herewith, the exhibits attached thereto, including the Parties' proposed class action settlement agreement, the Declaration of Yaman Salahi filed simultaneously herewith, and the record in this matter, along with any oral argument that may be presented to the Court and evidence submitted in connection therewith.

Respectfully Submitted,

**JANE DOE,**
individually and on behalf of all others similarly situated,

Dated: March 28, 2023

By: /s/ *Yaman Salahi*
One of Plaintiff's Attorneys

Rafey S. Balabanian (SBN 315962)
rbalabanian@edelson.com
Yaman Salahi (SBN 288752)
ysalahi@edelson.com
P. Solange Hilfinger-Pardo (SBN 320055)
shilfingerpardo@edelson.com
EDELSON PC
150 California St., 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

*Counsel for Plaintiff and the Putative Class*

Defendant Roblox Inc. hosts a "metaverse" in which users, who are frequently young children, interact using virtual avatars. One feature of this metaverse is that users may outfit and accessorize their avatars using items created by other users. To do so, users must purchase these items using "Robux," which are the coin of this virtual realm. Robux, in turn, have to be purchased with traditional government-backed currency; here, U.S. dollars. Plaintiff Jane Doe, a young girl, alleged that Roblox had a practice of inducing users to purchase virtual content with Robux, but then deleting their access to that content without offering refunds. This forced Roblox users to spend more U.S. dollars to purchase more Robux in order to replace the deleted virtual items. Plaintiff alleged that Roblox's deletion practices were arbitrary, deceptive, and fraudulent. She brought this case on behalf of a class of Roblox users in the United States who purchased virtual items in the metaverse that Roblox later deleted without offering them refunds. In her complaint, Plaintiff sought relief under California's Unfair Competition Law and Consumer Legal Remedies Act, as well as under various common-law claims.

After a mediation with Greg Lindstrom of Phillips ADR that went late into the evening, the parties were able to reach agreement on the material terms of the Settlement now before the Court.[1] *See* Exhibit 1 ("Settlement") to the Declaration of Yaman Salahi. Under the Settlement, Roblox will create a $10 million Settlement Fund, which returns nearly half of the alleged losses back to members of the proposed Settlement Class. A near fifty percent return of alleged losses far outpaces the usual recovery. *See, e.g*, *Harrison v. Bank of Am. Corp.*, No. 19-CV-00316-LB, 2021 WL 5507175, at *3 (N.D. Cal. Nov. 24, 2021) (approving settlement that returned approximately 20% of total damages). Relief for class members will be automatic: a pro rata share of their lost Robux at a favorable and specifically-negotiated exchange rate will be returned to their Roblox accounts without the need to take any action. Class members whose pro rata share of the Settlement Fund is more than $10 will have the option of selecting either a cash refund or Robux relief. The Settlement also guarantees that an automatic refund program instituted by Roblox in response to this litigation will continue for at least four more years for all Roblox users.

---

[1] Apart from citations to documents filed in this case, capitalized terms in this motion take the same meaning as that ascribed to them in the Settlement, which is attached as Exhibit 1.

1    At bottom, the proposed Settlement is an excellent result in a case presenting challenging

2    circumstances, and easily passes muster even under the heightened standard of scrutiny that

3    applies to pre-certification class settlements.

4         Given the relief afforded by this Settlement, the Court should not hesitate to preliminarily

5    find that it is fair, reasonable, and adequate.  Likewise, as explained below, the Court should have

6    no issue certifying the proposed Settlement Class for settlement purposes, and approving both the

7    form and manner of notice proposed by the Settlement.  Accordingly, Plaintiff respectfully moves

8    this Court for an order certifying the proposed Settlement Class for settlement purposes,

9    appointing the Plaintiff Jane Doe to represent the Settlement Classes, appointing Jay Edelson,

10   Rafey S. Balabanian, J. Eli Wade-Scott, and Yaman Salahi of Edelson PC as Class Counsel and

11   Mark S. Reich and Courtney E. Maccarone of Levi & Korsinski, LLP as Liaison Counsel,

12   preliminarily approving the Settlement, and ordering that notice be disseminated to class

13   members.

14   **I.      Factual and Procedural Background**

15        Plaintiff provides an overview of the facts and history of the case here, to give context to

16   the proposed Settlement.

17        **A.      Factual Background**

18        Roblox developed and operates a gaming platform that brings users together in a virtual

19   universe (or "metaverse").  *See* Dkt. 22, First Amended Complaint ("FAC"), ¶ 1.  The Roblox

20   metaverse is especially popular among children, its popularity ballooning during the COVID-19

21   pandemic when many children were stuck at home for extended periods of time.  *Id.* ¶¶ 2-4.

22   Recent SEC filings confirm that Roblox's revenues doubled from $1 billion in 2020 to $2 billion

23   in 2021.  Roblox knows the age of its userbase and is aware of their particular vulnerability as

24   children.  *Id.* ¶ 21.

25        Inside the Roblox metaverse, users create avatars which they can personalize with clothing,

26   gear, or animations.  FAC ¶ 24.  Users buy these items using an in-game currency called "Robux."

27   *Id.* ¶¶ 25-26.  While the currency is virtual, Robux must be purchased using real dollars.  *Id.* ¶ 25.

28   Roblox profits by selling Robux, but also by taking a cut of every transaction that occurs on the

1    Roblox platform.  Users can purchase items from sellers who create items themselves, or from

2    Roblox directly.  *Id.* ¶ 26.  And although certain sellers can convert their Robux back into real-

3    world cash, Roblox also charges a commission on user-to-user sales, and a fee for uploading items

4    to the Roblox platform for sale.  *Id.* ¶¶ 27-28.  The result, and indeed the point, of all of these

5    exactions is to maintain a high demand for Robux, so that Roblox continues to profit.  *Id.* ¶ 29.

6        Plaintiff alleges that everything about the Roblox platform is designed to encourage users

7    to purchase items to customize their avatar.  FAC ¶ 35.  Links to "customize" an avatar and

8    "shop" for new items are prominently featured on the Roblox landing page after sign-in.  *Id.*

9    Roblox also recommends that users purchase certain items based on past purchases.  *Id.* ¶ 46.

10   While users expect that purchased items will remain available for their use in perpetuity absent

11   misuse, *id.* ¶ 37, Plaintiff alleges that has turned out not to be the case.  Instead, Roblox will

12   arbitrarily "moderate" (*i.e.*, delete) items post-purchase, even though the items have presumably

13   been "pre-approved" (Roblox indicates that products can be vetted by Roblox before they are

14   allowed to be uploaded) and do not violate any Roblox policies.  *Id.* ¶¶ 37, 38, 40.  Roblox

15   understands that when it deletes items, users will respond by buying more Robux to repurchase the

16   deleted item, or a similar one, thus inflating the demand for Robux, and further enriching Roblox.

17   *Id.* ¶ 39.  In fact, Plaintiff alleges that Roblox goes out of its way to ensure that this scheme is

18   effective.  For instance, Roblox targets for "moderation" many of the most popular items available

19   for purchase on the platform.  *Id.* ¶ 44.  Roblox also allegedly refuses to take steps to prevent

20   supposed repeat offenders from continuing to offer items that will be deleted, or from preventing

21   items identical to those that were already deleted from reappearing on the platform.  *Id.* ¶¶ 41-43.

22   That is because true content moderation is not Roblox's goal.  *Id.* ¶ 47.  Instead, Plaintiff alleges

23   that its goal is to exploit its young user base to make more money.

24       Plaintiff is one of Roblox's many young users.  FAC ¶ 50.  She created her Roblox account

25   when she was just 10 years old.  *Id.* ¶ 51.  Although Roblox was aware of her age, it did not seek

26   confirmation that she had parental permission before creating her account.  *Id.*  Nor did Roblox

27   take any steps to ensure that Plaintiff had read, much less understood, the Roblox Terms of Use.

28   *Id.* ¶ 23.  After creating her account, Plaintiff bought hundreds of Robux using her own money.

