ANTHONY J WEIBELL, State Bar No. 238850
CARMEN SOBCZAK, State Bar No. 342569
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: aweibell@wsgr.com
       csobczak@wsgr.com

Attorneys for Defendant
ROBLOX CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JANE DOE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ROBLOX CORPORATION, <br><br> Defendant. | CASE NO.: 3:21-cv-03943-WHO <br><br> **DEFENDANT ROBLOX'S STATEMENT OF NON-OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT** <br><br> DATE: May 3, 2023 <br> TIME: 2:00 P.M. <br> DEPT: Courtroom: 2, 17th Floor <br> JUDGE: Honorable William H. Orrick |

## I. INTRODUCTION

Defendant Roblox Corporation ("Roblox") does not oppose the motion by Plaintiff for preliminary approval of the parties' class settlement (the "Settlement") and submits this statement so that the record of this case will include certain facts demonstrating that the claims of the class are without merit.

## II. BACKGROUND

Roblox operates the Roblox Platform, a virtual world in which users can create virtual games, experiences, apparel, and other content for themselves and other users to enjoy. ECF No. 22, First Amended Class Action Complaint ("FAC"), ¶ 1; ECF No. 25-1, Declaration of Matt Brown ("Brown Decl."), ¶ 2. Users can access the virtual content created by other players, including virtual clothing from the Roblox Avatar Shop, with Robux they purchase from Roblox. FAC ¶¶ 24-26; Brown Decl. ¶ 6. Robux are a digital faux currency that is merely a license issued by Roblox to access this content. Brown Decl. ¶ 6; Brown Decl. Ex. 1 ("TOU") § 4.A(1). Content that infringes intellectual property rights or otherwise violates the Roblox Terms of Use ("TOU") is subject to removal (moderation) from the platform. *See* FAC ¶ 40; Brown Decl. ¶ 9.

Plaintiff's lawsuit challenged Roblox's former policy of not crediting Robux back to users who spent Robux on virtual items in the Roblox Avatar Shop that were later moderated. FAC ¶¶ 37, 38, 40. But her allegations ignore the fact that Roblox made no promises that content would remain indefinitely on the platform and that Roblox repeatedly told its users that content might be removed from the platform with no Robux credit given for moderated items. *See* ECF No. 25, Roblox's Combined Motion to Dismiss and Strike the First Amended Complaint ("MTD") at 12. Moreover, were this case to proceed, the facts would show that class members continued to spend Robux to acquire virtual items even after they had experienced moderation of an item and thus were fully aware of Roblox's prior policy. In other words, the fact that some items were occasionally moderated was not material to class members' decisions to acquire virtual items to begin with. Such facts completely undermine the core allegation on which this lawsuit turns—that class members would not have purchased Robux if they were aware of the policy.

Notwithstanding Roblox's full disclosure of its prior policy and its users' repeated consent thereto, Roblox implemented a new policy in September 2021 that was a long time in the making due to certain engineering challenges. *See* Brown Decl. ¶¶ 10, 14-15. Before this lawsuit was filed, Roblox had been grappling with the issue of how to implement a feasible process, not subject to significant abuse by bad actors, that would allow users to be credited back the Robux spent on virtual items that are subsequently moderated. *Id.* ¶ 10. Under the new policy, Roblox will credit Robux to users who experienced or will experience moderation of a virtual item from the Roblox Avatar Shop, so long as those users have not violated the TOU. *Id.* ¶¶ 14-15.

For these and other reasons, Plaintiff and the proposed class would never be able to prevail on their claims in this action. Despite the weakness of their case, however, Roblox has agreed to resolve the dispute so that it can avoid protracted litigation and instead focus its efforts on providing a better user experience.

