```
                                                              Pages 1-14

 1                     UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF CALIFORNIA
 2                        SAN FRANCISCO DIVISION

 3

 4   JANE DOE,                          )  Case No.  21-cv-03943-WHO
                                        )
 5              Plaintiff,              )  San Francisco, California
                                        )  Wednesday, May 3, 2023
 6        v.                            )
                                        )  ZOOM WEBINAR PROCEEDINGS
 7   ROBLOX CORPORATION,                )
                                        )
 8              Defendant.              )
                                        )
 9   _____)

10

11                        TRANSCRIPT OF HEARING
                BEFORE THE HONORABLE WILLIAM H. ORRICK
12                UNITED STATES DISTRICT COURT JUDGE

13

14   APPEARANCES:  (Via Zoom Webinar)

15   For Plaintiff:              YAMAN SALAHI, ESQ.
                                 Edelson PC
16                               150 California Street, 18th Floor
                                 San Francisco, California 94111
17                               (415) 212-9300

18                               MARK S. REICH, ESQ.
                                 Levi & Korsinsky LLP
19                               55 Broadway
                                 4th Floor, Suite 427
20                               New York, New York 10006
                                 (212) 363-7500
21
     For Defendant:              ANTHONY J. WEIBELL, ESQ.
22                               Wilson Sonsini Goodrich & Rosati
                                 Professional Corporation
23                               650 Page Mill Road
                                 Palo Alto, California 94304-1050
24

25   Proceedings recorded by electronic sound recording; transcript
     produced by transcription service.
```

```
 1  APPEARANCES:  (Cont'd.)

 2  Transcription Service:       Peggy Schuerger
                                 Ad Hoc Reporting
 3                               2220 Otay Lakes Road, Suite 502-85
                                 Chula Vista, California 91915
 4                               (619) 236-9325

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

|    |    |
|---|---|
| 1  | <u>SAN FRANCISCO, CALIFORNIA   WEDNESDAY, MAY 3, 2023   1:57 P.M.</u> |
| 2  | --oOo-- |
| 3  | THE CLERK:  All right.  So this is Case Number 21-3943, |
| 4  | Doe v. Roblox Corporation.  Counsel, if you would please state |
| 5  | your appearance for the record. |
| 6  | MR. SALAHI:  Good afternoon, Your Honor.  This is Yaman |
| 7  | Salahi of Edelson PC for Plaintiff. |
| 8  | MR. REICH:  Good morning, Your Honor.  Mark Reich with |
| 9  | Levi Korsinsky also on behalf of Plaintiff. |
| 10 | MR. WEIBELL:  Hello, Your Honor.  Tony Weibell for the |
| 11 | Defendants Roblox. |
| 12 | THE COURT:  Good afternoon to everybody.  So I've got a |
| 13 | few questions for you, Mr. Salahi.  First, the -- I need to know |
| 14 | what your lodestar is and any expert fees or other expenses. |
| 15 | Those are things that are required in the application.  So if you |
| 16 | would submit a declaration within a week and provide that |
| 17 | information, that would be helpful. |
| 18 | There's no valuation that's included of injunctive -- |
| 19 | injunctive relief if there is any valuation to be had.  And so -- |
| 20 | so I need all of those things. |
| 21 | With respect to the Short Form Notice, it's also going |
| 22 | to be important to include the settlement value as well as the |
| 23 | amount sought in the Short Form Notice, not just 25 percent but 25 |
| 24 | percent of what so that the class would know. |
| 25 | So those are some issues that I need, but I have some |

questions for you.  How many class members do you expect to request cash here? -- would be qualified and request cash?

MR. SALAHI:  Thank you, Your Honor.  So to address that directly, I just want to distinguish between people who might be eligible for the cash payments and people who might ultimately request it.

On the first question, we have a tentative sense.  It's a relatively small proportion of the class, and that's because of the fact that the lawsuit here for class members was generally pretty small.  The vast majority of users spent very small amounts of Robux on the items that were then moderated from the accounts. Based on the preliminary information that Mr. Weibell has provided us -- which is of course tentative until we've gone through the entire process -- we estimate there's likely somewhere around ten thousand class members who might meet the eligibility requirements based solely on the number of -- there's a new (indiscernible), but if you look on a per-account basis -- and, Mr. Weibell can correct me if I'm wrong -- it's slightly under ten thousand that meets the eligibility threshold standing alone.  But there is also the option that individuals who possess more than one Robux account can attempt to abrogate those claims, so losses from multiple accounts.  And if they then meet the threshold, that may result in a higher number.  But based on what we know about the class so far, it's unlikely that that would be a large number of individuals, at least wouldn't significantly increase the number

1 of class members who ultimately aren't eligible for a cash
2 payment.
