Rafey S. Balabanian (SBN 315962)
rbalabanian@edelson.com
Yaman Salahi (SBN 288752)
ysalahi@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

Jay Edelson (admitted *pro hac vice*)
jedelson@edelson.com
J. Eli Wade-Scott (admitted *pro hac vice*)
ewadescott@edelson.com
EDELSON PC
350 N LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Attorneys for Plaintiff and the Settlement Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JANE DOE, | CASE NO.: 3:21-cv-03943-WHO |
| Plaintiff, | **PLAINTIFF'S NOTICE OF MOTION AND MOTION IN SUPPORT OF FINAL APPROVAL OF A CLASS ACTION SETTLEMENT** |
| v. | |
| ROBLOX CORPORATION, | |
| Defendant. | Date: September 27, 2023 |
| | Time: 2:00 pm |
| | Judge: William H. Orrick |
| | Courtroom: 2, 17th Floor |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     FACTUAL BACKGROUND ...............................................................................2

III.    SUMMARY OF SETTLEMENT TERMS ..........................................................3

        A.      Settlement Class ......................................................................................3

        B.      Settlement Fund.......................................................................................4

        C.      Allocation ................................................................................................4

        D.      Prospective Relief ...................................................................................5

        E.      Payment of Settlement Notice and Administrative Costs .......................5

        F.      Payment of Attorney's Fees, Costs, and Service Award........................6

        G.      Release of Liability .................................................................................6

IV.     ARGUMENT .......................................................................................................6

        A.      The Court should confirm certification of the proposed Settlement Class. ............6

        B.      Notice to the Class comported with Due Process. ..................................8

        C.      The Settlement merits final approval under Fed. R. Civ. P. 23(e). .......10

        D.      The objections do not demonstrate that Class Counsel's requested Attorney's Fees are unreasonable. ........................................23

        E.      There are no objections to the proposed Service Award.......................25

V.      CONCLUSION...................................................................................................25

1

## <u>TABLE OF AUTHORITIES</u>

2

3

**Cases**                                                                                                                    **Page(s)**

*Bohannon v. Facebook, Inc.*,
    No. 12-cv-01894-BLF, 2016 WL 9149505 (N.D. Cal. Aug. 5, 2016) ....................... 23, 24

*Briseño v. Henderson*,
    998 F.3d 1014 (9th Cir. 2021) ....................................................................................... 25

*Churchill Village L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ................................................................................*passim*

*City of Livonia Emp.'s Ret. Sys. v. Wyeth*,
    No. 07 Civ. 10329(RJS), 2013 WL 4399015 (S.D.N.Y. Aug. 7, 2013) ........................... 20

*Cmty. Res. for Indep. Living v. Mobility Works of Cal., LLC*,
    533 F. Supp. 3d 881 (N.D. Cal. 2020) ........................................................................... 12

*Cottle v. Plaid Inc.*,
    340 F.R.D. 356 (N.D. Cal. 2021) ............................................................................... 8, 13

*Destefano v. Zynga, Inc.*,
    No. 12-cv-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ............................... 20

*Evans v. Zions Bancorp., N.A.*,
    No. 2:17-CV-01123 WBS DB, 2022 WL 16815301 (E.D. Cal. Nov. 8, 2022) ............... 23

*Gumm v. Ford*,
    No. 5:15-cv-41-MTT, 2019 WL 479506 (M.D. Ga. Jan. 17, 2019) ................................ 11

*Harrison v. Bank of Am. Corp.*,
    No. 19-CV-00316-LB, 2021 WL 5507175 (N.D. Cal. Nov. 24, 2021) ............................ 21

*In re Bluetooth Headset Products Liability Litigation*,
    654 F.3d 935 (9th Cir. 2011) .............................................................................. 10, 12, 13

*In re Facebook Biometric Info. Priv. Litig.*,
    No. 21-15553, 2022 WL 822923 (9th Cir. Mar. 17, 2022) .............................................. 23

*In re First All. Mortg. Co.*,
    471 F.3d 977 (9th Cir. 2006) ........................................................................................... 7

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*,
    609 F. Supp. 3d 942 (N.D. Cal. 2022) ............................................................................. 7

*In re LinkedIn User Priv. Litig.*,
    309 F.R.D. 573 (N.D. Cal. 2015) ................................................................................... 15

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*In re MacBook Keyboard Litig.*,
    No. 5:18-CV-02813-EJD, 2022 WL 17409738 (N.D. Cal. Dec. 2, 2022) ....................... 22

*In re MacBook Keyboard Litig.*,
    No. 5:18-cv-02813-EJD, 2023 WL 3688452 (N.D. Cal. May 25, 2023) ......................... 16

*In re MGM Mirage Sec. Litig.*,
    708 Fed. App'x 894 (9th Cir. 2017) ................................................................. 20

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*,
    No. 4:14-md-2541-CW, 2017 WL 6040065 (N.D. Cal. Dec. 6, 2017) ........................... 24

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................. 22

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ........................................................................ 10

*In re Snap Inc. Secs. Litig.*,
    No. 2:17-CV-03679-SVW, 2021 WL 667590 (C.D. Cal. Feb. 18, 2021) ....................... 11

*In re TikTok, Inc., Consumer Priv. Litig.*,
    617 F. Supp. 3d 904 (N.D. Ill. 2022) ............................................................... 24

*In re TracFone Unlimited Serv. Plan Litig.*,
    112 F. Supp. 3d 993 (N.D. Cal. 2015) .............................................................. 16

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
    445 F. Supp. 3d 508 (N.D. Cal. 2020) .............................................................. 23

*Juarez v. Soc. Fin., Inc.*,
    No. 20-CV-03386-HSG, 2022 WL 17722382 (N.D. Cal. Dec. 15, 2022) ............... 7, 8, 23

*Kim v. Allison*,
    8 F.4th 1170 (9th Cir. 2021) ...................................................................... 24, 25

*Knapp v. Art.com, Inc.*,
    283 F. Supp. 3d 823 (N.D. Cal. 2017) .............................................................. 21

*Koby v. ARS National Services, Inc.*,
    846 F.3d 1071 (9th Cir. 2017) ................................................................... 18, 19

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) .................................................................... 11, 12

*Lowery v. Rhapsody Int'l*,
    75 F.4th 985 (9th Cir. 2023) ........................................................................ 24

*Luz Bautista-Perez v. Juul Labs, Inc.*,
     No. 20-CV-01613-HSG, 2022 WL 307942 (N.D. Cal. Feb. 2, 2022) ............................. 13

*M.B. v. Howard*,
     555 F. Supp. 3d 1047 (D. Kan. 2021) ............................................................................... 24

*O'Connor v. Uber Techs., Inc.*,
     No. 13-CV-03826-EMC, 2019 WL 1437101 (N.D. Cal. Mar. 29, 2019) ........................ 11

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*,
     688 F.2d 615 (9th Cir. 1982) ............................................................................... 16, 17, 21

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
     944 F.3d 1035 (9th Cir. 2019) .......................................................................................... 13

*Thrifty-Tel, Inc. v. Bezenek*,
     46 Cal. App. 4th 1559 (1996) ........................................................................................... 21

*Vianu v. AT&T Mobility LLC*,
     No. 19-CV-03602-LB, 2022 WL 16823044 (N.D. Cal. Nov. 8, 2022) ..................... 12, 13

*Vizcaino v. Microsoft Corp.*,
     290 F. 3d 1043 (9th Cir. 2002) ......................................................................................... 13

**Statutes**

28 U.S.C. § 1712 ..................................................................................................................... 10, 23

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................*passim*

**Miscellaneous Authority**

6 Newberg and Rubenstein on Class Actions
     § 13 ................................................................................................................................... 12

United States District Court for the Northern District of California, *Procedural Guidance for
     Class Action Settlements* (Aug. 4, 2022) § 1 ..................................................................... 6

1  <u>**NOTICE OF MOTION**</u>

2      **PLEASE TAKE NOTICE** that on September 27, 2023, at 2:00 p.m., or at such other

3  time as may be set by the Court, Plaintiff Jane Doe will appear, through counsel, before the

4  Honorable William H. Orrick or any Judge sitting in his stead, in Courtroom 2, 17th Floor, 450

5  Golden Gate Avenue, San Francisco, CA 94102, and then and there, respectfully move the

6  Court, pursuant to Federal Rule of Civil Procedure 23(e), to grant final approval of a proposed

7  class action settlement reached between Plaintiff and Defendant Roblox Corporation.