1   *Id.* ¶ 52.  She used those Robux to buy items for her avatar, items she believed would remain

2   available to her in the Roblox metaverse unless she personally misused them.  *Id.* ¶¶ 53-54.  But

3   Roblox deleted several items that Plaintiff purchased, none of which contained trademarked or

4   offensive content.  *Id.* ¶ 55.  And just as Roblox allegedly hoped, Plaintiff was forced to purchase

5   additional Robux to replace the items she lost.  *Id.* ¶ 56.

6       Plaintiff brought this lawsuit for herself and a proposed class to challenge Roblox's content

7   "moderation" scheme and to obtain refunds of money spent to purchase virtual items that were

8   later taken from them.  She asserted five claims for relief: for violations of California's Unfair

9   Competition Law and Consumer Legal Remedies Act, and for common law fraud, conversion, and

10  unjust enrichment.  All claims were premised on the same challenge to Roblox's practice of

11  disabling users' access to virtual items they have purchased without adequately refunding them.

12  Ms. Doe sought restitution and damages equivalent to the money users had spent to purchase

13  Robux for later-deleted virtual items.  *See generally* Dkt. 1.

14      **B.    Procedural Background and Settlement Negotiations**

15      Roblox moved to dismiss.  In that filing, Roblox revealed that in response to this lawsuit it

16  had voluntarily begun to credit back to users (including, they believed, the plaintiff) Robux spent

17  on subsequently moderated items.  Among other arguments, Roblox contended that this program

18  mooted Plaintiff's claims.  In response, Plaintiff filed an amended complaint, in which she

19  clarified that she had not received any refund, or even any notice from Roblox that she might be

20  eligible for a refund.  FAC ¶ 57.

21      Roblox moved to dismiss the amended complaint, again asserting that the action was moot.

22  Roblox also asserted a series of arguments based upon its Terms of Service: that the action was

23  not ripe for failure to engage in a supposedly mandatory pre-suit alternative dispute resolution

24  process (including arbitration), to strike the class and monetary claims based on a waiver

25  contained in the Terms, and on the basis that the Terms disclosed that Roblox had the authority to

26  delete items within the Roblox universe.  Roblox also contended that Plaintiff failed to allege an

27  actionable misrepresentation or omission, and that many of the claims failed on the grounds that

28  only a virtual currency was at stake.

1    This Court denied that motion in almost all respects, adopting Plaintiff's arguments that

2 the Terms of Service were not presented to the Plaintiff (who was 10 when she made her Roblox

3 account) in a way that would put her on notice that they existed.  Because the Terms did not bind

4 her, none of Roblox's Terms-based arguments for dismissal were meritorious.  The Court also

5 agreed with Plaintiff that real money (*i.e.*, the money used to purchase Robux) was at stake, not

6 just virtual currency.  The Court granted Roblox's motion only with respect to any claim that

7 Roblox's conduct was "unfair" within the meaning of the UCL, and Plaintiff did not take the

8 opportunity to amend the complaint because the "unfair" claim merely provided her and the

9 proposed class with the same relief available to her under other causes of action the Court allowed

10 to proceed.

11    Roblox thereafter answered the Amended Complaint, and the parties began to lay the

12 groundwork for discovery.  Salahi Decl. ¶ 4.  But in these preliminary discussions the parties

13 recognized that there was a chance for an early resolution of this case.  *Id.*  The parties'

14 discussions proved fruitful: Over the course of several weeks the parties were able to hammer out

15 many of the principal deal points.  *Id.* ¶ 5.  For instance, the parties agreed that Roblox users

16 should get refunds where appropriate, that any settlement fund should be non-reversionary, and

17 that any notice program should include in-app notice.  *Id.*  But several key points were unresolved,

18 including the size of the overall fund.  *Id.*

19    To help resolve these lingering differences, the parties retained the services of a third-party

20 neutral: Gregory Lindstrom, of the highly respected Phillips ADR firm.  Salahi Decl. ¶ 6; *see also*

21 *In re TikTok, Inc., Consumer Privacy Litig.*, 565 F. Supp. 3d 1076, 1079 (N.D. Ill. 2021)

22 (describing Phillips ADR as "an experienced and well-respected alternative dispute resolution

23 firm").  Mediator Lindstrom was instrumental in helping the parties resolve many of their

24 outstanding differences, but, reflective of the seriousness of these negotiations, the parties' first

25 day of mediated negotiations was almost unsuccessful.  Salahi Decl. ¶ 7.  After Mediator

26 Lindstrom successfully urged counsel to return to the negotiations, the parties worked into the

27 night to complete their negotiations.  *Id.*

28

1   And even after the agreement was reached, the parties continued to negotiate over the

2   course of the next several months to work out the final details of the Settlement now before the

3   Court, including the details of the Notice Plan to ensure that Settlement Class Members will be

4   fully apprised of their rights.  Salahi Decl. ¶ 8.

5   **II.      Summary of Settlement Terms**

6            The principal terms of the Settlement before the Court are as follows:

7        **A.      Settlement Class**

8            All individuals in the United States having a Roblox account prior to Preliminary Approval

9   of this Settlement from which content on the Roblox platform was moderated and removed by

10  Roblox.  Excluded from the Settlement Class are (a) any Judge or Magistrate presiding over this

11  action and members of their families; (b) Defendant, Defendant's subsidiaries, parents, successors,

12  predecessors, and any entity in which Defendant or its parents have a controlling interest and its

13  current or former employees, officers and directors; (c) persons who properly execute and file a

14  timely request for exclusion from the Class; (d) persons whose claims in this matter have been

15  finally adjudicated on the merits or otherwise released; (e) the legal representatives, successors,

16  and assigns of any such excluded persons; and (f) individuals who own one of 311 accounts that

17  Roblox has determined spent over 80,000 Robux (equating to over $1,000) on any of these three

18  categories of virtual items: (1) the user purchased the same virtual item from the same seller

19  multiple times, (2) the user purchased a virtual item after that item had already been moderated, or

20  (3) the user created a virtual item and purchased it themselves.  Settlement ¶ 1.29.

21           Only minor differences exist between the proposed Settlement Class and the class

22  described in the operative complaint.  *See* Northern District of California Procedural Guidance for

23  Class Action Settlements ("Procedural Guidance") § 1.a.  First, while the language describing the

24  class is slightly changed to be more precise, the class is generally defined to include the same

25  group of individuals.  Second, the definition of the proposed Settlement Class contains several

26  standard exclusions for individuals associated with the lawyers, the parties, or the Court.

27           Third, the proposed Settlement Class contains a specific exclusion for a limited number of

28  accounts who lost content for which they spent more than 80,000 Robux, worth over $1,000 (the

"laundering exclusions").  Roblox insisted upon these laundering exclusions because, Plaintiff understands from Roblox, these accounts are engaged in suspicious behavior (articulated in the criteria for exclusion) differentiating them from ordinary consumers.  They appear to be using the Roblox platform to send money to one another by purchasing fake virtual items, a highly inefficient and costly means of transferring money which suggests they may be engaged in money laundering or other improper behavior.  In any case, proposed Settlement Class Counsel agreed to the laundering exclusions solely because these individuals did not appear to be engaging in bona fide purchases, and so have not been defrauded and may not have a legitimate claim.  And because they are not members of the proposed Settlement Class, their claims have not been released and they retain an individual right to pursue separate litigation.

Finally, the proposed subclass from the Amended Complaint, limited to class members who were minors, is not part of the proposed Settlement because it is unnecessary.

### B.    Settlement Fund

The Settlement requires Roblox to establish a $10 million Settlement Fund, out of which class members will be compensated, and, subject to Court approval, attorneys' fees and costs, service awards, and administrative costs will be paid.  Settlement ¶ 1.31.  The funding will occur in two stages: Roblox will make an initial $3 million deposit once the Settlement earns preliminary approval from the Court, and will fund the balance following final approval.  *Id.* ¶ 2.1.