### III. THE LAWSUIT LACKS MERIT

The foremost consideration when evaluating the fairness of a class settlement is "the strength of the plaintiffs' case." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).[1] Here, despite allegations that allowed her claims to survive Roblox's motion to dismiss, Plaintiff's case on the actual facts was undoubtedly weak. In particular, Plaintiff's claims fail because the conduct she complains of is expressly and repeatedly disclosed by the TOU. Although the Court declined to hold that the TOU bound Plaintiff at the pleading stage, ECF No. 48, Order on Motion to Dismiss and Strike

---

[1] Another primary consideration for class settlements is "the risk of maintaining class action status throughout the trial." *Campbell*, 951 F.3d at 1121 (quoting *Hanlon*, 150 F.3d at 1026). Where a defendant would challenge class certification absent a settlement, "there is a risk that the Class may not be certified" that "weighs in favor of settlement." *Nigh v. Humphreys Pharmacal, Inc.*, 2013 U.S. Dist. LEXIS 161215, at *19 (S.D. Cal. Oct. 23, 2013); *accord Smith v. Am. Greetings Corp.*, 2016 U.S. Dist. LEXIS 11718, at *11 (N.D. Cal. Jan. 29, 2016) (the "like[lihood] that if the Court did not approve this settlement, Defendant would challenge certification for some or all of the subclasses" weighed in favor of approving the settlement). Here, Roblox has preserved the right to challenge certification of a litigation class if the Court declines to approve the Settlement and would contend that individualized issues preclude certification of a litigation class under Rule 23(b)(3)'s predominance requirement—issues that evaporate in the settlement context because of the "general rule that predominance is easier to satisfy in the settlement context." *Jabbari v. Farmer*, 965 F. 3d 1001, 1006 (9th Cir. 2020).

1  ("MTD Order") at 8-11, because the facts will reveal that Plaintiff and the proposed class were
2  indeed on notice of and bound by the TOU, the lawsuit will fall apart when the evidence is
3  considered.

### A. Roblox Users Are Bound by the TOU

Plaintiff and all users had to agree to the Roblox TOU to use the platform, which is dispositive of this case. Brown Decl. ¶ 3. During the process of creating an account, users are presented with the TOU and are required to manifest their assent to that contract by clicking a button that says, "By clicking Sign Up, you are agreeing to the Terms of Use." *Id.* This is a classic example of the consumer sign-in agreements held to be enforceable by the Ninth Circuit and many district courts. *See, e.g.*, *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394-95 (9th Cir. 2020) (upholding consumer sign-in agreement where text informed users that they were agreeing to the Terms of Use by clicking "Sign In" or "Place Order" buttons and the text was displayed either "directly above" or "three lines below" the buttons with a hyperlink to the applicable terms); *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 484 (9th Cir. 2020) (upholding consumer sign-in agreement where the "hyperlink to the Terms of Use were conspicuous—they were the only text on the webpage in italics, were located directly below the sign-in button, and the sign-in page was relatively uncluttered"); *Snow v. Eventbrite, Inc.*, 2021 U.S. Dist. LEXIS 167227, at *12-13 (N.D. Cal. Sept. 2, 2021) (citing cases).

Users who spend money to buy Robux are also presented with and manifest assent to the TOU when they make those purchases. Brown Decl. ¶ 3. This means that the parents of child users like Plaintiff would have been put on notice of the TOU when they purchased Robux. See *Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1086 (9th Cir. 2020) ("[N]otice—actual, inquiry, or constructive—is the touchstone for assent to a contract").

### B. Roblox Users Expressly Agreed to the Policy at Issue

The fact that users must agree to the TOU is dispositive of the claims at issue. Although Plaintiff complains that Roblox removed virtual items from her virtual inventory without refunding the Robux she used to acquire the items, Roblox expressly told Plaintiff, and all users, that this could happen, and they agreed to this. Specifically, all users were told and agreed:

> [T]here may be situations where games, avatar items, or other content may be removed from the Service (due to violations of these Terms or for other reasons). ***We will have no liability for any losses you may incur as a result, and will not be liable to refund any Robux or other funds you spent in or for that game or content.***

TOU § 5.A(3) (emphasis added).

> UGC [User Generated Content] Disclaimer. We are under no obligation to edit or control UGC that you or others Provide, and will not be in any way responsible or liable for UGC. We may, however, ***at any time and without prior notice***, screen, remove, edit, or block any UGC that in our sole judgment violates these Terms or is otherwise objectionable. . . . ***You agree to waive, and do waive, any legal or equitable right or remedy you have or may have against us with respect to UGC.***

TOU § 6.B(9) (emphasis added).