3 　　　　　In terms of -- I apologize, Your Honor.
4 　　　　　THE COURT: Go ahead.
5 　　　　　MR. SALAHI: We're aiming for the largest percentage
6 possible of those who are eligible to request cash to request
7 cash, and the steps that we've taken to ensure that are a reminder
8 notice to just that subset of class members beyond the original
9 notice to remind them before the cash claim deadline that they
10 have the opportunity. But the way that it is structured, class
11 members have a very favorable exchange rate if they prefer to
12 receive -- if you're eligible for cash payments but prefer to
13 receive the Robux instead, you actually get a better deal at the
14 end of the day if you select the Robux option than the cash option
15 because the exchange rate that's used for purposes of getting
16 relief from Robux here is more favorable than what you'd get on
17 the open market in all instances but -- but one, which is if you
18 were to buy a package of Robux at the $100 amount. In that case,
19 the exchange rate is very slightly more favorable on the open
20 market and that's because there's a difference between one cent
21 per Robux versus .9999 cents per Robux, essentially.
22 　　　　　THE COURT: Okay. So the first tranche of cash that's
23 actually paid in is $3 million. Do you expect any of this $7
24 million that remains to be paid in?
25 　　　　　MR. SALAHI: We don't know at this stage. So, Your

Honor, when we negotiated, that's when we originally asked for full funding at the outset, and Roblox's position was no funding till after final approval. We arrived at the $3 million number as a compromise but also to take into account that there are administrative difficulties and inefficiencies associated with transferring money in and out. For example, if the fund is overfunded and then it turns out that there's more money in the fund than is going to be distributed as cash, that results in transactions back and forth which means Roblox and Settlement Fund, so it's more efficient for us to understand fully at the end of the final approval of claims process what -- what monetary amount actually needs to be funded proactively into the fund versus distributed directly into the Roblox accounts. The distribution of Roblox accounts are going to be handled by Roblox itself rather than the Settlement Administrator. So there's not a need for that -- for that fund to go back and forth between dollars and Robux, as it were.

THE COURT: Well, given what you've said about how many people might qualify for cash payments and what you're seeking for attorneys' fees and what expenses there may be, can you give me any sort of an estimate as to any of the $7 million that would be paid out in cash as opposed to Robux?

MR. SALAHI: Yeah. Unfortunately, Your Honor, I can't sitting here today. I think once we go through the claims process, we'll have that information for you. The reason that I

1  can't is because although we think less than ten percent of the
2  class likely have damages exceeding the $10 threshold, they are
3  likely disproportionate spenders in the class as well, so it's
4  hard for me sitting here today -- Mr. Weibell may have more
5  information on that.  But it's possible that even though those are
6  a relatively small percentage of the class, in the aggregate
7  they're going to just actually come out to a higher dollar amount.
8  So I unfortunately don't have that information for you.
9              THE COURT:  Mr. Weibell, do you have anything to add at
10 this point?
11             MR. WEIBELL:  Yeah, I can.  So as was said, you know, we
12 estimate about 10- to 20,000 that might be eligible.  Twenty
13 thousand would be eligible if there were no attorneys' fees
14 awarded, of course, but we have to pay attorneys' fees here.  And
15 so -- so there's going to be a very small amount.
16             But the graph looks -- it's a very exponential-looking
17 graph; in other words, most class members have spent next to -- I
18 think the average spend was less than $1.50 on moderated items.
19 And so what you have is you'll have a few individuals -- and when
20 I say "few," a relatively few -- you know, a few thousand maybe --
21 that will have very high amounts.  And if they choose to take cash
22 over Robux, that will really change what the numbers might look
23 like, and we just don't know which of those individuals are going
24 to choose cash versus Robux.  So that's why it's so difficult to
25 predict what's going to happen till we actually get the claims in.

1      THE COURT: Okay. So, Mr. Salahi, aren't the people who
2 have closed are in inactive accounts, aren't they part of the
3 class?
4      MR. SALAHI: Yes, Your Honor. There's nothing
5 precluding them from membership in the class.