8      Plaintiff's motion is based upon this Notice, the Memorandum of Points and Authorities

9  filed herewith, the exhibits attached thereto, including the Parties' proposed class action

10 settlement agreement, the Declaration of Yaman Salahi filed simultaneously herewith, and the

11 record in this matter, along with any oral argument that may be presented to the Court and

12 evidence submitted in connection therewith.

13

14                                Respectfully Submitted,

15                                **JANE DOE,**
                                 individually and on behalf of all others similarly
16                                situated,

17

18 Dated: September 7, 2023      By: /s/ *Yaman Salahi*
                                 One of Plaintiff's Attorneys

19
                                 Rafey S. Balabanian (SBN 315962)
20                                rbalabanian@edelson.com
                                 Yaman Salahi (SBN 288752)
21                                ysalahi@edelson.com
                                 Edelson PC
22                                150 California Street, 18th Floor
                                 San Francisco, California 94111
23                                Tel: 415.212.9300
                                 Fax: 415.373.9435
24

25                                Jay Edelson (admitted *pro hac vice*)
                                 jedelson@edelson.com
26                                J. Eli Wade-Scott (admitted *pro hac vice*)
                                 ewadescott@edelson.com
27                                Edelson PC
                                 350 N LaSalle Street, 14th Floor
28                                Tel: 312.589.6370

Fax: 312.589.6378

*Counsel for Plaintiff and the Settlement Class*

1  I.    **INTRODUCTION**

2         Plaintiff and Class Counsel previously presented the Court with a settlement in this

3  groundbreaking case, which the Court preliminarily approved: the Settlement returns a $10 million

4  fund—nearly 50% of all losses—to the Settlement Class, provides that relief to virtually every

5  Settlement Class member without the need for a claim form, and secures forward-looking

6  injunctive relief that ends the entire harm at issue in the case and saves the Class $31 million over

7  the next four years. The Administrator has now disseminated notice to the Settlement Class. And

8  the Settlement has been met with overwhelming support.

9         Only a small percentage of the Settlement Class has opted out, and three documents that

10  could loosely be considered objections were filed with the Court, only one of which was from an

11  actual Class Member. The Class Member's objection takes no issue with the substance of the deal,

12  which is further evidence of the Settlement's fairness—the second submission is not from a Class

13  Member, and the third is from an organization seeking to file an amicus brief.  Plaintiff previously

14  suggested to the Court that Class Members here will value Robux just as they would real dollars,

15  and their actions have confirmed that to be the case: only about 3% of those eligible to elect to

16  receive cash in lieu of Robux have done so. And only about 0.01% of the Class has opted out.

17         The favorable reaction of the Class should come as no surprise: this Settlement

18  accomplishes what Roblox users want—the return of their Robux at an exceptional rate.[1] Indeed,

19  one TikTok influencer in the Settlement Class created a video about the Settlement with over 2.2

20  million views describing the Settlement and emphasizing, "I'm choosing to do nothing [be]cause I

21  want just my Robux back."[2] The comments underneath that video show dozens of users eagerly

---

22         [1] A proposed amicus brief, filed by Truth in Advertising ("TINA"), willfully ignores this
23  reality in arguing that tiny monetary sums should be returned to the Settlement Class and that the
    Court should impose injunctive relief that is all but impossible to order. Class Counsel requested
24  that the Court reject TINA's brief as improper commentary by an inexpert, roving "amicus," but
    the Court will find all of TINA's critiques addressed here.
25         [2] *See* ecjcv, *! IMPORTANT! Roblox message telling about class action settlement!*, TikTok
26  (June 15, 2023), https://www.tiktok.com/@ecjcv/video/7245078775241723179.  The video has
    also received over 279,000 "likes," 39,000 "bookmarks," and nearly 6,000 comments. Another
27  lawyer-influencer on TikTok also posted a video describing the Settlement with over 1.2 million
    views, 206,000 "likes," 7,600 comments, and 35,000 "bookmarks." See thelawyerangela, *Get ur*
28  *#roblox #robloxedit #robux #classaction #lawsuit #money #classactionsettlement*, TikTok (May
    12, 2023), https://www.tiktok.com/@thelawyerangela/video/7232396806381047086.

anticipating receipt of Robux under the Settlement, demonstrating that Class Members see real value in that relief.[3] The Court should have no trouble approving this Settlement as fair, reasonable, and adequate.

## II.    FACTUAL BACKGROUND

As the Court well knows, this case concerns an alleged scheme by Roblox to enrich itself at the expense of its user base, which is comprised almost entirely of minors. Roblox owns and operates a metaverse in which children interact through avatars. Users can outfit their avatars with items designed and uploaded by other users. These items must be purchased with Robux, the metaverse's in-game currency, which are acquired with US Dollars. To juice the demand for Robux, and thereby increase Roblox's own revenues, Plaintiff alleges that Roblox would arbitrarily delete, or "moderate," content on the platform, without providing the affected user with a refund. Thus, an affected user would need to purchase replacement items, perhaps after purchasing additional Robux. The case attacks this alleged scheme principally under California statutory and common-law fraud theories.

The Settlement reached by the parties here does two things to alleviate the injuries caused by this alleged scheme. First, users whose items were deleted will be entitled to a refund of the Robux they spent on these items, relief they can receive automatically, without having to submit a claim. If a user had enough items deleted that he or she would be entitled to at least $10 worth of Robux under the Settlement, that user would have the option of receiving their Settlement benefits in cash in lieu of Robux. Second, the Settlement locks into place a refund program that Roblox instituted in response to the lawsuit which has already returned nearly $5 million to the Settlement Class, and which will save the Settlement Class an additional $30 million over the next four years.

Since the Court preliminarily approved the Settlement, the parties have effectuated the approved Notice Plan, which has reached over 90% of the Class through e-mail and over 99% of

---

[3] *See* Comments to TikTok Video by ecjcy, *supra* (e.g., "ok so where is my robux," "still haven't gotten my robux back," "where's my robux," "nah where's my robux then," "Finally boutta get robux for all the shirts that got deleted & i got no refunds for," "I have so many deleted items that I'm still waiting for robux back on," "imma get so much robux," "Omg I got the message three days ago and I haven't gotten robux," "Where my robux at?," "YES YES I CAN FINALLY GET ROBUX BACK," etc.).

1   the Class through Roblox's In-App Inbox. Additionally, the Settlement received free media

2   coverage from two TikTok accounts with large followings. Class Members were given the

3   opportunity to object or opt out, and eligible Class Members were given the option to elect to

4   receive their Settlement Benefits in cash. But the overwhelming majority of Settlement Class

5   Members stood pat, satisfied with the Robux on offer in the Settlement. Only one Class Member

6   objected. A tiny portion of the Class opted out, and a handful of eligible Class Members elected

7   Cash Relief. Moreover, CAFA Notice was provided to the appropriate state and federal officials,

8   and none of them voiced concerns with the Settlement.

9         This positive reaction to the Settlement confirms what the Court already has preliminarily

10  found: the Settlement is fair, reasonable, and adequate, and worthy of judicial approval. For the

11  reasons set forth below, the Court should affirm its finding that the Class can be certified for

12  settlement purposes, should confirm the appointment of Edelson PC as Class Counsel and Levi &

13  Korsinsky, LLP as Liaison Counsel, and should approve the Settlement as fair, reasonable, and

14  adequate.