### C.    Allocation

Class Members' pro rata share from the fund will be made in proportion to the amount of Robux each class member has spent on "moderated" items—in other words, the amount of Robux each class member lost due to the alleged misconduct.  Settlement ¶ 3.1.  Relief will be granted either in dollars or Robux.  *Id.* ¶ 3.2.  Robux Relief will be automatic: Settlement Class Members will receive their share of the Settlement Fund in Robux without having to take any action.  *Id.* ¶ 3.4.1.  This relief will be calculated at a rate of 1 Robux = $0.01, a rate that is more favorable than nearly any charged by Roblox on the open market except for users who wish to spend $100 at

a time.[2]  Anyone whose pro rata share of the Settlement Fund is $10 or greater and who wishes to receive their share of the Settlement Fund in cash rather than Robux may elect to do so by submitting a simple claim form.  *Id.* ¶ 3.3.1.  A visualization of the online Cash Claim Form prepared by the proposed settlement administrator is attached as Exhibit A to the Settlement Agreement.

### D.    **Prospective Relief**

As a result of this litigation, Roblox implemented an automatic refund program for users who had purchased items that were later deleted.  Under this program, whenever a Roblox user's purchased virtual content is moderated/deleted from the platform, the user will automatically receive a credit of the Robux they spent to obtain that item, unless the user is themselves guilty of a Terms of Service violation.  As part of the Settlement, Roblox agrees to continue operating this refund program for at least four years.  Settlement ¶ 3.5.

### E.    **Payment of Settlement Notice and Administrative Costs**

Payment of notice and administrative costs will come from the Settlement Fund. The proposed Settlement Administrator, Simpluris, Inc., estimates that notice and administrative costs will be approximately $350,000.  Salahi Decl., Ex. 2.

### F.    **Payment of Attorney's Fees, Costs, and Service Award**

Prior to the objection deadline, proposed Settlement Class Counsel will move for an award of fees and costs.  Settlement Class Counsel has agreed to limit their request for fees to 25% of the Settlement Fund.  Settlement ¶ 9.1.  Defendant retains the right to challenge any fee request submitted by Class Counsel.  *Id.*  Should the Court award less than what Class Counsel request, the balance will remain in the Settlement Fund for distribution to Class Members.  *Id.*  Further, in light of her service to the Settlement Class, the Named Plaintiff will petition the Court for a

---

[2]  Roblox offers Robux to its users at volume discounts.  *See* https://www.roblox.com/upgrades/robux.  Users can spend $4.99 for 400 Robux (1 R = $0.012475), $9.99 for 800 Robux (1 R = $0.0124875), $19.99 for 1,700 Robux (1 R = $0.0117588), $49.99 for 4,500 (1 R = $0.011108).  *Id.*  Only users who spend $99.99 for 10,000 Robux obtain a slightly more favorable rate (1 R = $0.009999).  *Id.*  The vast majority of users make purchases in small amounts, however.

1   Service Award in the amount of $5,000.  *Id.* ¶ 9.1.  Should the Court approve a lower award, the

2   balance will remain in the Settlement Fund for distribution to Settlement Class Members.  *Id.*

3         **G.**      **Release of Liability**

4        In exchange for the relief described above, Roblox will obtain a release of all claims

5   arising from or related to the deletion, removal, or moderation of virtual items purchased on the

6   Roblox platform.  Settlement ¶ 1.23.  This release is intended to operate no more broadly than the

7   doctrine of claim preclusion would were this an individual suit related to allegedly improper

8   deletion of purchased items in the Roblox metaverse.  *See* Procedural Guidance § 1.B.

9   **III.**     **The Court should certify the proposed Settlement Class**

10        Approval of a class action settlement proceeds in three stages.  First, the parties present a

11   proposed settlement to the court for preliminary approval.  Second, if the court preliminarily

12   approves the settlement, notice of the proposed settlement is sent to the class, and class members

13   are given an opportunity to object or opt out of the settlement.  Third, after holding a final fairness

14   hearing, the court decides whether to give final approval to the settlement.  *See* Fed. R. Civ. P.

15   23(e); 4 Newberg and Rubenstein on Class Actions § 13:1 (6th ed.).

16        At the first stage, preliminary approval, the parties must show "that the court will likely be

17   able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of

18   judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).  Taking the second prong first, this Court

19   will be able to certify the Settlement Class for purposes of Settlement and entering the final

20   judgment. Because this settlement secures money damages, the Settlement Class must meet the

21   requirements of Fed. R. Civ. P. 23(a) and the predominance and superiority criteria (minus the

22   requirement of manageability) of Fed. R. Civ. P. 23(b)(3).  *See Wal-Mart Stores, Inc. v. Dukes*,

23   564 U.S. 338, 351 (2011).  The proposed Settlement Class here consists of every individual in the

24   United States who purchased an item that was subsequently deleted, with certain exceptions

25   described above.  Settlement ¶ 1.29.  Roblox does not oppose certification of a class for settlement

26   purposes only.

27

28

1

**A.**    **The proposed Settlement Class is sufficiently numerous.**

2

The first Rule 23(a) prerequisite is numerosity.  This criterion requires that "joinder of all

3

members is impracticable." Fed. R. Civ. P. 23(a)(1).  "The numerosity requirement is not tied to

4

any fixed numerical threshold, but courts generally find the numerosity requirement satisfied when

5

a class includes at least forty members." *Akaosugi v. Benihana Nat. Corp.*, 282 F.R.D. 241, 253

6

(N.D. Cal. 2012).  Here, Roblox has represented, and informal discovery has confirmed, that the

7

Settlement Class includes approximately 8 million members.  Salahi Decl. ¶ 12.  By any measure,

8

there are too many individuals in the proposed Settlement Class to permit individual joinder here.

9

*See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) ("nationwide class with

10

millions of class members" met numerosity requirement).

11

**B.**    **Common questions predominate over individual questions within the
proposed Settlement Class.**

12

Rule 23(a)(2) requires that there are questions of law or fact common to the proposed

13

Class.  This requirement is similar to Rule 23(b)(3)'s requirement that common questions

14

predominate over any individual questions present in the action, and the two are often analyzed

15

together.  *See Akaosugi*, 282 F.R.D. at 254-55.  Claims based on a common practice or

16

standardized course of conduct are prime candidates for certification, and this case is no different.

17

Examination of commonality and predominance begins with the elements of the

18

underlying cause of action.  *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 810

19

(2011).  Here, the elements of the various claims all spring from California law.  *See In re*

20

*Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 561 (9th Cir. 2019) (en banc) ("Subject to

21

constitutional limitations and the forum state's choice-of-law rules, a court adjudicating a

22

multistate class action is free to apply the substantive law of a single state to the entire class.").

23

Under California's choice-of-law rules, the law of the forum (i.e., California) applies "unless a

24

party litigant timely invokes the law of a foreign state."  *Id.*  Through the Settlement, Roblox

25

agrees that California law applies to the entire Settlement Class, so there is no need to conduct a

26

choice-of-law analysis.  But Plaintiff notes that California has a serious interest in application of

27

its law to this dispute: A California company is allegedly engaging in deceptive conduct within

28

state borders, and this same company purports to require the application of California law to any

1   dispute by its users with it.  *See Trump v. Twitter Inc.*, 602 F. Supp. 3d 1213, 1226 (N.D. Cal.

2   2022).

3          Turning to the merits, the principal claims here are fraud-based.  A basic fraud claim

4   requires proof of "(1) [a] misrepresentation (false representation, concealment, or nondisclosure);

5   (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable

6   reliance; and (5) resulting damage."  *All. Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226, 1239 (1995).

7   The UCL and CLRA—which are indistinguishable for purposes of class certification—"allow[]

8   plaintiffs to establish materiality and reliance (i.e., causation and injury) by showing that a

9   reasonable person would have considered the defendant's representation material."  *In re ConAgra

10  Foods, Inc.*, 90 F. Supp. 3d 919, 983 (C.D. Cal. 2015).

11              **1.      UCL and CLRA claims.**

12         As *ConAgra* shows, the key question, at class certification, is whether the threshold

13  question of materiality is common.  *See* 90 F. Supp. 3d at 983 n.197.  If so, then proof of

14  causation and injury is streamlined by the relevant statutes.  Thus, when all members of a class

15  have been exposed to the same alleged misrepresentation or allegedly deceptive course of

16  conduct, a UCL or CLRA claim will present predominating common questions.  *See, e.g.*, *Berger

17  v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014) ("class certification of UCL

18  claims is available only to those class members who were actually exposed to the business

19  practices at issue"); *In re JUUL Labs, Inc., Mktg. Sales Practices & Prods. Liab. Litig.*, 609 F.