Moreover, users were told and agreed that once purchased, Robux had no real-world value, and virtual transactions involving Robux on the Roblox Platform were not legally enforceable and could not give rise to any cause of action against Roblox:

> If we offer you the ability to acquire a limited license to use Robux, we hereby grant you a non-exclusive, ***revocable***, personal, limited, non-transferable . . . right and license to use Robux only for your personal, entertainment use exclusively in connection with the Service as permitted by us, subject to these Terms. . . .
>
> ***Robux do not:*** (a) have an equivalent value in real currency . . . ; (b) act as a substitute for real currency; (c) ***act as consideration for any legally enforceable contract*** . . . ; or (d) earn interest. . . . ***Transactions involving the exchange or Robux for virtual items or virtual services on the Platform are not legally enforceable, may not form the basis of any private right of action against Us*** . . .

TOU § 4.A (emphasis added).

Because users agreed to these terms, they cannot sue Roblox for doing exactly what Roblox told them would happen when user-generated content is removed from the Roblox Platform. It is a bedrock principle of law that no cause of action will lie where it is based on otherwise lawful conduct expressly permitted by a governing contract. Cal. Civ. Code § 3515 ("He who consents to an act is not wronged by it."). It "would defy all logic" to impose liability on an entity for doing what the parties' contract expressly permits. *Hamilton v. Dixon*, 168 Cal. App. 3d 1004, 1012 (1985); *see also Sweet v. Google Inc.*, 2018 U.S. Dist. LEXIS 37591, at *27 (N.D. Cal. Mar. 7, 2018) ("[A]ll of [plaintiff's] claims (the § 17200 claim; the claims for breach of contract, the

implied covenant, and quasi-contract; and the claim for tortious interference) are subject to dismissal given the explicit terms of the agreement."); *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955 (N.D. Cal. 2017) (contract and tort claims were barred where based on conduct expressly allowed by Facebook's Terms of Use), *aff'd*, 745 F. App'x 8 (9th Cir. 2018).

### IV. THE SETTLEMENT EXCLUDES CERTAIN ACCOUNTS WHOSE ACTIVITY SHOWS THEY ARE NOT PROPERLY PART OF THE SETTLEMENT CLASS

The Settlement identifies three categories of Roblox accounts that should be excluded from the Settlement because these accounts appear to have acquired items from the Roblox Avatar Shop for something other than their intended purpose, and these accounts were thus atypical of the settlement class and undeserving of settlement benefits: (1) the account used Robux to acquire the same virtual item multiple times, (2) the account used Robux to acquire a virtual item after that item had already been moderated, or (3) the account created a virtual item and then used Robux to acquire it themselves. Plaintiff correctly stated in her motion for preliminary approval that the reason the 311 accounts connected with these transactions are properly excluded from the settlement class is "because these individuals did not appear to be engaging in bona fide purchases, and so have not been defrauded and may not have a legitimate claim." *See* ECF No. 53, Plaintiff's Motion in Support of Preliminary Approval of a Class Action Settlement ("Mot.") at 7.

Although such facts justify excluding these accounts from a class settlement under Rule 23, there are lawful reasons why users might engage in such unusual transactions. Notably, Roblox has controls in place to prevent money laundering and similar conduct, and to the extent these accounts were found to have violated the Roblox Terms of Use, they were terminated or otherwise moderated pursuant to Roblox's policies. Roblox therefore disagrees with any blanket characterization of these transactions as "money laundering." *See* Mot. at 6-7. But regardless, the parties have agreed that these accounts should not be part of the settlement class under Rule 23.

### V. CONCLUSION

For the foregoing reasons, Roblox does not oppose preliminary approval of the Settlement.

| | |
|---|---|
| Dated: April 11, 2023 | WILSON SONSINI GOODRICH & ROSATI<br>Professional Corporation<br><br>By: */s/ Anthony J Weibell*<br>    Anthony J Weibell<br><br>*Attorneys for Defendant*<br>ROBLOX CORPORATION |