6      THE COURT: Okay. And are they -- are they also
7 entitled to recovery?
8      MR. SALAHI: That's correct, Your Honor. I think the
9 mechanism of recovery is going to depend. So sitting here today,
10 I don't know the number of class members who would fall in that --
11 in that sub-category -- would not expect it to be high. Our
12 understanding from our engagement with Mr. Weibell is that the
13 typical pattern is that a person with young children is often
14 seasonal activity, sometimes correlating through the school year
15 and when there are breaks. And so although an account may not be
16 active for some short period of time, it tends to get reactivated
17 around the holidays or in the summer. And so on -- the number of
18 accounts that have actually been closed and terminated, we do not
19 expect to be a substantial number at all. But that is an issue
20 that is on our radar. And to the extent that there are
21 individuals who can't recover Robux because their accounts are
22 closed, I think that's an issue that will have to be revisited
23 once we understand what that universe looks like.
24      Right now, the way that the settlement is structured is
25 that if there are accounts that -- to which a refund of Robux

1  cannot be effectuated, that is slated for cy-pres at the end.  So
2  there's a provision in the settlement that says if for some reason
3  Robux cannot be credited to a particular account, that will be
4  held for cy-pres at the end of the case.
5          THE COURT:  Okay.  So they are still able to recover
6  under the agreement that you've --
7          MR. SALAHI:  Correct.  So I -- correct.  Correct, Your
8  Honor.
9          THE COURT:  All right.  So -- so I have to tell you that
10 this settlement seems a lot like a coupon settlement to me, much
11 closer to a coupon settlement than -- than not.  I don't -- I
12 don't think it's like mechanized where the rewards could be
13 redeemed for cash both affirmatively and passively if the credit
14 wasn't used.  And -- and there's only one -- as was true in that
15 case, there was only one way of achieving a result, which is to
16 use the Robux if you don't -- if you can't get the cash, and it's
17 not a particularly flexible way to gain satisfaction from the
18 settlement.
19         So -- so that's -- I'm looking at this as a -- as a
20 coupon settlement.  I don't know whether you want to try to
21 persuade me otherwise at this point, but I just -- I want you to
22 know that.
23         MR. SALAHI:  Thank you, Your Honor.  If I might address
24 that now, I do think this is an issue that likely doesn't need to
25 be resolved until the attorneys' fees stage, how attorneys' fees

1  can be calculated in this case.  But I actually think the more apt
2  case here is the *In re Online DVD Rental Antitrust Litigation*.
3  And I say that conceding that this virtual world and virtual
4  economies is new.  It's not something that Congress really
5  anticipated when CAFA was passed.  It's not something that fits
6  within all fours of any of the examples that I'm aware of in the
7  Ninth Circuit.
8         That said, I do think that the *Online DVD Rental
9  Antitrust* case provides a useful analog because one of the things
10 that the court considered there was whether or not $12 gift cards
11 to Walmart shouldn't be treated as coupons.  And the court looked
12 at the fact that what Congress was concerned with when it passed
13 this provision of CAFA were settlements where you truly got a
14 coupon, so you got a dollar, then you had to spend ten dollars
15 plus (indiscernible) out of pocket to be able to actually benefit
16 from that relief.
17        Here, the Roblox online store -- first, class members
18 purchased the Robux so they could spend it in that store.  And so
19 what we have done to the settlement for those who have losses
20 below ten dollars is restore that ability to them -- almost 50
21 percent of that ability to them to be able to redeem those Robux
22 in the online store, and we've submitted information -- and I'm
23 happy to supplement this in a later filing with the Court -- with
24 like about the nature of the items that are available in the
25 store.  The vast majority of items in the Roblox Avatar Shop are

1   very cheap.  We're talking about 5, 10, 15, 20 Robux.  And here,
2   the average is probably over a hundred, so there are numerous
3   items that the class members can use to purchase virtual items,
4   just the same as they would have at the outset of the case had
5   they not spent their Robux on items that Roblox later took away
6   from them without informing them.
7           So we think -- and we'll expound on this on our
8   subsequent filings, with the Court's permission -- but we think
9   that this actually is not -- while there are some fact features
10  that may warrant looking at this carefully to see whether it is a
11  coupon settlement, ultimately, taking into consideration that this
12  is a virtual world and a virtual economy and where class members
13  got at the outset and what they locked at the outset was the same
14  virtual currency, means that this would be looked at very
15  differently from the normal coupon case because people will be
16  able to spend these Robux on the Roblox store without spending
17  additional money out of pocket to redeem that value.