15  **III.    SUMMARY OF SETTLEMENT TERMS**

16        The principal terms of the Settlement before the Court are as follows:

17        **A.    Settlement Class**

18        All individuals in the United States having a Roblox account prior to Preliminary Approval

19  of this Settlement from which content on the Roblox platform was moderated and removed by

20  Roblox. Excluded from the Settlement Class are (a) any Judge or Magistrate presiding over this

21  action and members of their families; (b) Defendant, Defendant's subsidiaries, parents, successors,

22  predecessors, and any entity in which Defendant or its parents have a controlling interest and its

23  current or former employees, officers and directors; (c) persons who properly execute and file a

24  timely request for exclusion from the Class; (d) persons whose claims in this matter have been

25  finally adjudicated on the merits or otherwise released; (e) the legal representatives, successors,

26  and assigns of any such excluded persons; and (f) individuals who own one of 311 accounts that

27  Roblox has determined spent over 80,000 Robux (equating to over $1,000) on any of these three

28  categories of virtual items: (1) the user purchased the same virtual item from the same seller

multiple times, (2) the user purchased a virtual item after that item had already been moderated, or (3) the user created a virtual item and purchased it themselves. *See* Dkt. 54-1 ¶ 1.29 ("Settlement").

As previously noted, the proposed Settlement Class contains a specific exclusion for a limited number of accounts who lost content for which they spent more than 80,000 Robux, worth over $1,000 (the "laundering exclusions"). Roblox insisted upon these laundering exclusions because, Plaintiff understands from Roblox, these accounts are engaged in suspicious behavior (articulated in the criteria for exclusion) differentiating them from ordinary consumers. They appear to be using the Roblox platform to send money to one another by purchasing fake virtual items, a highly inefficient and costly means of transferring money which suggests they may be engaged in money laundering or other improper behavior. In any case, proposed Class Counsel agreed to the laundering exclusions solely because these individuals did not appear to be engaging in bona fide purchases, and so have not been defrauded and may not have a legitimate claim. And because they are not members of the proposed Settlement Class, their claims have not been released and they retain an individual right to pursue separate litigation.

**B.   Settlement Fund**

The Settlement requires Roblox to establish a $10 million Settlement Fund, out of which class members will be compensated, and, subject to Court approval, attorneys' fees and costs, service awards, and administrative costs will be paid. Settlement ¶ 1.31. The funding will occur in two stages: Roblox made an initial $3 million deposit once the Settlement earned preliminary approval from the Court, and will fund the balance following final approval. *Id.* ¶ 2.1.

**C.   Allocation**

Class Members' pro rata share from the fund will be made in proportion to the amount of Robux each class member has spent on "moderated" items—in other words, the amount of Robux each class member lost due to the alleged misconduct. Settlement ¶ 3.1. Relief will be granted either in dollars or Robux. *Id.* ¶ 3.2. Robux Relief will be automatic: Settlement Class Members will receive their share of the Settlement Fund in Robux without having to take any action. *Id.* ¶ 3.4.1. This relief will be calculated at a rate of 1 Robux = $0.01, *id.* ¶ 3.4.2, a rate that is more

favorable than nearly any charged by Roblox on the open market, except for users who wish to spend $100 at a time.[4] Anyone whose pro rata share of the Settlement Fund is $10 or greater and who wished to receive their share of the Settlement Fund in cash rather than Robux was able to do so by submitting a simple claim form. *Id.* ¶ 3.3.1. A visualization of the online Cash Claim Form prepared by the settlement administrator is attached as Exhibit A to the Settlement Agreement. *See* Dkt. 54-1.

### D.    Prospective Relief

As a result of this litigation, Roblox implemented an automatic refund program for users who had purchased items that were later deleted. *See* Declaration of Matt Brown (Dkt. 25-1) ¶ 12. Under this program, whenever a Roblox user's purchased virtual content is moderated/deleted from the platform, the user will automatically receive a credit of the Robux they spent to obtain that item, unless the user themselves engaged in a Terms of Service violation. *Id.* ¶¶ 14-15. As part of the Settlement, Roblox agrees to continue operating this refund program for at least four years. Settlement ¶ 3.5.

The refund program is, alone, incredibly valuable to the Settlement Class. It has already returned over 403 million Robux to class members. *See* May 10, 2023 Supplemental Declaration of Yaman Salahi (Dkt. 66) ("Second Salahi Decl.") ¶ 5. Class Counsel estimates that approximately 3.1 billion Robux will be refunded pursuant to this program while it is in place for the next four years, which equates to about $31.7 million. *Id.* ¶ 10. Class Counsel's estimate on the value is more conservative than Roblox's. *Id.* ¶ 11.

### E.    Payment of Settlement Notice and Administrative Costs

Payment of notice and administrative costs will come from the Settlement Fund. The Settlement Administrator, Simpluris, Inc., estimates that notice and administrative costs will be

---

[4] Roblox offers Robux to its users at volume discounts. *See* https://www.roblox.com/upgrades/robux. Users can spend $4.99 for 400 Robux (1 R = $0.012475), $9.99 for 800 Robux (1 R = $0.0124875), $19.99 for 1,700 Robux (1 R = $0.0117588), $49.99 for 4,500 (1 R = $0.011108). *Id.* Only users who spend $99.99 for 10,000 Robux obtain a slightly more favorable rate (1 R = $0.009999). *Id.* The vast majority of users make purchases in small amounts, however.

approximately $350,000. *See* March 28, 2023 Declaration of Yaman Salahi (Dkt. 54) ("First Salahi Decl."), Ex. 2.

### F.  Payment of Attorney's Fees, Costs, and Service Award

Class Counsel has moved for an award of fees and costs equal to 25% of the value of the Settlement Fund and just 5.4% of the value of the Settlement to the Class overall. *See* Dkt. 75. Defendant retained the right to challenge any fee request submitted by Class Counsel, *see* Settlement ¶ 9.1, but elected not to do so. Should the Court award less than what Class Counsel request, the balance will remain in the Settlement Fund for distribution to Class Members. *Id.* The Named Plaintiff likewise petitioned the Court for a Service Award in the amount of $5,000. *See* Dkt. 75. Should the Court approve a lower award, the balance will remain in the Settlement Fund for distribution to Settlement Class Members.

### G.  Release of Liability

In exchange for the relief described above, Roblox will obtain a release of all claims arising from or related to the deletion, removal, or moderation of virtual items purchased on the Roblox platform. Settlement ¶ 1.23. This release is intended to operate no more broadly than the doctrine of claim preclusion would were this an individual suit related to allegedly improper deletion of purchased items in the Roblox metaverse. *See* Northern District of California Procedural Guidance for Class Action Settlements § 1.B.

## IV.  ARGUMENT

### A.  The Court should confirm certification of the proposed Settlement Class.

The Court preliminarily certified the above-defined Settlement Class for Settlement purposes. Plaintiff explained in the Motion for Preliminary Approval why this Class meets the requirements of Rule 23. The notice process has not revealed any information that would disturb that analysis. None of the objections raised any concerns about potential variations in the strength of the claims of Settlement Class Members, or raised concerns about the Class Representative's fitness to represent the Class. It is clear that classwide resolution is appropriate for this case, premised as it is on common conduct that gives rise to several common questions of law and fact, as previously explained. In brief:

*Numerosity*: The preliminarily certified Settlement Class consists of approximately 8 million individuals, *see* First Salahi Decl. ¶ 12, far too many to be joined in an individual action.

*Commonality and Predominance*: The Class's claims present numerous questions that can be resolved classwide. Much of the dispute here turns on Roblox's common conduct, both the common representations it made to the Class in the course of selling Robux and its conduct within the Roblox metaverse. Plaintiff, for instance, contends that Roblox creates the appearance to all users that it vets user-uploaded content before making it available for sale. And, by definition, all Class Members have had content they purchased later deleted. This common course of conduct gives rise to the Class's statutory and common-law fraud claims. Moreover, Roblox contends that there has been no misrepresentation because it disclosed its ability to delete content through its Terms of Use, which were disseminated to all users. Thus, questions about whether a material misrepresentation was made, an issue central to each of the fraud theories, will turn on common evidence that will generate classwide answers. *See In re First All. Mortg. Co.*, 471 F.3d 977, 990 (9th Cir. 2006) (California "has followed an approach that favors class treatment of fraud claims stemming from a common course of conduct.") (quotations omitted); *In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, 609 F. Supp. 3d 942, 988 (N.D. Cal. 2022) (finding commonality and predominance to be satisfied under UCL and CLRA because "for purposes of class certification plaintiffs have shown how through common, classwide proof they can demonstrate the widespread reach of JLI's very successful [and allegedly deceptive] campaigns"). And Plaintiff's conversion claim likewise presents numerous common questions, such as whether digital items on the Roblox platform can be converted, and whether the act of deleting those items dispossesses Class Members of their property. Thus, commonality and predominance are met.