20  Supp. 3d 942, 988 (N.D. Cal. 2022) (finding commonality and predominance to be satisfied

21  under UCL and CLRA because "for purposes of class certification plaintiffs have shown how

22  through common, classwide proof they can demonstrate the widespread reach of JLI's very

23  successful [and allegedly deceptive] campaigns"); *Broomfield v. Craft Brew All., Inc.*, No. 17-cv-

24  01027-BLF, 2018 WL 4952519, at *5 (N.D. Cal. Sept. 25, 2018) ("Numerous courts have

25  recognized that a claim concerning alleged misrepresentations on packaging to which all

26  consumers were exposed is sufficient to satisfy the commonality requirement because it raises

27  the common question of whether the packaging would mislead a reasonable consumer.").

28

1      Here, all members of the proposed Settlement Class were exposed to Roblox's allegedly

2  deceptive conduct.  The proposed Class consists exclusively of individuals whose purchased items

3  were deleted.  Settlement ¶ 1.29.  Such individuals necessarily have been exposed to Roblox's

4  practice of failing to vet items before they are made available for sale, and Roblox's practice of

5  arbitrarily deleting items post-purchase.  As this Court observed at the motion to dismiss stage,

6  there is reason to believe such conduct is itself deceptive.  *See* Dkt. 48 at 18 ("Roblox's conduct

7  would plausibly induce reasonable consumers to believe at least that their purchased virtual items

8  would not be deleted for these alleged purposes.  A jury could find that a reasonable consumer

9  (especially a minor) would rely on a course of conduct that, from their perspective, would appear

10  to be a straightforward purchase.").  Because all members of the proposed Class have been

11  exposed to this course of conduct, a jury's resolution of whether this conduct is deceptive,

12  material, and injurious would apply classwide.

13      Roblox's contention that its conduct adequately was disclosed in its Terms of Use (which

14  are not binding, but could render any conduct nondeceptive) also presents a classwide question

15  because the Terms were identical for all users, and so whether any disclosures were made, and

16  whether they vitiate any showing of deception or reliance, are each questions with a classwide

17  answer.  *See Wal-Mart*, 564 U.S. at 350 (observing that "common questions" are those whose

18  resolution "generate[s] common answers").

19      The complaint also alleges an omission theory: that Roblox acted deceptively by failing to

20  disclose up front the potential that items would be deleted without notice and with no chance at a

21  refund.  For similar reasons, this theory also presents a series of common questions.  First, was

22  there a nondisclosure?  Roblox urges that it disclosed its practice in its Terms of Use, and has

23  never cited any other potential disclosures.  Thus, as before, the question of whether an omission

24  occurred is common to the Class.  Second, did Roblox have a duty to disclose?  An omission is

25  only actionable if there exists a duty to speak.  *See Hoffman v. 162 North Wolfe LLC*, 228 Cal.

26  App. 4th 1178, 1186-87 (2014).  Such a duty can arise from conduct which actively conceals the

27  full truth, or some sort of transaction between the parties.  *See id.; LiMandri v. Judkins*, 52 Cal.

28  App. 4th 326, 337 (1997); Restatement (Second) of Torts § 551(2)(e) ("One party to a business

1  transaction is under a duty to exercise reasonable care to disclose to the other before the

2  transaction is consummated, facts basic to the transaction, if he knows that the other is about to

3  enter into it under a mistake as to them, and that the other, because of the relationship between

4  them, the customs of the trade or other objective circumstances, would reasonably expect a

5  disclosure of those facts.").  Because Roblox stood in the same relationship towards every class

6  member (and every class member was exposed to the same relevant conduct), the question of

7  whether Roblox had a duty to speak is a question with a classwide answer.  And because the

8  allegedly withheld information is the same for all class members, questions of materiality and

9  reliance under the UCL and CLRA also are identical.

10              **2.    Common-law fraud.**

11        Although predominance and commonality are most easily satisfied for Plaintiff's statutory

12  fraud claims, this case also presents a straightforward case for certification of Plaintiff's common-

13  law fraud claim.  As the Ninth Circuit has recognized, fraud claims involving similar

14  misrepresentations are typically litigable on a classwide basis, and the court "has followed an

15  approach that favors class treatment of fraud claims stemming from a common course of conduct."

16  *In re First Alliance Mortg. Co.*, 471 F.3d 977, 990 (9th Cir. 2006) (quotations omitted).  California

17  law makes this rule especially applicable here: "[A] presumption, or at least an inference, of

18  reliance arises wherever there is a showing that a misrepresentation was material."  *Engalla v.*

19  *Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 977 (1997).  Thus, when the same information is

20  misrepresented to (or withheld from) a class, reliance can be inferred classwide.  Class treatment is

21  therefore appropriate where common questions about falsity, materiality, and intent drive the

22  litigation.  *See, e.g.*, *Falco v. Nissan N. Am. Inc.*, No. CV 13-00686 DDP, 2016 WL 1327474, at

23  *11 (C.D. Cal. Apr. 5, 2016); *Vaccarino v. Midland Nat'l Life Ins. Co.*, No. CV 11-5858 CAS,

24  2013 WL 3200500, at *12 (C.D. Cal. June 17, 2013).

25        As explained above, common proof will establish whether Roblox acted with the requisite

26  intent and whether the information withheld from class members was material.  And answering

27  those two questions will ease resolution of any reliance issues.

28

1

3.    **Conversion.**

2        Commonality and predominance are also met for Plaintiff's conversion claim.  *See*

3   *McClure v. State Farm Life Ins. Co.*, 341 F.R.D. 242, 255 (D. Ariz. 2022) (certifying conversion

4   claim for class treatment).  Under California law, "the elements of a conversion claim are (1) the

5   plaintiff's ownership or right to possession of the property at the time of the conversion; (2) the

6   defendant's conversion by a wrongful act or disposition of property rights; and (3) damages."

7   *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 601 (9th Cir. 2010).  This claim presents several

8   common questions.  First, is an item within the Roblox metaverse capable of being converted?

9   Case law suggests that California has abandoned essentially all requirements that allegedly

10  converted property be tangible.  *See Casillas v. Berkshire Hathaway Homestate Ins. Co.*, 79 Cal.

11  App. 5th 755 (2022).  But because all the converted items exist within the Roblox metaverse,

12  determining whether the tort of conversion applies to these items will resolve in one stroke an

13  issue for every member of the proposed Settlement Class.  Second, whether the act of purchasing

14  these items with Robux is sufficient to give Settlement Class Members an ownership right is a

15  common question with a common answer.  And third, whether Roblox's act of deleting the items

16  interfered with Class Members' ownership rights is a common question.

17

4.    **Unjust Enrichment.**

18        Finally, commonality and predominance are met for Plaintiff's unjust enrichment claim.

19  *See Cottle v. Plaid Inc.*, 340 F.R.D. 356, 370-72 (N.D. Cal. 2021) (certifying unjust enrichment

20  claim for settlement purposes).  A claim for unjust enrichment is best understood as a claim

21  sounding a quasi-contract seeking the remedy of restitution.  *See Astiana v. Hain Celestial Grp.,*

22  *Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).  The theory underlying the claim is that the defendant has

23  been unjustly conferred a benefit, such as through fraud, and the appropriate remedy is to return

24  that benefit to the injured party.  *See id.*

25        Here, the alleged unjustly conferred benefit is the Robux (and the value of those Robux)

26  that were lost when Roblox deleted purchased content without reason or notice.  That alleged

27  benefit has been obtained from every member of the proposed Settlement Class.  And the reason it

28  is allegedly unjust for Roblox to keep that benefit is the same for every class member: the Roblox

1    content-deletion scheme described above.  The truth or falsity of these issues (did Roblox obtain a

2    benefit from class members, and was it unjust in light of Roblox's content-deletion scheme) are

3    predominating, common questions that can be resolved in a single proceeding.