18          THE COURT:  Okay.  Well, so I will give you the
19  opportunity to brief that and persuade me otherwise.  I just want
20  you to know where -- where you're starting from with me and the
21  way that I'm looking at this.
22          MR. SALAHI:  Thank you, Your Honor.
23          THE COURT:  Okay.  And then, finally, the -- I'll just
24  tell you that the opt-out and exclusion language which you used is
25  overly burdensome and we'll need to revise it.  And I think as

1  long as we've got a Word version of things, we can do that here.
2  But basically leave -- the parties, once they settle, often want
3  to include more barriers to opposition than I like to have for
4  them, and so it's -- those things need to be fixed.
5         So the -- so what I'd like you to do, Mr. Salahi, is
6  submit the declaration in a week with the information that is
7  required by our rules with respect to approval of class
8  certification.  And then I'll get an order out as soon as I can
9  after that.
10        MR. SALAHI:  Thank you, Your Honor.  And just to
11 confirm, so our three pieces of information were counsel's
12 lodestar, any costs or expenses that counsel might seek to recoup
13 at the end of the case, and a valuation of injunctive relief.
14        THE COURT:  Yes.  Yeah.  That's right.  And I do want
15 the Short Form to include both the settlement value and the amount
16 sought, and I'll put that in the minute order coming out of this
17 so that it's appropriately clear about what I need.
18        MR. SALAHI:  Thank you.  And, Your Honor, would the
19 Court like us to submit the Word version of the notices for
20 purposes of the opt-out inclusion issue, or is that something that
21 you just want for a minute order?
22        THE COURT:  Yeah -- no, just -- you can see that -- I'll
23 tell you that in the minute order, but that's what I'm going to be
24 -- I'm going to be looking for things that I can manipulate in
25 order to make sure that once it goes out, we've got a -- we've got

1  something that's going to work.  So we should have the order
2  and -- and those -- the notices in the order.  Okay?
3              MR. WEIBELL:  Your Honor, will we have an opportunity to
4  address Your Honor's concerns about the opt-out provisions?  I
5  know -- we were crafting those very carefully to make sure people
6  could opt out.  At the same time, there were some concerns we did
7  have and we wanted to make sure that if -- if there are going to
8  be changes to that, that we do have an opportunity to discuss
9  those with -- with Your Honor so that you understood at least
10 where we were coming from.
11             THE COURT:  Well, the short answer is I love hearing
12 people's concerns.  But in every class action -- and it will
13 include this one -- I'm not -- this is really my -- my bailiwick
14 and not the parties with respect to how somebody can opt out.  And
15 so I'm not -- I'm not going to have any briefing on it, Mr.
16 Weibell, so -- but thank you.
17             MR. WEIBELL:  All right.  Thank you, Your Honor.
18             THE COURT:  Okay.
19             MR. WEIBELL:  I do -- yeah.  One of the concerns we were
20 trying to address is more recent phenomena where you balance --
21 you want to make it easy for the individual to opt out, but you --
22 but what you don't want is for -- there -- these outfits out there
23 that will try and collect en masse, and using electronic means
24 that can get very easily -- even potential names of class members
25 and they can put into a form that looks like a class member has

14

1  signed something electronically and has put the stuff into a form
2  and then submit those en masse when, in reality, the class members
3  may not have been fully informed or they don't even know that
4  their name is appearing on this document.  And so those are some
5  of the concerns that have come up in the last year or two in
6  litigation that we've been having to deal with and struggle with
7  a little bit.  But that's all I was referring to.
8              THE COURT:  All right.  Thank you.  All right.  So I
9  will look forward to seeing you again.
10             MR. WEIBELL:  Thank you, Your Honor.
11             MR. SALAHI:  Thank you, Your Honor.
12             THE COURT:  Thank you.
13        (Proceedings adjourned at 2:15 p.m.)
14
15             I, Peggy Schuerger, certify that the foregoing is a
16 correct transcript from the official electronic sound recording
17 provided to me of the proceedings in the above-entitled matter.
18
19  _____*Peggy Schuerger*_____              _____July 14, 2023_____
    Signature of Approved Transcriber        Date
20
    Peggy Schuerger
21  *Ad Hoc Reporting*
    Approved Transcription Provider
22  for the U.S. District Court,
    Northern District of California
23
24
25