*Typicality*: Plaintiff Doe is plainly typical of the Settlement Class. She purchased multiple, unobjectionable items using Robux bought with funds she owned and controlled. She was not aware that these items might later be deleted, and in fact believed that these items would remain available to her in perpetuity. The claims she presses on behalf of the proposed Settlement Class concern precisely this conduct, under legal theories that apply classwide, and she is seeking the same relief as the rest of the class. *See Juarez v. Soc. Fin., Inc.*, No. 20-CV-03386-HSG, 2022 WL

1    17722382, at *4 (N.D. Cal. Dec. 15, 2022) (finding typicality satisfied because "Plaintiffs' claims

2    are both factually and legally similar to those of the putative class").

3        *Adequacy*: Plaintiff Doe is also plainly adequate. Her claims turn on the same facts and

4    legal theories as those of the Class, and she suffers from no conflicts of interest. Moreover, as

5    explained in the motion for a service award, Plaintiff Doe has been active in assisting Class

6    Counsel prosecute the case, demonstrating her vigorous representation of the absent Class. Dkt.

7    78, ¶ 3.

8        Class Counsel also are adequate. Edelson PC has extensive experience litigating consumer

9    class actions of similar size and complexity. *See* First Salahi Decl. ¶ 15, Ex. 3 (Edelson firm

10   resume). Edelson has repeatedly been recognized for its work litigating consumer class actions,

11   and in investigating and prosecuting this action have brought this experience and expertise to bear.

12   *Id.*

13       *Superiority*: Finally, a class action is clearly the superior means to resolve this dispute. The

14   average Class Member lost $2.60 dollars, *see* First Salahi Decl. ¶¶ 12-13, as a result of Roblox's

15   conduct. Losses of this magnitude are plainly insufficient to incentivize individual litigation. The

16   only practical way for Class Members to recover is through a class action. Moreover, individual

17   litigation would needlessly clog the courts with a multitude of identical disputes, as opposed to the

18   efficiencies generated by combining these identical claims in a single action. *Cottle v. Plaid Inc.*,

19   340 F.R.D. 356, 372 (N.D. Cal. 2021) (finding superiority established where "the range of issues is

20   limited and individual cases addressing these issues would likely address the same wrongful

21   conduct and use the same supporting evidence."). Superiority is therefore satisfied.

22       The Court should therefore affirm its preliminary conclusion that the Settlement Class can

23   be certified for settlement purposes.

24       **B.    Notice to the Class comported with Due Process.**

25       The parties diligently undertook to provide Notice to the Settlement Class in line with the

26   program outlined in the Settlement, which was highly successful. After preliminary approval,

27   Roblox provided the Court-approved Settlement Administrator—Simpluris—with three datasets

28   containing the Roblox account username, User ID, email addresses, and the number of unrefunded

1    Robux spent on moderated items for each Settlement Class Member. *See* Declaration of Jacob

2    Kamenir ¶ 5. These datasets contained 16,208,903 Roblox accounts belonging to 7,459,230

3    individual Class Members with at least one email address (many Class Members, including Jane

4    Doe, have multiple Roblox accounts). *Id*. The Settlement Administrator sent notice via email to

5    every email address associated with the Roblox account of a Settlement Class Member,

6    successfully delivering 6,724,996 of those emails (or 90.5%). *Id*. ¶¶ 9-11. The notice for those

7    Class Members eligible to elect a cash payment included a Unique Claim ID and a link to the

8    Claim Form on the Settlement Website. *Id*. A reminder email was sent to this same list of eligible

9    class members 30 days before the claim and exclusion deadlines. *Id*. ¶ 12. 483 eligible Class

10   Members submitted valid requests to receive cash instead of Robux. *Id.* ¶ 15.

11        In addition, Roblox provided notice through the Roblox platform's "My Inbox" feature to

12   all Class Member Accounts, except 144 accounts that no longer exist because the account holder

13   had exercised their "right to be forgotten" (that is, to have Roblox delete their account records and

14   associated data). *See* Declaration of Roblox Corp. ¶¶ 1-3. Combined with the in-app notice

15   disseminated by Roblox, it appears that over 99% of the Settlement Class received direct notice of

16   the Settlement.

17        As the Court already found, the Notice documents provided to Class Members clearly and

18   plainly described their rights under the Settlement, and informed them of what actions they might

19   take. *See* Dkt. 67 ¶ 9. The Notice also directed Class Members to a dedicated Settlement Website,

20   containing various documents from the case (including the fee petition), the ability to file a Claim

21   Form, a toll-free number which Class Members could call Simpluris or Class Counsel with

22   questions about the Settlement, and an email address where Class Members could send questions

23   about the Settlement. Kamenir Decl. ¶¶ 6-8. The Settlement Administrator reports that the website

24   received 291,715 unique visitors with 577,171 page views, that 887 calls were fielded regarding

25   the Settlement, and that 208 inquiries about the Settlement were sent to the email address. *Id.*

26        The Court should find that the Notice Program, as implemented, provided Settlement Class

27   Members with the notice required by Due Process.

28

**C.**    **The Settlement merits final approval under Fed. R. Civ. P. 23(e).**

Rule 23(e)(2) requires the Court to find that the settlement is "fair, reasonable, and adequate" after considering whether: (A) the class representative and class counsel have adequately represented the class; (B) the settlement was negotiated at arm's length; (C) the relief provided for the class is adequate; and (D) the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). These Rule-based factors are sometimes considered through the lens of the Ninth Circuit's 8-factor approval test, which predates the current version of the Rule and substantially overlaps with it. *See Churchill Vill. L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). The eight factors are: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Id.* These factors are discussed below within the framework established by Rule 23(e). Further, because of the pre-certification posture of this settlement, the Court must consider the factors identified by the Ninth Circuit in *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2011). Because the *Bluetooth* factors are relevant to one of the considerations mandated by Rule 23(e), the two tests are discussed together below.[5] As Plaintiff explained in her motion for preliminary approval, this Settlement easily clears the heightened bar set for pre-certification settlements. None of the objections demonstrates otherwise, and no information has been turned up during the Claims Period that would even hint that the Settlement is unfair or inadequate.

---

[5] The Court has also raised the possibility that the Settlement is a coupon settlement under 28 U.S.C. § 1712(e), which would require "heightened scrutiny." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015). The required Rule 23(e) and *Bluetooth* analyses demonstrate that the Settlement passes muster even under this elevated standard, but, as explained previously, at Docket Entry 75, the Court should find that § 1712 does not apply to this Settlement.

1        **1.    Doe and Class Counsel have adequately represented the Class.**

2        The first Rule 23(e) factor concerns adequate representation. The focus of this analysis is

3    "on the actual performance of counsel acting on behalf of the class" throughout the litigation and

4    in settlement negotiations. Fed. R. Civ. P. 23(e) Advisory Committee's Note to 2018 Amendment;

5    *see Gumm v. Ford*, No. 5:15-cv-41-MTT, 2019 WL 479506, at *3 (M.D. Ga. Jan. 17, 2019). This

6    factor overlaps significantly with the adequacy requirement of Rule 23(a). *See O'Connor v. Uber*

7    *Techs., Inc.*, No. 13-CV-03826-EMC, 2019 WL 1437101, at *6 (N.D. Cal. Mar. 29, 2019). In

8    considering this factor, courts should examine whether plaintiff and class counsel had adequate

9    information to negotiate a class-wide settlement. Fed. R. Civ. P. 23(e) Advisory Committee's Note

10    to 2018 Amendment; *see also Churchill*, 361 F.3d at 575 (requiring courts to consider the

11    discovery completed and the stage of the case at settlement)*.* Ultimately, this factor is generally

12    satisfied where the named plaintiff and class counsel "have prosecuted the case with diligence and

13    success." *In re Snap Inc. Secs. Litig.*, No. 2:17-CV-03679-SVW, 2021 WL 667590, at *1 (C.D.