4        **C.    Plaintiff Doe is typical of the proposed Settlement Class.**

5        The next Rule 23(a) factor is typicality.  "The purpose of the typicality requirement is to

6    assure that the interest of the named representative aligns with the interests of the class." *Hanon v.*

7    *Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  "The test of typicality is whether other

8    members have the same or similar injury, whether the action is based on conduct which is not

9    unique to the named plaintiffs, and whether other class members have been injured by the same

10   course of conduct." *Id.* (quotations omitted).

11       Typicality is met here.  Plaintiff Doe purchased multiple, unobjectionable items using

12   Robux purchased with funds she owned and controlled.  She was not aware that these items might

13   later be deleted, and in fact believed that these items would remain available to her in perpetuity.

14   The claims she presses on behalf of the proposed Settlement Class concern precisely this conduct,

15   under legal theories that apply classwide, and she is seeking the same relief as the rest of the class.

16   That satisfies the typicality requirement. *See Juarez v. Social Finance, Inc.*, No. 20-CV-03386-

17   HSG, 2022 WL 17722382, at *4 (N.D. Cal. Dec. 15, 2022) (finding typicality satisfied because

18   "Plaintiffs' claims are both factually and legally similar to those of the putative class"); *Cottle*,

19   340 F.R.D. at 371 (finding typicality satisfied because "Plaintiffs' claims stem from the same

20   course of conduct and pattern of alleged wrongdoing as the claims of the Class Members").

21       **D.    Plaintiff Doe and Proposed Class Counsel are adequate to represent the**
22       **proposed Settlement Class.**

23       The final Rule 23(a) factor—adequacy—tests the ability of both the named plaintiff and

24   her lawyers to protect the interests of absent class members.  "Courts engage in a dual inquiry to

25   determine adequate representation and ask: (1) do the named plaintiffs and their counsel have any

26   conflicts of interest with other class members and (2) will the named plaintiffs and their counsel

27   prosecute the action vigorously on behalf of the class?" *Cottle*, 340 F.R.D. at 371 (quotations

28   omitted).

Here, Plaintiff Doe is plainly adequate.  First, she suffers from no conflicts of interest with the absent class.  Because Plaintiff allegedly was injured by the same course of conduct as the absent class, her interests are aligned with theirs.  *See id.*  Moreover, Plaintiff has already demonstrated her willingness to vigorously pursue these representative claims: Although this case settled early in the discovery phase of the case, Plaintiff Doe, through her father as next-of-friend, has nevertheless worked closely with Class Counsel when they investigated Roblox's argument on the motion to dismiss that the case was moot, responded to discovery requests, and conducted searches of her email for responsive documents.  She also was prepared to sit for a deposition.  This demonstrates vigorous representation of the interests of the absent class.

Plaintiff's chosen counsel, Edelson PC, is also adequate.  Edelson PC has extensive experience in litigating class actions of similar size, scope, and complexity to the instant action.  Edelson PC is a national leader in high stakes plaintiffs' work ranging from class and mass actions to public client investigations and prosecutions.  *See* Firm Resume of Edelson PC, attached as Exhibit 3 to Salahi Decl.  The firm has been named by Law360 as a Consumer Protection Group of the Year (2016, 2017, 2019, 2020), a Class Action Group of the Year (2019), a Plaintiff's Class Action Powerhouse (2017, 2018, 2019); similarly, the National Law Journal identified Edelson PC as "Elite Trial Lawyers" in Consumer Protection (2020, 2021) and Class Action (2021) categories.  *Id.* at 7.  The firm has secured hundreds of millions of dollars of relief in important consumer protection matters.  *Id.* at 14-15.  Proposed Class Counsel have diligently investigated, prosecuted, and dedicated substantial resources to the claims in this action and will continue to do so throughout its pendency.  Salahi Decl. ¶ 15.

**E.      A class action is the superior means of resolving this case.**

Turning to Rule 23(b)(3), the only remaining criterion to consider is whether a class action is a superior way to resolve this controversy.  (Of the other Rule 23(b)(3) factors, predominance is discussed above, and manageability is irrelevant in this settlement posture.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).)

A class action is clearly the superior means of resolving this litigation.  The proposed Settlement Class consists of millions of individuals, the vast majority of whom lost only a handful

1    of dollars due to Roblox's content-deletion scheme.  Salahi Decl. ¶ 12.  The cost and time

2    necessary to litigate these claims therefore dwarfs the potential recovery.  "In light of the small

3    size of the putative class members' potential individual monetary recovery, class certification may

4    be the only feasible means for them to adjudicate their claims."  *Leyva v. Medline Indus. Inc.*, 716

5    F.3d 510, 515 (9th Cir. 2013).  That is likely why class members have not demonstrated any

6    interest in individually controlling this litigation, or in seeking relief individually outside of this

7    lawsuit.  *See* Fed. R. Civ. P. 23(b)(3)(A)-(B) (outlining these as factors relevant to superiority).

8    And requiring these class members to individually litigate would needlessly clog the courts with a

9    multitude of identical disputes, as opposed to the streamlined efficiency of this single class

10   proceeding.  *Cottle*, 340 F.R.D. at 372 (finding superiority established where "the range of issues

11   is limited and individual cases addressing these issues would likely address the same wrongful

12   conduct and use the same supporting evidence.").  Superiority is therefore satisfied.

13   **IV.    The proposed Settlement merits preliminary approval.**

14           In addition to showing that the Settlement Class is certifiable, the parties must also show

15   that the Court "will likely be able to … approve the [settlement] proposal under Rule 23(e)(2)."

16   Fed. R. Civ. P. 23(e)(1)(B)(i).  Rule 23(e)(2) requires the Court to find that the settlement is "fair,

17   reasonable, and adequate" after considering whether: (A) the class representative and class counsel

18   have adequately represented the class; (B) the settlement was negotiated at arm's length; (C) the

19   relief provided for the class is adequate; and (D) the settlement treats class members equitably

20   relative to each other.  Fed. R. Civ. P. 23(e)(2).  Also, because of the pre-certification posture of

21   this case, the factors identified by the Ninth Circuit in *In re Bluetooth Headset Products Liability*

22   *Litigation*, 654 F.3d 935 (9th Cir. 2011).  Because the *Bluetooth* factors are relevant to one of the

23   procedural concerns highlighted by Rule 23(e), the two tests are discussed together.  Ultimately,

24   this Settlement easily clears the heightened bar set for pre-certification settlements.

25           **A.    Doe and proposed Class Counsel have adequately represented the Class.**

26           The first Rule 23(e) factor concerns adequate representation.  The focus of this analysis is

27   "on the actual performance of counsel acting on behalf of the class" throughout the litigation and

28   in settlement negotiations.  Fed. R. Civ. P. 23(e) Advisory Committee's Note to 2018

Amendment; *see Gumm v. Ford*, No. 5:15-cv-41-MTT, 2019 WL 479506, at *3 (M.D. Ga. Jan. 17, 2019).  This factor overlaps significantly with the adequacy requirement of Rule 23(a).  *See O'Connor v. Uber Techs., Inc.*, No. 13-CV-03826-EMC, 2019 WL 1437101, at *6 (N.D. Cal. Mar. 29, 2019).  In considering this factor, courts should further examine whether plaintiff and class counsel had adequate information to negotiate a class-wide settlement.  Fed. R. Civ. P. 23(e) Advisory Committee's Note to 2018 Amendment.  Ultimately, this factor is generally satisfied where the named plaintiff and class counsel "have prosecuted the case with diligence and success."  *In re Snap Inc. Securities Litig.*, No. 2:17-CV-03679-SVW, 2021 WL 667590, at *1 (C.D. Cal. Feb. 18, 2021).