14    Cal. Feb. 18, 2021).

15        Neither of the objections, nor the proposed TINA amicus brief, contends that Class

16    Counsel lacked the information necessary to craft a reasonable settlement, or inadequately

17    represented the Settlement Class. And for good reason: Roblox's conduct at issue in the case was

18    publicly disclosed, and the scope and damages were confirmed in discovery. Class Counsel was

19    able to obtain discovery as to the scope of Roblox's content moderation, including how many

20    accounts were affected, and the in-game cost of moderated items. For instance, Roblox disclosed

21    that members of the proposed Settlement Class, in aggregate, lost 1,719,480,373 Robux in

22    connection with items that were subsequently moderated/deleted by Roblox, and which have not

23    previously been refunded. First Salahi Decl. ¶ 13; *see also* Settlement ¶ 7.1. The basic legal battle

24    lines were drawn early on, and it became clear that the principal claim here would arise under the

25    UCL, a California consumer-protection law with which Class Counsel is very familiar. Thus, from

26    an early stage, and even without extensive discovery, Class Counsel could make an informed

27    estimate of the likelihood of recovery, and the cost of further litigation. *See Linney v. Cellular*

28    *Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) ("In the context of class action settlements,

formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement.") (quotations omitted). Class Counsel came to the bargaining table prepared to strike a deal in the Settlement Class's best interests, and, as explained more fully below, have done so.

**2.**     **The Settlement was negotiated at arm's length, and lacks any of the hallmarks of collusion identified by the Ninth Circuit in *Bluetooth*.**

Next, the Settlement was negotiated at arm's length. *See* Fed. R. Civ. P. 23(e)(2)(B). "This inquiry aims to root out settlements that may benefit the plaintiffs' lawyers at the class's expense[]." 6 Newberg & Rubenstein on Class Actions § 13:50. The concern, which is also embodied in this Circuit's *Bluetooth* factors, is that "the defendant will dangle such a healthy fee in front of the plaintiffs' lawyer that they will settle the class's claims at a discount." *See id.*; *see also Bluetooth*, 654 F.3d at 946 ("Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) . . . .").

Here, again, none of the objections contend that the Settlement was not negotiated at arm's length. And the record provides substantial support for finding that it was. This settlement was struck after a full day (and then some) of mediation with an experienced mediator, Gregory Lindstrom of Phillips ADR, who helped the parties craft this Settlement. First Salahi Decl. ¶¶ 6-7. And negotiations had been hard fought up to that point as well. The parties had been discussing potential settlement structures for weeks before working with Mr. Lindstrom to finally reach an agreement on the principal terms of a class-action settlement. *Id.* ¶¶ 4-5. And even after the parties' all-day mediation, it took several additional months to hammer out the finer points of the Settlement. *Id.* ¶ 8.

These lengthy negotiations demonstrate that the proposed Settlement is the product of arm's-length negotiations. *See Cmty. Res. for Indep. Living v. Mobility Works of Cal., LLC*, 533 F. Supp. 3d 881, 889 (N.D. Cal. 2020) ("serious, informed, non-collusive negotiations" taking place over an "extended" period weighed in favor of settlement approval); *Vianu v. AT&T Mobility*

*LLC*, No. 19-CV-03602-LB, 2022 WL 16823044, at *7 (N.D. Cal. Nov. 8, 2022) (finding that negotiations aided by an experienced mediator weighed in favor of settlement approval).

Moreover, the Settlement bears none of the "subtle signs of implicit collusion" that the Ninth Circuit has cautioned district courts to be on alert for. *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049-50 (9th Cir. 2019). These factors, commonly called the *Bluetooth* factors, are: (1) "when counsel receive a disproportionate distribution of the settlement;" (2) "when the parties negotiate a 'clear sailing' arrangement" (i.e., an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed funds to the defendant. *Bluetooth*, 654 F.3d at 947.[6]

First, Class Counsel have asked the Court to approve a fee request that amounts to 25% of the value of the fund. Dkt. 75. This 25% figure is the "benchmark" fee award in this Circuit. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002). The fee award, and the objections thereto, are discussed in greater detail below, but it suffices for present purposes to observe that similar authorized awards have been found not to be indicative of collusion. *See, e.g.*, *Luz Bautista-Perez v. Juul Labs, Inc.*, No. 20-CV-01613-HSG, 2022 WL 307942, at *6 (N.D. Cal. Feb. 2, 2022) ("And while the Settlement Agreement authorizes Plaintiffs' counsel to request up to $750,000 in attorneys' fees, which is about 42% of the gross settlement fund, it does not necessarily contemplate a disproportionate cash allocation between counsel and the class . . . ."); *Cottle*, 340 F.R.D. at 377-78 (proposed 25% award was "presumptively reasonable" and not a disproportionate fee award).

Second, there is no clear sailing agreement here. Although Roblox ultimately declined to challenge Class Counsel's fee request, they retained the right to do so in the Settlement. *See* Settlement ¶ 9.1 ("Defendant may challenge the amount requested.").[7]

---

[6] Later cases have also indicated that "large incentive payments seemingly untethered from service to the class" also may be evidence of collusion. *Roes, 1-2*, 944 F.3d at 1049; *see Luz Bautista-Perez*, 2022 WL 307942, at *6-*7. The size of the service award contemplated by the Settlement is discussed in conjunction with another of the Rule 23(e) factors, concerning the equitable distribution of settlement proceeds. *See infra* Section IV.C.4.

[7] To be clear, there were absolutely no discussions concerning Defendant's opposition to the fee request prior to, during, or after the mediation, and Defendant's lack of opposition was not an
(continued...)

Third, there is no reverter or kicker clause here. Settlement Class Members will receive a refund of their Robux automatically, without the need to submit a claim form. Settlement ¶ 3.4.1. And Settlement Class Members whose pro rata share is at least $10 and who opted to receive their recovery in cash could easily do so by submitting a Cash Claim Form, and electing either an electronic distribution of funds or a paper check. *Id.* ¶ 3.3.1. If a check goes uncashed, the relevant Class Member will still receive Robux Relief. *Id.* ¶ 3.3.9. A *cy pres* recovery will only be available if, for some reason, a class member cannot be issued their Robux Relief. *Id.* Moreover, should the Court award less in fees, costs, or service awards than what Plaintiff and proposed Class Counsel seek, the difference will remain in the Settlement Fund for distribution to Class Members. Settlement ¶¶ 9.1-9.2.

Thus, the terms of the Settlement contain none of the subtle signs of collusion that the Ninth Circuit has cautioned against, confirming that the Settlement was negotiated at arm's length.

### 3.  The Settlement secures outstanding relief for the Class.

The next Rule 23(e) factor directs the Court to consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3) . . . ." Similarly, the *Churchill* factors include the amount offered in settlement, the strength of the plaintiff's case, and the risks and expense of further litigation, including the risk of maintaining class status through judgment. *See Churchill*, 361 F.3d at 575. The Court should find that the relief secured by the Settlement is more than adequate under the Rule and the Ninth Circuit's gloss.[8]

First, the basics: Informal discovery confirmed that the Class's losses totaled about 1.7 billion Robux. For purposes of negotiation, Class Counsel valued these losses at an exchange rate

---

explicit or implicit understanding of the Parties. *See* September 7, 2023 Declaration of Yaman Salahi ("Fourth Salahi Decl.") ¶ 7.

[8] There are no agreements required to be disclosed under Rule 23(e)(3).