Here, counsel had the basic information necessary to craft a fair settlement.  Settlement Class Counsel's pre-suit investigation revealed the relevant facts: the content of the Roblox Terms of Use agreement is not in dispute; how that agreement may be relevant is not in dispute, as Roblox has made clear its view that the agreement discloses the relevant conduct precluding a claim for fraud or deception, and also that the agreement imposes dispute resolution requirements that preclude class litigation; and the mechanics of Roblox's content-deletion scheme are not in dispute.  Proposed Settlement Class Counsel are experienced attorneys with deep familiarity with the claims alleged in this lawsuit, and who are therefore in prime position to evaluate the merits on these claims.

Additionally, during settlement negotiations, Roblox provided informal discovery to help proposed Settlement Class Counsel put together the last piece of the puzzle: the total losses for members of the proposed class and their estimated damages.  *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) ("In the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement.") (quotations omitted).  Roblox disclosed that members of the proposed Settlement Class, in aggregate, lost 1,719,480,373 Robux in connection with items that were subsequently moderated/deleted by Roblox, and which have not previously been refunded.  Salahi Decl. ¶ 13; *see also* Settlement ¶ 7.1.  For purposes of negotiation, proposed Settlement Class Counsel valuated these losses at an exchange rate of 1

1  Robux = $0.0125, which is slightly higher than the exchange rate for the vast majority of Roblox

2  users who purchase Robux in the smallest possible quantity ($4.99 for 400 Robux, *see* note 2,

3  *supra*).  Thus, counsel likely *over-estimated* the class's monetary damages at just under $21.5

4  million.  That means that the Settlement returns approximately 46.5% of the losses suffered by the

5  Settlement Class back to Settlement Class Members.  Given the number of outstanding legal and

6  factual issues that would need to be tried, this constitutes an outstanding result, and is powerful

7  evidence that the Settlement Class was adequately represented.

8         **B.**       **The Settlement was negotiated at arm's length, and lacks any of the**

9                  **hallmarks of collusion identified by the Ninth Circuit in *Bluetooth*.**

10         The second Rule 23(e) factor asks whether the proposed settlement was negotiated at arm's

11  length.  "This inquiry aims to root out settlements that may benefit the plaintiffs' lawyers at the

12  class's expense[]."  Newberg & Rubenstein on Class Actions § 13:50.  The concern, which is also

13  embodied in this Circuit's *Bluetooth* factors, is that "the defendant will dangle such a healthy fee

14  in front of the plaintiffs' lawyer that they will settle the class's claims at a discount."  *See id.*; *see*

15  *also Bluetooth*, 654 F.3d at 946 ("Prior to formal class certification, there is an even greater

16  potential for a breach of fiduciary duty owed the class during settlement.  Accordingly, such

17  agreements must withstand an even higher level of scrutiny for evidence of collusion or other

18  conflicts of interest than is ordinarily required under Rule 23(e)").

19         The greatest evidence of arm's-length negotiation here is the presence of an experienced

20  mediator, Gregory Lindstrom of Phillips ADR, who helped the parties craft this Settlement.

21  Salahi Decl. ¶ 6.  Of course, negotiations did not start on the day of the mediation.  Instead, the

22  parties had been discussing potential settlement structures for weeks before working with Mr.

23  Lindstrom to finally reach an agreement on the principal terms of a class-action settlement.  *Id.* ¶¶

24  4-5.  Proposed Settlement Class Counsel believed that these preliminary discussions were

25  necessary to determine whether mediation was likely to be productive at all before engaging in it.

26  *Id.* ¶ 4.  And even after the parties' all-day mediation, it took several additional months to hammer

27  out the finer points of the Settlement.  *Id.* ¶ 8.

28

These lengthy negotiations demonstrate that the proposed Settlement is the product of arm's-length negotiations. *See Cmty. Resources for Indep. Living v. Mobility Works of Cal., LLC*, 533 F. Supp. 3d 881, 889 (N.D. Cal. 2020) ("serious, informed, non-collusive negotiations" taking place over an "extended" period weighed in favor of settlement approval); *Vianu v. AT&T Mobility LLC*, No. 19-CV-03602-LB, 2022 WL 16823044, at *7 (N.D. Cal. Nov. 8, 2022) (finding that negotiations aided by an experienced mediator weighed in favor of settlement approval).

Moreover, the Settlement bears none of the "subtle signs of implicit collusion" that the Ninth Circuit has cautioned district courts to be on alert for. *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049-50 (9th Cir. 2019). These factors, commonly called the *Bluetooth* factors, are: (1) "when counsel receive a disproportionate distribution of the settlement;" (2) "when the parties negotiate a 'clear sailing' arrangement" (i.e., an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed [funds] to the defendant. *Bluetooth*, 654 F.3d at 947.[3]

First, the Settlement contemplates that Class Counsel will limit any request for fees to 25% of the Settlement Fund, and that Class Counsel's payment will be subject to approval by the Court. Settlement ¶ 9.1. This 25% figure is the "benchmark" fee award in this Circuit. *See Vizcaino v. Microsoft Corp.*, 97 F.3d 1187 (9th Cir. 1996). And, of course, this Court will need to determine what fee is "reasonable" to award under the circumstances. *See Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003). Similar proposed awards have been found not to be indicative of collusion. *See, e.g.*, *Luz Bautista-Perez v. Juul Labs, Inc.*, No. 20-CV-01613-HSG, 2022 WL 307942, at *6 (N.D. Cal. Feb. 2, 2022) ("And while the Settlement Agreement authorizes Plaintiffs' counsel to request up to $750,000 in attorneys' fees, which is about 42% of the gross settlement fund, it does not necessarily contemplate a disproportionate cash allocation between counsel and the class"); *Cottle*, 340 F.R.D. at 377-78 (proposed 25% award was "presumptively reasonable" and not a disproportionate fee award).

---

[3] Later cases have also indicated that "large incentive payments seemingly untethered from service to the class" also may be evidence of collusion. *Roes, 1-2*, 944 F.3d at 1049; *see Luz Bautista-Perez*, 2022 WL 307942, at *6-*7. The size of the service award contemplated by the Settlement is discussed in conjunction with another of the Rule 23(e) factors, concerning the equitable distribution of settlement proceeds. *See infra* § IV.E.

Second, there is no clear sailing agreement here. Roblox retains the right to object to any proposed fee award Class Counsel petitions for. *See* Settlement ¶ 9.1 ("Defendant may challenge the amount requested.").

Third, there is no reverter or kicker clause here. First, Settlement Class Members will receive a refund of their Robux automatically, without the need to submit a claim form. Settlement ¶ 3.4.1. And Settlement Class Members whose pro rata share is at least $10[4] and who wish to receive their recovery in cash can easily do so by submitting a Cash Claim Form, and electing either an electronic distribution of funds or a paper check. *Id.* ¶ 3.3.1. If a check goes uncashed, the relevant Class Member will still receive Robux Relief. *Id.* ¶ 3.3.9. A *cy pres* recovery will only be available if, for some reason, a class member cannot be issued their Robux Relief. *Id.* Moreover, should the Court award less in fees, costs, or service awards than what Plaintiff and proposed Settlement Class Counsel seek, the difference will remain in the Settlement Fund for distribution to Class Members. Settlement ¶ 9.1. *See also* Procedural Guidance § 1(g) (directing litigants to discuss at preliminary approval whether the proposed settlement contains any provision for reversion of funds to the defendant).

Thus, the terms of the Settlement contain none of the subtle signs of collusion that the Ninth Circuit has cautioned against, confirming that the Settlement was negotiated at arm's length.

### C.    The Settlement secures outstanding relief for the Class.

The next Rule 23(e) factor directs the Court to consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees,

---

[4] Courts commonly approve class action settlement agreements with allocation plans that impose a minimum recovery requirement on class members, particularly when such a minimum is necessary to prevent disproportionate administrative expenses. *See*, *e.g.*, *In re MGM Mirage Sec. Litig.*, 708 Fed. App'x 894, 897 (9th Cir. 2017) (holding district court did not abuse discretion in approving allocation plan with a minimum $10 threshold because "issuing very small checks to class members would cause a disproportionate administrative expense" and because "small checks, such as those under $10, in many instances are never cashed"); *see also Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 WL 537946, at *4, *15 (N.D. Cal. Feb. 11, 2016) (approving settlement with $10 threshold "due to the expenses associated with administering the claims").