1   of 1 Robux = $0.0125, which is slightly higher than the exchange rate for the vast majority of

2   Roblox users who purchase Robux in the smallest possible quantity ($4.99 for 400 Robux, *see*

3   note 4, *supra*). Thus, Class Counsel likely over-estimated the class's monetary damages at just

4   under $21.5 million. The cash value of the Settlement—$10 million —equates to about 46.5% of

5   Class Member losses. This is an outstanding result.

6        Moreover, the Settlement locks into place valuable conduct relief. Under the prospective

7   relief agreed to by Roblox, moving forward, anytime a Roblox user's purchased virtual content is

8   deleted or moderated for reasons other than that user's own Terms of Service violations, Roblox

9   will automatically credit that user's account with the Robux spent on the item. *See* Brown Decl.

10  (Dkt. 25-1) ¶¶ 12-13. If the Settlement Class's own experience is any indication, this refund

11  program stands to prevent losses of at least $25 million USD. Second Salahi Decl. ¶ 5 (disclosing

12  what Class Members actually lost due to alleged misconduct). Class Counsel's best projection of

13  the value of this prospective relief over the next four years is over $31 million. *Id.* ¶¶ 6-10.

14  Although Roblox instituted this program voluntarily, Plaintiff and Class Counsel deserve credit for

15  forcing Roblox's hand, as the program was instituted in response to this lawsuit, and for ensuring

16  that the program remains in place for four years. *See* Dkt. 19-1 ¶ 12 (acknowledging that the

17  program was instituted after the filing of this lawsuit).

18       The favorable reaction of Class Members and State Attorneys General also demonstrates

19  the fairness and adequacy of the relief provided by the Settlement. *See Churchill*, 361 F.3d at 575.

20  Notice of the Settlement has been provided to the appropriate state and federal officials under

21  CAFA, and none of them raised any issues with the sufficiency of the relief secured. *See In re*

22  *LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) (observing that lack of action by

23  state and federal officials who received notice of a settlement weighed in favor of approval). And

24  although there was a Settlement Class of approximately 8 million people here, only 934

25  individuals executed a request to be excluded from the Settlement,[9] and only 1 class member

26  submitted an objection. In other words, despite a comprehensive notice campaign and free

27

28       [9] This number of opt outs is not unusual for a case of this size. The Roblox community is
    active and communicative with one another, which further demonstrates the appropriateness of a
    Settlement where the vast, vast majority of Class Members have decided to remain.

---

publicity of the Settlement via certain TikTok accounts with substantial followings, around 0.01% of the Class opted out, and there is just a lone objection concerning the relief provided by the Settlement. This is powerful evidence that the Class considers the Settlement to be in its best interests. *See, e.g.*, *In re MacBook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2023 WL 3688452, at *9 (N.D. Cal. May 25, 2023) (in case with 1,733 opt outs and 6 objections, holding that "[t]he low number of objections and opt outs relative to the size of the class weighs in favor of approving the Settlement."). Additionally, Class Counsel, who have extensive experience litigating consumer class actions of similar size and complexity, firmly believe that the Settlement is fair, reasonable, and adequate. *See Churchill*, 361 F.3d at 575.

The pro se objections to the Settlement misunderstand the reach of the case or the nature of settlement, generally, and do not warrant denying final approval. One of the objectors, Vincent Panetta, is not even a Class Member, as the Roblox account name he identified does not appear in the class data. *See* Kamenir Decl. ¶ 13; *see In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 1008 (N.D. Cal. 2015) (only class members have standing to object, and burden is on objector to demonstrate membership). In any case, Panetta complains not that the Settlement secures inadequate relief for the conduct alleged in the operative Complaint, but that the lawsuit should be expanded to redress other practices of Roblox's that Panetta deems unsavory. *See* Dkt. 70. But those complaints are not what this case was about, and Panetta or anyone else is free to pursue them as they wish. No authority requires a plaintiff or class counsel to challenge *all* of a company's wrongful practices whenever a lawsuit is filed.

The other objector, Jacob Emerson (who holds themself out as a lawyer in the Roblox metaverse),[10] contends that Class Members should be refunded all of their Robux, and receive additional compensation, as well. *See* Dkt. 69. But a settlement is a compromise, and must reflect the fact that, as explained below, Roblox had strong arguments on the merits that could have precluded any relief. *See Officers for Just. v. Civil Serv. Comm'n of City and Cnty. of S.F.*, 688

---

[10] Emerson's specific business model seems to be to pursue claims on behalf of Roblox users in the metaverse in exchange for Robux. Based on the form and substance of their papers, it does not seem they are an actual lawyer. A search of the State Bar of Texas' attorney database did not return results for the name "Jacob Emerson."

F.2d 615, 624 (9th Cir. 1982) (writing that "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes" as "in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation") (citations and quotations omitted). No court has held that a settlement can only be approved if it obtains 100% redress. Moreover, there was never any realistic possibility that the Settlement Class would get an award of damages on top of what they allegedly lost in Robux, as Emerson wants. So a settlement, which must acknowledge Roblox's potentially meritorious arguments, and take into account the time and money that would be required to litigate this case, is the best way forward, particularly where it recovers 46.5% of the Settlement Class's losses.[11]

Proposed amicus TINA, to the extent their arguments are considered (and they should not be, for reasons previously argued, *see* Dkt. 81), contends that the conduct relief is valueless because Roblox has not yet changed language in its Terms of Service, the Settlement simply maintains the status quo, and prospective relief should be in place for more than four years. Dkt. 79-2, at 3-9. These points are unreasonable and, regrettably, seem to be boilerplate in TINA's practice of filing roving "amicus" objections to class settlements.

As to the first point, TINA argues that any injunctive relief short of its desired injunctive relief—that Roblox review the millions of third-party created items in the Avatar Shop for compliance with its Terms of Service *before* they are made available for sale—is worthless. While TINA, which has no Class Members as clients and no fiduciary duty to members of the Class, may be free to opine on what its version of an "ideal" world would look like without having to worry about practical realities, neither Class Counsel nor the Settlement Class have that luxury. Class Counsel have to anchor settlement negotiations in the real world, where questions like "how could millions of virtual goods created by third parties be effectively pre-screened in any reliable or cost-effective way by Roblox without simultaneously undermining the experience of Roblox users on the platform?" and "is this relief that could be obtained through litigation, in light of Section 230 of the Telecommunications Decency Act?" matter. Despite Class Counsel's best efforts to

---

[11] Emerson also objected to the fee request. That aspect of the objection is discussed *infra*.

1  explain these issues to TINA, they have fallen on deaf ears. *See* Declaration of J. Eli Wade-Scott

2  (Dkt. 82).

3          The volume of content created does not feasibly permit Roblox to pre-screen user-

4  generated items on the platform before they are made available for sale, and TINA presents no

5  evidence to suggest its demand is anything other than pie-in-the-sky wishful thinking. There are

6  more than ten million items on the Roblox shop, and the availability of user-created content is one

7  of the central parts of what makes the Roblox metaverse appealing. There is no way to re-engineer

8  Roblox in TINA's desired image without turning that particular metaverse upside down—and the

9  reaction of the Settlement Class here shows that Settlement Class members don't want that. Nor

10  do they need it: the prospective relief provided by the Settlement prevents any economic harm

11  resulting from the practices in question by automatically crediting Robux spent on moderated

12  items.

13          TINA also ignores an obvious feature of the prospective relief provided for by the

14  Settlement. It provides full Robux refunds to Roblox users when they lose access to purchased

15  content in the future, including the portion of each transaction that otherwise would have been

16  retained by Roblox as a commission. Enforcement of the policy thus costs Roblox. This means

17  that the prospective relief provided by the Settlement creates a strong incentive for Roblox to

18  ensure it makes moderation decisions with more precision, before it suffers losses by refunding

19  users for lost access to purchased content.

20          As for TINA's complaint that the injunctive relief merely locks in the status quo, it is

21  important to remember that this lawsuit is responsible for Roblox's refund program. Criticizing

22  the settlement for failing to further adjust a program that rectifies the main problem in the case just

23  misses the mark. TINA's citation to *Koby v. ARS National Services, Inc.*, 846 F.3d 1071 (9th Cir.