1  including timing of payment; and (iv) any agreement required to be identified under Rule

2  23(e)(3)."  Similarly, this District's Procedural Guidance for Class Action Settlements asks

3  litigants at the preliminary approval stage to discuss "the class recovery under the settlement

4  (including details about and the value of injunctive relief), the potential class recovery if plaintiffs

5  had fully prevailed on each of their claims, claim by claim, and a justification of the discount

6  applied to the claims."  Procedural Guidance § 1(c).

7        Here, the relief provided by the Settlement is outstanding.  Class Members allegedly were

8  unlawfully deprived of their Robux by Roblox, and the Settlement ensures that Class Members

9  can get Robux back without lifting a finger.  The total value of the Settlement is $10 million, or 1

10  billion Robux at the specially-negotiated exchange rate.  Informal discovery has confirmed that the

11  Settlement Class had items worth approximately $21.5 million (or 1.7 billion Robux at market

12  rates) taken from them without a refund.  Salahi Decl. ¶ 13.  Thus, the Settlement returns about

13  46.5% of the Class's total losses to the Class.[5]

14        Moreover, the refund program secured by the Settlement is of immense value to the

15  Settlement Class.  The refund program was catalyzed by Plaintiff's lawsuit, as Roblox sought to

16  moot her claim after it was filed.  The Settlement ensures that the program will remain in place for

17  at least four more years.  Under the program, moving forward, anytime a Roblox user's purchased

18  virtual content is deleted or moderated for reasons other than that user's own terms of service

19  violations, Roblox will automatically credit that user's account with the Robux spent on the item.

20  If the past four years are any indication, this refund program stands to prevent losses of at least

21  $25 million: In addition to the lost Robux already at issue, in the short time it has been active, the

22  refund program has prevented the loss of more than half a million Robux.  Salahi Decl. ¶ 14.

23  Although Roblox instituted this program voluntarily, Plaintiff and Class Counsel deserve credit for

24  forcing Roblox's hand, as the program was instituted in response to the lawsuit, and for ensuring

25  that the program remains in place.  *See* Dkt. 19-1 ¶ 12 (acknowledging that the program was

26  instituted after the filing of this lawsuit).

27  _____

28    [5]   Section 1(c) of this District's Procedural Guidance on Class Action Settlements asks
Plaintiff to estimate recovery on a claim-by-claim basis.  Each claim at issue here would
encompass all of the recoverable damages available to the Class.

Although the Settlement does not achieve full relief for past losses, the relief secured by the Settlement is still outstanding in light of the costs and risks of future litigation, and the delay that would be caused by any trial or appeal. *See Harrison*, 2021 WL 5507175, at *3 (approving settlement that returned approximately 20% of total damages); *Knapp v. Art.com, Inc.*, 283 F. Supp. 2d 823, 832-33 (N.D. Cal. 2017) (settlement representing at most 42% of potential recovery was fair and adequate, particularly since the settlement also included conduct relief); *see also Officers for Justice v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair.").

Indeed, while Plaintiff remains confident in her ability to prevail, the Settlement Class would face several hurdles to relief on the merits after a trial. First, a jury may not agree with Plaintiff that the Roblox marketplace is itself designed to induce the reasonable belief that purchased items will remain in the control of users. Or a jury might agree with Roblox that users have sufficient warning that items may be deleted such that any reliance on a contrary position is unreasonable. A jury finding in Roblox's favor would prevent the Class from recovering anything on their fraud-based claims. Moreover, the conversion claim faces a significant legal hurdle in that the allegedly converted goods are intangible, and without any apparent connection to a physical document. There is a serious risk that the Court might conclude that these virtual goods cannot be converted, or that all Class Members own is a revocable license to the virtual good, rather than the virtual good itself. Add to these risks the fact that even if the Class were to prevail, any success would not come for years. Both the class certification and summary judgment stages likely would have required the production of experts, and associated briefing on whether to qualify or exclude them, as well the development of a trial plan, and a trial itself. Either party also would be likely to appeal an adverse judgment, adding additional delay.

Balanced against these risks, and the attendant delay associated with litigating a case through trial and appeal, the recovery secured by the Settlement is outstanding. This is all the more so because Class Members will not have to do anything in order to obtain Robux Relief from the Settlement. The Settlement ensures that Robux Relief will be credited automatically to the

1  Roblox accounts of Class Members.  And those eligible who wish to receive cash may submit a

2  Cash Claim Form, and elect to receive their share of the Settlement either electronically or in the

3  form of a paper check.  This simple, streamlined process further confirms the adequate nature of

4  the relief here.  *See Taafua v. Quantum Glob. Techs., LLC*, No. 18-CV-06602-VKD, 2020 WL

5  4732342, at *7 (N.D. Cal. Aug. 14, 2020) ("Considering the potential risks and costs of

6  proceeding to trial, as well as the relative ease with which class members may receive their funds,

7  at this stage the Court is satisfied that the settlement consideration is adequate.").

8        Finally, the Settlement's proposed attorney's fees are reasonable.  As discussed above, the

9  Settlement contemplates that Class Counsel will seek a benchmark fee award of 25%, which

10  would not result in a disproportionate distribution to Class Counsel.  Moreover, the Court retains

11  the authority to reduce any fee award to ensure that it is reasonable.

12        Thus, the relief secured by the Settlement demonstrates that the Settlement is fair and

13  reasonable.[6]

14        **D.**      **The Settlement is not a coupon settlement.**

15        The District's Procedural Guidance calls for a preliminary approval brief to address

16  whether a settlement constitutes a "coupon settlement" and if so, how it complies with 28 U.S.C.

17  § 1712, which creates special rules for determining attorney's fees under coupon settlements.  *See*

18  Procedural Guidance ¶ 10.

19        Because CAFA does not define "coupon," courts consider "three factors to determine

20  whether a settlement is a coupon settlement: (i) whether class members have to hand over more of

21  their own money before they can take advantage of a credit; (ii) whether the credit is valid only for

22  select products or services; and (iii) how much flexibility the credit provides, including whether it

23  expires or is freely transferrable."  *Chambers v. Whirlpool Corp.*, 980 F.3d 645, 659 (9th Cir.

24  2020) (quotations omitted).

25        Here, class members receive either Robux Relief or Cash.  Robux are not coupons; they

26  are a virtual currency, the same virtual currency that class members purchased with dollars, and

27  which class members lost because of Roblox's alleged conduct.  Further, Robux will be provided

28

---

[6]    There are no agreements required to be identified under Fed. R. Civ. P. 23(e)(3).

1    to class members at *greater* than cash value in most instances, at an exchange rate more favorable

2    than almost all options available on the open market.  To the extent class members who have the

3    choice between cash and Robux nevertheless select Robux, that will also support a finding that

4    class members "are likely to value [Robux] at 'close to face [cash] value' because they will have

5    selected the [Robux] credit over the cash options."  *McKnight v. Hinojosa*, 54 F.4th 1069, 1076

6    (9th Cir. 2022).

7         Moreover, class members who receive Robux do not have to give Roblox any money to

8    redeem them.  There are thousands of virtual products available in the Roblox Avatar Shop for

9    less than 100 Robux (the average individual net recovery in Robux).  *See*

10   https://www.roblox.com/CATALOG?Category=1&CurrencyType=3&pxMax=100&salesTypeFilt

11   er=1.  The Robux to be distributed through the settlement do not come with any special

12   restrictions; they can be used just like Robux purchased on the market and like the Robux that

13   class members originally lost.  *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 951

14   (9th Cir. 2015) (Walmart gift cards not "coupons" because the settlement "gives class members

15   $12 to spend on any item carried on the website of a giant, low-cost retailer" and "[t]he class

16   member need not spend any of his or her own money and can choose from a large number of

17   potential items to purchase").  Nor does the fact that Robux must be used on the Roblox platform

18   mean this is a "coupon" settlement.  *See McKnight*, 54 F.4th at 1076 (holding settlement was not

19   for "coupons" even though Uber Eats credits could only be used through the Uber app).  Finally,

20   the Robux do not expire, giving class members greater flexibility in spending them.