24  2017), does not hold otherwise. The settlement at issue there also memorialized changes made by

25  the defendant in response to the litigation. *Id.* at 1075. But the court's reasons for deeming this

26  injunction worthless do not apply here. First, the court noted, most of the class members would not

27  deal with the defendant again; thus, forward-looking conduct relief conferred no benefit. *Id.* at

28  1080. Here, by contrast, class members continue to inhabit the Roblox metaverse, and want to do

1   so, so forward-looking changes are a continuing benefit. Moreover, the injunction there contained

2   "an escape clause" that permitted the defendant to seek to dissolve the injunction in case of a

3   change in law. *Id.* There is no such escape hatch present here. Instead, the injunction here

4   promises to save Settlement Class Members millions of dollars over the next four years, a valuable

5   benefit indeed.

6       TINA also complains about the temporal scope of the injunction, contending that it should

7   be permanent. This permanence is needed, TINA says, to ensure "parity in any release between

8   Roblox and the class in this case." Dkt. 79-2 at 9. Class Counsel is unsure exactly what this means

9   or why TINA appears to argue that all injunctive relief should always be permanent. The

10  Settlement does not release future, hypothetical claims that have not yet arisen; if Roblox resumes

11  the wrongful conduct that precipitated this lawsuit in four years, any class member or other

12  Roblox user who experiences harm or an imminent threat of harm can take Roblox back to court

13  seeking injunctive relief. Moreover, reaction from actual class members, as opposed to third-party

14  groups with no concrete stake in the case and a minimal grasp on the facts, demonstrates that

15  Class Members are happy with the relief provided by the Settlement. In any event, a perpetual

16  injunction is not necessarily preferable, as the mechanics of the Roblox universe will inevitably

17  change, perhaps in ways that completely moot the issues in this case.

18      With respect to TINA's complaint that Roblox's website does not describe the nature of

19  the refund program, and that its Terms of Service have not yet been updated to reflect it, TINA

20  seems to forget that the Settlement does not become effective until the Court grants final approval.

21  *See* Settlement ¶ 1.12 (defining "Effective Date"). Roblox is not obligated to implement the terms

22  of the Settlement until that date.

23      TINA then complains that most Class Members will receive their portion of the Settlement

24  proceeds in the form of Robux, but again its arguments fail to persuade. First, TINA suggests that

25  the $10 minimum award required to recover losses under the Settlement in US Dollars, as opposed

26  to Robux, "bears no relationship to the facts of this case." *See* Dkt. 79-2 at 10. But what it *does*

27  bear a relationship to is the cost of administering the Settlement. Given that the average Class

28  Member lost only $2.60 and the Settlement recovers approximately 46.5%, the average Class

1    Member's gross recovery is $1.20 (*i.e.*, before deduction of costs). TINA seems unconcerned with

2    the fact that there is simply no cost-effective way to distribute such a sum to 8 million people.

3    Postage alone costs $0.66 these days. *See* https://www.usps.com/business/prices.htm. If every

4    single Settlement Class Member were eligible to receive their share of the Settlement in cash, the

5    administration costs would be around $11 million, *see* September 7, 2023 Declaration of Yaman

6    Salahi ("Fourth Salahi Decl.") ¶ 3, $1 million more than the Settlement Fund and over 50% of the

7    total amount in controversy in this litigation ($21.5 million). Class Counsel obtained those

8    estimates during settlement negotiations with Roblox in July 2022, and thereafter had to negotiate

9    and structure a settlement accounting for that reality. *Id.* ¶¶ 3-6. When Class Counsel raised this

10   practical obstacle to TINA before it filed its proposed amicus brief, TINA's representatives

11   dismissed it as not their problem to worry about—which is true, but it was an issue that Class

12   Counsel, who actually has obligations to their client and the proposed Class, had to account for.

13   *See* Dkt. 82-1 at 4. It is for this reason that courts often approve minimum disbursements, and that

14   a minimum disbursement level makes sense here. *See*, *e.g.*, *In re MGM Mirage Sec. Litig.*, 708

15   Fed. App'x 894, 897 (9th Cir. 2017) (holding district court did not abuse discretion in approving

16   allocation plan with a minimum $10 threshold because "issuing very small checks to class

17   members would cause a disproportionate administrative expense" and because "smaller checks,

18   such as those under $10, in many instances are never cashed"); *Destefano v. Zynga, Inc.*, No. 12-

19   cv-04007-JSC, 2016 WL 537946, at *4, *15 (N.D. Cal. Feb. 11, 2016) (approving settlement with

20   $10 threshold "due to the expenses associated with administering the claims"); *City of Livonia

21   Emp.'s Ret. Sys. v. Wyeth*, No. 07 Civ. 10329(RJS), 2013 WL 4399015, at *2-*3 (S.D.N.Y. Aug.

22   7, 2013) (observing that courts have approved disbursement thresholds as high as $50 to ensure

23   efficient settlement administration and to avoid having administrative costs cut into class member

24   recoveries).

25          TINA also claims that any virtual currency relief is worthless, but this argument ignores

26   that nearly all Class Members have continued to use Roblox, and therefore can make immediate

27   use of Robux. In fact, according to Roblox, in the 6 months preceding preliminary approval (after

28   this lawsuit was already in progress), Settlement Class Members spent nearly 28 *billion* Robux on

the platform. *See* July 27, 2023 Declaration of Yaman Salahi (Dkt. 76) ("Third Salahi Decl.") ¶ 9. TINA may not like it, but Settlement Class Members are very engaged with the platform and continue to be.

Moreover, TINA does not consider the risks and expense of continued litigation, which are key to evaluating the relief provided by the Settlement. Here, the risks of continued litigation are significant. Indeed, while Plaintiff remains confident in her ability to prevail, the Settlement Class would face several hurdles to relief on the merits after a trial. First, a jury may not agree with Plaintiff that the Roblox marketplace is itself designed to induce the reasonable belief that purchased items will remain in the control of users. Or a jury might agree with Roblox that users have sufficient warning that items may be deleted such that any reliance on a contrary position is unreasonable. A jury finding in Roblox's favor would prevent the Class from recovering anything on their fraud-based claims. Moreover, the conversion claim faces a significant legal hurdle in that the allegedly converted goods are intangible, and without any apparent connection to a physical document. *See Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559, 1565 (1996). There is a serious risk that the Court might conclude at summary judgment that these virtual goods cannot be converted, or that all Class Members own is a revocable license to the virtual good, rather than the virtual good itself. Add to these risks the fact that even if the Class were to prevail, any success would not come for years. Both the class certification and summary judgment stages likely would have required the production of experts, and associated briefing on whether to qualify or exclude them, as well the development of a trial plan, and a trial itself. Either party also would be likely to appeal an adverse judgment, adding additional delay. *See Harrison v. Bank of Am. Corp.*, No. 19-cv-00316-LB, 2021 WL 5507175, at *3 (N.D. Cal. Nov. 24, 2021) (approving settlement that returned approximately 20% of total damages); *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 832-33 (N.D. Cal. 2017) (settlement representing at most 42% of potential recovery was fair and adequate, particularly since the settlement also included conduct relief); *see also Officers for Just.*, 688 F. 2d at 628 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair."). None of this is discussed in the objections, robbing them of persuasive force.

The Settlement's fairness is further augmented by the fact that Class Members need not do anything to receive Robux relief from the Settlement: the Settlement ensures that Robux Relief will be credited automatically to the Roblox accounts of Class Members. The Settlement also provided those entitled to a share of the Settlement worth at least $10 the option to receive their payout in cash, rather than Robux, and a further option to receive this distribution electronically. Only around 3% of those eligible to receive cash elected to do so, and those Class Members will receive, on average, around $40. That roughly 97% of those with a choice elected to receive their distribution in the form of Robux indicates that Class Members are both happy with this relief and satisfied with the method of distribution.