21        In any case, this issue is relevant only to proposed Settlement Class Counsel's eventual

22   fee request, so need not be resolved at this stage to grant preliminary approval.

23        **E.    The Settlement treats Class Members equitably relative to each other.**

24        The final Rule 23(e) factor concerns whether the proposed settlement treats class members

25   equitably relative to each other.  The instant Settlement easily passes this test, as Settlement Class

26   Members' recovery is calibrated to how much they lost when Roblox "moderated" items they had

27   already purchased.  *See In re MacBook Keyboard Litig.*, No. 5:18-CV-02813-EJD, 2022 WL

28   17409738, at *5 (N.D. Cal. Dec. 2, 2022) (finding at preliminary approval that settlement which

1   contained tiered allocation plan depending on class member injuries "appears to treat Class

2   members equitably relative to each other"); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036,

3   1045 (N.D. Cal. 2008) ("It is reasonable to allocate the settlement funds to class members based

4   on the extent of their injuries or the strength of their claims on the merits.").

5          Finally, while the Settlement proposes to issue a service award to the Named Plaintiff, that

6   does not indicate inequitable treatment.  Such awards are commonplace, and serve to recognize the

7   valuable efforts of a class representative, without which this type of representative litigation and

8   class settlement could not even exist.  As will be explained more fully in a later motion, the

9   Named Plaintiff here has participated closely with Class Counsel in developing the case,

10  responding to Roblox's motion to dismiss, and in preliminary discovery.  Salahi Decl. ¶ 16.

11  Under the Settlement, these efforts permit Doe to petition the Court for an award of up to $5,000.

12  This is on the lower end of incentive awards in this District, constitutes only 0.05% of the

13  proposed Settlement Fund, and is presumptively reasonable.  *See In re Facebook Biometric Info.*

14  *Privacy Litig.*, No. 21-15553, 2022 WL 822923, at *2 (9th Cir. Mar. 17, 2022) (noting that the

15  Ninth Circuit "regularly uphold[s] incentive awards" of $5,000); *In re Wells Fargo & Co.*

16  *S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 534 (N.D. Cal. 2020) (noting that a $5,000 award

17  is "presumptively reasonable").  Moreover, the Court will retain the authority to reduce or even

18  reject the proposed service award.  Thus, this additional allocation of funds is equitable.  *See*

19  *Evans v. Zions Bancorp., N.A.*, No. 2:17-CV-01123 WBS DB, 2022 WL 16815301, at *5 (E.D.

20  Cal. Nov. 8, 2022) (finding that $5,000 service awards comported with equitable treatment of

21  class members); *see also Juarez*, 2022 WL 17722382, at *6 (noting that settlement's provision for

22  an incentive award did not indicate preferential treatment because any such award would need to

23  be supported with evidence).

24         Thus, the instant proposed Settlement warrants preliminary approval.

25  **V.     The Court should approve the proposed form and manner of notice.**

26         Finally, once the Court has determined that the Settlement should be preliminarily

27  approved, the Court must order that the parties direct notice of the Settlement to the Settlement

28  Class.  *See* Fed. R. Civ. P. 23(e)(1).  The parties must provide the absent class with the "best

notice practicable" under the circumstances.  *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir.

1994).  While this standard does not demand individual notice to every class member, it does

require "individual notice to all members who can be identified through reasonable effort."  Fed.

R. Civ. P. 23(c)(2); *see Schneider v. Chipotle Mexican Grill*, 336 F.R.D. 588, 596 (N.D. Cal.

2020).  Notice may be provided to the class via "United States mail, electronic means, or other

appropriate means."  Fed. R. Civ. P. 23(c)(2)(B).

The parties here have agreed to a comprehensive and aggressive Notice Plan designed to

ensure individual notice to all, or nearly all, of the Settlement Class.  The principal form of direct

notice contemplated by the Settlement is email and in-app notice.  Settlement ¶ 5.1.  The proposed

notice is attached as Exhibit B to the Settlement Agreement.  Of the approximately 8 million

Settlement Class Members, Roblox has email contact information for approximately 7.9 million of

them, or about 98.75% of the Settlement Class.  Salahi Decl. ¶ 12.  Moreover, the Notice Plan will

combine this more traditional outreach program with in-app notice, with messages delivered to the

"My Inbox" feature on Roblox, reaching both the emailed class members and the 1.25% of class

members for whom Roblox does not possess e-mail information.  Settlement ¶ 5.5.  The

Settlement Administrator will send an initial round of e-mail notice to all Class Members and a

follow-up, reminder notice about the Cash Claim deadline to all Class Members potentially

eligible for a payment.  *Id.* ¶ 5.4.  In collaboration with the Settlement Administrator, Roblox will

send notice to the in-app Roblox inbox of every proposed Class Member.  *Id.* ¶ 5.5.  These

combined methods should deliver notice of this Settlement to around 99% of the Settlement Class,

well in excess of what is required by Due Process and Rule 23.

Moreover, mindful of both the requirements of Rule 23, *see Online DVD-Rental Antitrust*

*Litig.*, 779 F.3d at 945-47, and this District's Procedural Guidance on Class Action Settlements,

the parties drafted the notice to provide—in plain English, as free from legalese as is possible—

sufficient information to Settlement Class Members about how to make a Cash Claim, how to

object to the Settlement, and how to opt out.  The short-form Notice, which is what will be

provided via e-mail and in-app inboxes, also includes a line suggesting that any minors who

receive the notice consult with their parents about the notice and Settlement.  Settlement, Ex. B.

1   The parties also considered including snail mail in the Notice Plan, but determined it was not

2   possible because Roblox does not maintain mailing address information for Class Members, and,

3   even if it did, email and in-app notice should reach nearly all of the Settlement Class, no additional

4   Settlement Class Members would be reached via First Class Mail, and the cost of distributing

5   notice via First Class Mail would be therefore prohibitive in light of any benefit such notice might

6   provide.  Salahi Decl. ¶ 9.  Long-form notice will be available on the settlement website; it is

7   attached as Exhibit C to the Settlement Agreement.

8         To effectuate this Notice Plan, the parties have selected Simpluris Inc. as Settlement

9   Administrator.  The parties solicited and received three bids for the role of settlement

10  administrator.  Salahi Decl. ¶ 11.  The Simpluris proposal was the most cost-effective—Simpluris

11  estimates that administrative costs for this Settlement will total around $350,000, which amount is

12  to be paid out of the Settlement Fund.  *Id.*  In addition, and as explained more fully in the

13  Declaration of Jacob Kamenir, Simpluris is Soc2 complaint, has numerous controls in place to

14  ensure the security of class member personal data, and has the standard suite of relevant insurance.

15  *See* Procedural Guidance § 2(a), (b).  Edelson PC has engaged Simpluris in eight other matters

16  within the past two years.  Salahi Decl. ¶ 11; *see* Procedural Guidance § 2(a).

17        The Court should therefore approve the proposed form and manner of notice, and order

18  that notice be disseminated to the absent class.

19  **VI.   CONCLUSION**

20        Accordingly, this Court should enter an order certifying the proposed Settlement Class for

21  settlement purposes, appointing the Plaintiff Jane Doe to represent the Settlement Classes, appoint

22  Jay Edelson, Rafey S. Balabanian, J. Eli Wade-Scott, and Yaman Salahi, of Edelson PC as Class

23  Counsel and Mark S. Reich and Courtney E. Maccarone of Levi & Korsinski, LLP as Liaison

24  Counsel, preliminarily approving the Settlement, and ordering that notice be disseminated to class

25  members.

26

27  Date: March 28, 2023              By: */s/ Yaman Salahi*

28                                    Rafey Balabanian SBN 315962)
                                      rbalabanian@edelson.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Yaman Salahi (SBN 288752)
ysalahi@edelson.com
P. Solange Hilfinger-Pardo (SBN 320055)
shilfingerpardo@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

*Attorneys for Plaintiff and the Settlement Class*