Finally, as discussed in the filing at docket entry 75 and *infra*, the attorney's fees here are reasonable. Thus, the relief provided by the Settlement is fair, reasonable, and adequate, supporting final approval.

### 4. The Settlement treats Class Members equitably relative to each other.

The final Rule 23(e) factor concerns whether the proposed settlement treats class members equitably relative to each other. The instant Settlement easily passes this test, as Settlement Class Members' recovery is calibrated to how much they lost when Roblox "moderated" items they had already purchased. *See In re MacBook Keyboard Litig.*, No. 5:18-CV-02813-EJD, 2022 WL 17409738, at *5 (N.D. Cal. Dec. 2, 2022) (settlement which contained tiered allocation plan depending on class member injuries "appears to treat Class members equitably relative to each other"); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008) ("It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits.").

Finally, while the Plaintiff has sought a service award, *see* Dkt. 75, that does not indicate inequitable treatment. Such awards are commonplace, and serve to recognize the valuable efforts of a class representative, without which this type of representative litigation and class settlement could not even exist. The basis for the award here is more fully explained in Plaintiff's motion for a service award, and is fully justified under governing law. The ultimate award is, of course, subject to Court approval, but for present purposes it suffices to note that Doe petitioned for an

award of $5,000. This is on the lower end of incentive awards in this District, constitutes only 0.05% of the proposed Settlement Fund, and is presumptively reasonable. *See In re Facebook Biometric Info. Priv. Litig.*, No. 21-15553, 2022 WL 822923, at *2 (9th Cir. Mar. 17, 2022) (noting that the Ninth Circuit "regularly uphold[s] incentive awards" of $5,000); *In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 534 (N.D. Cal. 2020) (noting that a $5,000 award is "presumptively reasonable"). Thus, this additional allocation of funds is equitable. *See Evans v. Zions Bancorp., N.A.*, No. 2:17-CV-01123 WBS DB, 2022 WL 16815301, at *5 (E.D. Cal. Nov. 8, 2022) (finding that $5,000 service awards comported with equitable treatment of class members); *see also Juarez*, 2022 WL 17722382, at *6 (noting that settlement's provision for an incentive award did not indicate preferential treatment because any such award would need to be supported with evidence).

### D.    The objections do not demonstrate that Class Counsel's requested Attorney's Fees are unreasonable.

In seeking a fee award of 25% of the Settlement Fund, and just 5.4% of the total value of the Settlement to the Class (a total of $2.5 million), Class Counsel explained that this case is not governed by 28 U.S.C. § 1712(e) because this is not a coupon settlement, and because Class Counsel's efforts justified a 25% award, which is equal to the benchmark award in this Circuit. Only one objector takes issue with Class Counsel's fee request, and proposed amicus TINA adds a few words on the subject as well. But neither filing shows either that this is a coupon settlement (necessitating a different method of calculating fees) or that a 25% award is unreasonable.

Objector Emerson suggests that Class Counsel's fee request is excessive because most Settlement Class Members are minors. *See* Dkt. 69. There is no obvious doctrinal reason that class members should be treated differently based on their age, and Class Counsel could locate no case endorsing Emerson's belief that attorney's fees must be reduced when the clients are young. Class Counsel were able to locate only a few decisions in class actions in which the class, as here, was composed exclusively or primarily of minors. In available fee orders, there is no hint that counsel should be denied compensation because of the age of class members, though these decisions are not based on the common-fund doctrine. *See Bohannon v. Facebook, Inc.*, No. 12-cv-01894-BLF,

2016 WL 9149505, at *1 (N.D. Cal. Aug. 5, 2016) (discussing fee award approved in case involving injunctive relief); *M.B. v. Howard*, 555 F. Supp. 3d 1047, 1091 (D. Kan. 2021) (awarding more than $2.2 million following settlement benefitting children in foster care, but under fee-shifting provision of federal civil-rights statute). And in common-fund cases in which minor children are likely a significant part of a certified class, fees have been awarded based upon the benefits that accrue to the entire class, not the age range of class members. *See, e.g.*, *In re TikTok, Inc. Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 943 (N.D. Ill. 2022) (awarding one-third of the fund in case with settlement class of all U.S.-based TikTok users).

To the extent Emerson's objection is merely that an award of 5.4% of the value to the Class is too large here, they do not identify any reason why a smaller award would more accurately reflect the work performed by Class Counsel here, or the results achieved. As explained more fully in Plaintiff's motion for attorney's fees, *see* Dkt. 75, an award of 25% of the cash fund or 5.4% of the value here accurately reflects the results achieved and the risk overcome. Moreover, the requested fee award amounts to a multiplier of approximately 3, which is well within the range of multipliers typically approved in this Circuit. *See In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, No. 4:14-md-2541-CW, 2017 WL 6040065, at *9 (N.D. Cal. Dec. 6, 2017) ("Indeed, multipliers of 4.0 and above are frequently applied in granting fee awards from common funds.").

TINA also contends that Class Counsel's requested fee award is disproportionate to the Settlement Class' recovery. But that contention is based upon TINA's own view of Robux as "worthless." The reaction of the Settlement Class tells us that TINA's assessment is not shared by most members of the Settlement Class. And, of course, it is the Class's outlook on the relief that matters, not TINA's. TINA's cases are inapposite, anyway. Much of TINA's authority focuses on settlements in which reverters and low claims rates mean that the Class actually realizes very little value from the Settlement. *See, e.g.*, *Lowery v. Rhapsody Int'l*, 75 F.4th 985, 990 (9th Cir. 2023) (although defendant promised to pay up to $20 million to class members, so few made claims that defendant ultimately paid out only $52,841.05); *Kim v. Allison*, 8 F.4th 1170, 1179 (9th Cir. 2021) (in age discrimination lawsuit against Tinder dating app, value of coupon relief overstated because

44% of the settlement class no longer used Tinder, and although $6 million in cash was available, Tinder paid out less than $45,000); *Briseño v. Henderson*, 998 F.3d 1014, 1026 (9th Cir. 2021) (in claims-made settlement, defendant paid out only 1% of potential $95 million in claims due to low claims rate). But that is not what is happening here. Here, every Settlement Class Member gets to realize value from the Settlement. And while it is true that many Class Members are ineligible for cash relief, that is because the cost of administering a settlement that included only cash relief would likely use up the entire settlement fund, preventing anyone from getting anything—these are mostly losses between $1–3, and often less. So instead, the relief here gets Class Members what they want: more Robux to use to replace moderated items in the Roblox metaverse nearly all of them continue to play in. There is real value in that. Class Counsel's fee request does not represent a disproportionate share of the value realized by the Settlement.

### E.    There are no objections to the proposed Service Award.

Plaintiff previously explained why the Court should issue a Service Award. *See* Dkt. 75. No opposition to the service award was lodged by the objectors or by TINA. The Court should issue the award for the reasons previously stated.

## V.    CONCLUSION

Accordingly, this Court should enter an order confirming certification of the Settlement Class for settlement purposes, confirming the appointment of Plaintiff Jane Doe to represent the Settlement Class, and Jay Edelson, Rafey S. Balabanian, J. Eli Wade-Scott, and Yaman Salahi of Edelson PC as Class Counsel and Mark S. Reich and Courtney E. Maccarone of Levi & Korsinsky, LLP as Liaison Counsel, finally approving the Settlement, ordering that the Settlement Fund be distributed to the Settlement Class in accordance with the Settlement, and entering a final judgment in this matter.

Date: September 7, 2023                By: */s/ Yaman Salahi*

Rafey S. Balabanian (SBN 315962)
rbalabanian@edelson.com
Yaman Salahi (SBN 288752)
ysalahi@edelson.com
Edelson PC
150 California Street, 18th Floor

San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

Jay Edelson (admitted *pro hac vice*)
jedelson@edelson.com
J. Eli Wade-Scott (admitted *pro hac vice*)
ewadescott@edelson.com
EDELSON PC
350 N LaSalle Street, 14th Floor
Tel: 312.589.6370
Fax: 312.589.6378

*Attorneys for Plaintiff and the Settlement Class*