UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE,<br><br>          Plaintiff,<br><br>     v.<br><br>ROBLOX CORPORATION,<br><br>          Defendant. | Case No. 21-cv-03943-WHO<br><br>**ORDER GRANTING FINAL APPROVAL AND AWARDING FEES AND COSTS**<br><br>Re: Dkt. Nos. 75, 79, 83 |

This matter came before this Court upon Plaintiff's Motion for Final Approval of Class Action Settlement (Dkt. 83) and Motion for Attorney's Fees and a Service Award (Dkt. 75). Based upon the memoranda, declarations, exhibits submitted, as well as the files and proceedings in this case, I find as follows:

1.      The terms and phrases in this order shall have the same meaning as in the Settlement Agreement (Dkt. 54-1).

2.      Plaintiff has moved the Court for an order granting final approval of the settlement of the Action in accordance with the Settlement Agreement ("Settlement"), which, together with its incorporated documents, sets forth the terms and conditions for a proposed settlement and dismissal of this case with prejudice. Having read and considered the Settlement Agreement and having heard the parties, I find that the Settlement is fair, adequate, and reasonable to the Settlement Class.  Accordingly, I grant final approval and confirm the  certification of the Settlement Class defined below for settlement purposes, as well as the appointment of Class Counsel and the Class Representative.

3.      I have subject-matter jurisdiction over the Action to approve the Settlement Agreement, including all attached exhibits, and personal jurisdiction over all Parties to the Action, including all Settlement Class Members.

**Certification of the Settlement Class**

4. On May 11, 2023, I preliminarily approved the Settlement, and certified, for settlement purposes, the Settlement Class consisting of:

> All individuals in the United States having a Roblox account prior to Preliminary Approval of this Settlement from which content on the Roblox platform was moderated and removed by Roblox.[1]

(Dkt. 67.) I confirm certification of the Settlement Class for purposes of entering final judgment.

5. I find that the Settlement is fundamentally fair, adequate, and reasonable, and, for the purposes of settlement only, that the Settlement Class satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, specifically, that: the Settlement Class is so numerous that joinder of all members is impracticable; there are questions of fact and law common to the Settlement Class (*e.g.*, whether Roblox had a practice of not refunding users for virtual items deleted from their accounts after they had acquired them, whether such conduct violated the California laws alleged in Plaintiff's Amended Complaint, and whether members of the Settlement Class are entitled to restitution, damages, and/or injunctive relief as a result); Plaintiff Jane Doe's claims are typical of the claims of the Settlement Class; Plaintiff and Class Counsel will fairly and adequately protect the interests of the members of the Settlement Class; common questions of law or fact predominate over questions affecting individual members; and a class action is a superior method for fairly and efficiently adjudicating the Action.

---

[1] I excluded from the Settlement Class (a) any Judge or Magistrate presiding over this action and members of their families; (b) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (c) persons who properly execute and file a timely request for exclusion from the Class; (d) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (e) the legal representatives, successors, and assigns of any such excluded persons; and (f) individuals who own one of 311 accounts that Roblox has determined spent over 80,000 Robux (equating to over $1,000) on moderated items and falls into one or more of these three categories: (1) the account used Robux to acquire the same virtual item multiple times, (2) the account used Robux to acquire a virtual item after that item had already been moderated, or (3) the account created a virtual item and then used Robux to acquire it themselves. These excluded accounts are identified in Exhibit D to the Settlement Agreement.

2

6.     I confirm the appointment of Jay Edelson, Rafey S. Balabanian, J. Eli Wade-Scott, and Yaman Salahi of Edelson PC as Class Counsel, Mark S. Reich and Courtney E. Maccarone of Levi & Korsinsky, LLP as Liaison Counsel, and Plaintiff Jane Doe, through her father and next of friend John Dennis, as Class Representative. These attorneys are competent and capable of exercising the responsibilities of Class Counsel and that Plaintiff has adequately protected the interests of the Settlement Class defined above.

**Notice to the Class Satisfies Rule 23 and Due Process**

7.     The parties and the Settlement Administrator have apprised the Court about the outcome of the Court-ordered notice plan.

8.     Simpluris, the Settlement Administrator, confirms that Roblox produced a class list identifying all of the Roblox accounts meeting the criteria for Class membership, along with associated Roblox account usernames, e-mail addresses, and unrefunded Robux spent on moderated items for each Class Member. In total, there were approximately 16.2 million Roblox accounts belonging to approximately 8 million Class Members. The class list included e-mail addresses for approximately 7.4 million Class Members, or 92.5% of the Class. The Settlement Administrator delivered the e-mail notice to every e-mail address available, and they were successfully delivered to approximately 6.7 million e-mail addresses, or 90.5% of the available e-mail addresses. The e-mail notice to Class Members who were eligible to choose a cash refund also included a unique Claim ID and a link to the Claim Form on the Settlement Website. A reminder e-mail was also sent to eligible Class Members 30 days before the claim and exclusion deadlines.

9.     In addition to e-mail notice issued by the Settlement Administrator, Roblox delivered the court-ordered notice to Class Members' "My Inbox" feature on the Roblox platform. This was successfully delivered to all Class Member accounts, except 144 accounts for whom the account holder had previously exercised their right to have Roblox delete their account records and associated data (Dkt. 86).

10.    In total, direct notice was delivered to over 99% of the Settlement Class. As the Court previously held, the Notice documents as revised by the Court, clearly and plainly

3

described Class Members' rights under the Settlement; advised them of what actions they might take; directed them to the dedicated Settlement Website containing various documents from the case (including Plaintiff's Fee Petition), the ability to file a claim form, a toll-free number which Class Members could call for questions, and an e-mail address for questions.

11. Based on the record before the Court, I find that the Notice program, as implemented, was the best practicable notice under the circumstances. The Notice was reasonably calculated to apprise the Settlement Class of the pendency of the Action and their rights to object to or exclude themselves from the Settlement Agreement and to appear at the Final Approval Hearing. Therefore, the Notice was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice including all necessary information to protect the interests of the Settlement Class and fulfilled the requirements of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution, and the rules of this Court.

12. I find that the appropriate government officials were properly and timely notified of the Settlement Agreement, pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715. Dkt. 85. As required by CAFA, more than ninety (90) days have elapsed between the date since notice was provided pursuant to CAFA and the Final Approval Hearing.

**Final Approval of the Settlement**

13. Rule 23(e)(2) requires the Court to find that the settlement is "fair, reasonable, and adequate" after considering whether: (A) the class representative and class counsel have adequately represented the class; (B) the settlement was negotiated at arm's length; (C) the relief provided for the class is adequate; and (D) the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). Further, because of the pre-certification posture of this settlement, I must consider the factors identified by the Ninth Circuit in *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2011).

14. Adequacy:   I find that Class Counsel and Plaintiff have adequately represented the Class. I am satisfied that Class Counsel obtained adequate information about the scope of Roblox's alleged content moderation process, including how many accounts were affected, and

1  the in-game cost of moderated items, to be able to undertake settlement discussions in an
2  informed manner in light of their experience in this area of law.

3  15.  <u>Arm's Length Negotiations</u>:  The Settlement was negotiated at arm's length, with
4  both parties represented by experienced counsel, and with the assistance of a neutral third-party
5  mediator, Gregory Lindstrom of Phillips ADR. I am satisfied that the negotiations were conducted
6  at arm's length.

7  16.  <u>No Indicia of Collusion</u>: The Settlement states Class Counsel can request up to
8  25% of the fund, which is the benchmark in the Ninth Circuit. There was no clear-sailing
9  arrangement, as Roblox retained the right to oppose Class Counsel's fee request. And there is no
10 reverter or kicker clause in the Settlement, as Class Members can receive relief under the
11 Settlement automatically without the need to submit a claim form, and any funds that cannot be
12 distributed will not be returned to Roblox.

13 I had some concerns about the structure of the Settlement.  In particular, that the
14 Settlement's initial $3,000,000 cash payment would be exhausted by attorney fees, expenses, and
15 costs of class administration, and the second "payment" of "$7,000,000 less the amounts being
16 paid out in the form of Robux Relief" (Settlement § 2.1) would be non-existent given that the
17 majority of that amount would be "paid back" as Robux to class members.  That structure means
18 the only out-of-pocket payment made by Roblox is the $3,000,000 initial payment that is nearly
19 exhausted by attorney fees and costs.  That raises the specter that the Settlement was more in
20 favor of class counsel than class members.

21 However, as discussed below, given the particular nature of the claims alleged
22 (moderation of very low-cost items), as well as the impracticability of providing a cash remedy to
23 class members (given the average loss by class members is $2.60), I believe that providing a
24 remedy payable in virtual currency, Robux, is fair, adequate and reasonable and a sensible
25 approach.  Given the supplemental information provided by Class Counsel and not disputed by
26 defendant that only 144 accounts have been closed whose cash relief would amount to only
27 $80.00, the representations regarding the difficulty defendant would have to identify accounts that
28 have been abandoned (given the seasonal nature of the use of many accounts by minors), and the

United States District Court
Northern District of California

overwhelmingly positive response to the noticed settlement, my concerns regarding only the attorneys in effect benefitting from the cash fund through this litigation have been allayed. In sum, I do not see any problematic signs of collusion in reaching this settlement.

17. <u>Relief for the Class</u>: Given the nature of the claims (moderation of virtual content purchased with Robux), the Settlement provides meaningful relief for the Class. The Class's estimated losses at time of Settlement were approximately 1.7 billion Robux, which Class Counsel valued at 1 Robux = $0.0125, meaning the amount in controversy was estimated to be approximately $21.5 million. The Settlement at $10 million recovers approximately 46.5% of Class Member losses. Additionally, the Settlement requires Roblox to maintain the automatic refund program for the next four years. Under that program, Roblox will automatically refund Robux to every user whose purchased content is later removed by Roblox, so long as the user themselves was not responsible for a Terms of Service violation. Class counsel maintain that had this program been in place at the outset, it would have prevented over $25 million in Class Member losses that precipitated this lawsuit. Class Counsel project that the value of prospective relief over the next four years is approximately $31 million. In light of the posture of the case, and the costs, risks, and benefits of proceeding through trial, the Court agrees that the relief secured is fair, reasonable, and adequate. Moreover, there were no negative reactions from State Attorneys General to the proposed Settlement or from Class Members. There was only one objection from a Class Member and one set of broader objections submitted by a proposed amicus. Those will be addressed below. Finally, while 934 persons (representing 1047 accounts) have opted out of the Class, that represents a small percentage considering that the class size is approximately 8,000,000 members and not indicative of widespread dissatisfaction.

18. <u>Objections</u>: I have considered the two objections from Vincent Panetta and Jacob Emerson. They do not warrant rejection of the Settlement. With respect to Objector Panetta, Dkt. No. 70, he may not be a Class Member but I have nevertheless considered his objection, that takes no issue with the relief secured by the Settlement but suggests that the lawsuit should be expanded to cover additional conduct by Roblox beyond the content-moderation scheme at issue. *Id*. That objection is OVERRULED. The second objection from Objector Emerson, Dkt. No. 69,

1  contends that Class Members should have received full refunds of all the Robux they lost, as well
2  as additional compensation. That objection is OVERRULED. The nature of a settlement is
3  compromise, and a settlement need not secure 100% relief (or more than 100% relief) to be fair,
4  reasonable, and adequate.

5      19. <u>Amicus Objection</u>: I have also reviewed the proposed amicus brief by Truth In
6  Advertising, Inc. ("TINA"). I GRANT TINA's motion for leave to file the amicus brief (Dkt. No.
7  79) and allowed TINA's counsel to appear at the Final Approval Hearing where counsel rested on
8  the points made in the brief. I have considered each of the arguments TINA raises opposing
9  approval of the Settlement and REJECT them. The injunctive relief provided by the Settlement is
10 not illusory; it requires Roblox to adhere to the automatic refund policy for four years, giving
11 significant value to the class. Whether or not Roblox alters its Terms of Service following the
12 final approval in this case mandating the injunctive relief will be seen. But if Roblox fails to
13 follow the Court-approved relief or otherwise fails to provide the ongoing value to class members,
14 TINA or Class Counsel should inform me that the Settlement is not being adhered to. Regarding
15 the other relief provided to the class, the crediting of Robux to users' accounts, that relief is more
16 cost-effective and will be more useful to millions of Class Members than attempting to return the
17 average cash value of $1.20 to Class Members. The costs of administering a program to return
18 that small an amount to millions of Class Members would extinguish any benefit to class
19 members. Here, where Class Counsel have represented to the Court that the vast majority of the
20 approximately eight million Class Members continue to be active, ongoing users of the Roblox
21 platform and had spent over 28 billion Robux in prior six months, returning almost 50% of what
22 Class Members lost (the value of their Robux purchases) to them is a sensible and adequate
23 Settlement.

24      20. <u>Equitable Treatment</u>: The Court also finds that the proposed Settlement treats
25 Class Members equitably. Each Class Member's recovery is determined pro rata in proportion to
26 their individual losses at issue. And although Plaintiff seeks a service award, the amount I award
27 does not indicate inequitable treatment because it constitutes less than 0.05% of the proposed
28 Settlement Fund, is in line with comparable service awards in this District, and, as explained more

fully below, reasonably compensates Plaintiff for the responsibilities and risks she undertook to bring this case to benefit the rest of the Settlement Class.

21. In sum, I find that the Settlement Agreement is fair, reasonable, and adequate, may be approved pursuant to Federal Rule of Civil Procedure 23(e)(2), and is in the best interests of the Settlement Class set forth above. I further find that the Settlement Agreement substantially fulfills the purposes and objectives of the Class Action and provides substantial relief to the Settlement Class without the risks, burdens, costs, or delay associated with continued litigation, trial, and/or appeal. I also find that the Settlement Agreement is the result of arm's-length negotiations between experienced class action attorneys familiar with the legal and factual issues of this case.

22. The Settlement Agreement is hereby finally approved in all respects. The Parties and their counsel are directed to implement and consummate the Settlement Agreement according to its terms and conditions, unless modified by the Court. The Parties and Settlement Class Members are bound by the terms and conditions of the Settlement Agreement.

23. Other than as provided in the Settlement Agreement and this Order, the Parties shall bear their own costs and attorneys' fees.

24. Subject to the terms and conditions of the Settlement Agreement, this Court hereby enters this Final Approval Order and dismisses the Action on the merits and with prejudice.

25. Upon the Effective Date of the Settlement Agreement, Plaintiff and each Settlement Class Member and their respective present or past heirs, executors, estates, administrators, assigns and agents, and each of them, shall be deemed to have released, and by operation of this Final Approval Order shall have, fully, finally, and forever released, acquitted, relinquished and completely discharged Roblox Corporation and all of its present or former administrators, predecessors, successors, assigns, parents, subsidiaries, holding companies, investors, sister and affiliated companies, divisions, associates, affiliated and related entities, employers, employees, agents, representatives, consultants, independent contractors, directors, managing directors, officers, partners, principals, members, attorneys, vendors, accountants, fiduciaries, financial and other advisors, investment bankers, insurers, reinsurers, employee

benefit plans, underwriters, shareholders, lenders, auditors, investment advisors, and any and all present and former companies, firms, trusts, corporations, officers, and directors from any and all claims, complaints, actions, proceedings, or remedies of any kind, whether known or unknown (including, without limitation, claims for attorneys' fees and costs and "Unknown Claims" as defined in the Settlement Agreement), whether in law or in equity, under contract, tort or any other subject area, or under any statute, rule, regulation, order, or law, whether federal, state, or local, on any grounds whatsoever, arising prior to the Effective Date, that were, could have been, or could be asserted by the Releasing Parties arising from or related to the deletion, removal, or moderation of virtual items obtained with Robux on the Roblox platform.

26. The persons in Settlement Class on Exhibit A to the Salahi Decl., Dkt. 84, have submitted a valid, timely request for exclusion from the Settlement Class and are hereby excluded.

**Motion for Attorney's Fees and Service Award**

27. Plaintiff has also petitioned the Court for an award of attorney's fees equivalent to 25% of the Settlement Fund, or $2.5 million. At the Preliminary Approval hearing I directed counsel to address whether the Settlement, which in effect returns only Robux to Class Members, should be considered a coupon settlement under CAFA, 28 U.S.C. § 1712. Having considered the plaintiff's briefing on the issue and the factors mandated by Ninth Circuit precedent,[2] it is a close call whether this Settlement should be considered a coupon settlement governed by Section 1712. Looking at the factors, Class Members do not have to spend more of their own money on the Roblox platform before taking advantage of the credited Robux, but they only receive value if they are still using and continue to use the platform. At the Preliminary Approval and Final Approval hearings, Class Counsel was not able to identify how many potential class members had truly inactive accounts. While I accept the representation that many account are used seasonally

---

[2] *See In re Easysaver Rewards Litig.*, 906 F.3d 747, 755 (9th Cir. 2018) ("(1) whether class members have to hand over more of their own money before they can take advantage of a credit, (2) whether the credit is valid only for select products or services, and (3) how much flexibility the credit provides, including whether it expires or is freely transferrable." (internal quotations omitted)).

and used more when children are not in school, no information was submitted concerning the number of accounts, for example, that were inactive for a year or more. Counsel did provide information showing that only 144 accounts – out of nearly eight million users – had been closed and submitted information that current users of the platform had spent nearly 28 billion Robux in prior six months. Finally, only 3% of Class Members who were eligible to ask for a cash payment (those who would receive $10 or more cash value from the Settlement) did so, indicating that Class Members found real value in the Settlement. This information, and the positive class response, confirms that there is significant value to the Class from the Settlement. And while the refunded Robux can only be used on the Roblox platform, they do not expire, they can be transferred between users, and Class Counsel represented that the amount of Robux being refunded on average to Class Members would be sufficient to purchase "tens of thousands" of items on the platform. Class Members can use the refunded Robux exactly for the purpose they were initially bought for.

28.     That said, the reality is that the relief provided by the Settlement encourages more use of the platform and, at the end of the day, future use and more business for defendant. Weighing the factors together, whether Section 1712 governs this Settlement is a close call. Assuming for present purposes that the Settlement is a coupon settlement under CAFA, once the Settlement is effectuated the refunds will automatically hit each Class Members' accounts and (given the usage rate of Class Members) will likely be used or "redeemed" essentially upon receipt into the users' accounts. As use of the refunded Robux will be almost guaranteed and almost instantaneous once the Robux hit users accounts, there is an adequate basis to proceed and determine attorneys' fees at this juncture.[3]

29.     Having determined that it is appropriate for me to consider and award attorney fees at this juncture, as indicated in the Final Approval Hearing, I award Class Counsel $2,000,000. That is 2/3 of the cash portion of the Settlement Fund and 20% of the value of the total $10

---

[3] As explained below, under this Court's practice 20% of the attorney fees awarded will be held back until the mandated "Post-Distribution Accounting" is submitted. In that Accounting, Class Counsel shall address usage rates of the refunded Robux, to the extent that information can be ascertained, as well as any updated information regarding inactive or closed accounts.

1   million Settlement Fund (including the cash component and the refunded Robux component).
2   The $2,000,000 award is reasonable considering Class Counsel's lodestar ($815,160), resulting in
3   a multiplier of 2.45.  It is also reasonable considering the benefit to the Class from the Settlement.
4   As noted above, there is apparent and significant value to the Settlement, although at the end of
5   the day it likely encourages continued use of the Roblox platform.  Considering the overall value
6   (recognizing the failure of Class Counsel to adequately address the inactive account issue),
7   Counsel's lodestar, and the novel issues raised in this case that resulted in elimination of virtual
8   items originally purchased with real money and now being refunded with virtual currency, I find
9   that a $2,000,000 award is fair and reasonable.

10      30.     Class Counsel also request reimbursement of $17,732.34 in costs related to the
11  prosecution of this litigation, primarily the mediation fees necessary to secure the assistance of
12  Phillips ADR. The remaining costs are standard litigation costs such as copying costs, travel
13  costs, and filing fees. I find that the request for reimbursement is reasonable and I GRANT it.

14      31.     Plaintiff also seeks a $5,000 service award for the minor class representative who
15  agreed to take on the potential burdens required by her, including discovery and trial obligations,
16  as well as the possible risk of retaliation by Roblox through deletion of her accounts. She and her
17  parent aided Class Counsel in investigating the case, responding to Roblox's motion to dismiss,
18  and in preparing for discovery.  However, formal discovery was not secured, she was not
19  deposed, she did not attend the mediation, and the case did not proceed to trial.  Considering all
20  the circumstances of her participation, I find an award of $3,000 is fair and reasonable, as it
21  adequately compensates Plaintiff for securing the benefits for the Class and represents less than
22  0.05% of the Settlement Fund.

23  **Conclusion**

24      32.     For the reasons stated herein, the Court hereby **GRANTS** Plaintiff's motion for
25  final approval and the motion for attorney fees, service awards, and costs in the amounts
26  identified above.

27      33.     Counsel for the Parties and the Settlement Administrator are hereby authorized to
28  utilize all reasonable procedures in connection with the implementation of the settlement which

11

1    are not materially inconsistent with either this Order or the terms of the Settlement Agreement,

2    including disbursement of relief to the Class, the Settlement Administrator's fee, the Plaintiff's

3    service award, and Class Counsel's attorney's fee and costs.

4        34.    The Court further authorizes the Parties, to submit for Court approval,

5    amendments, modifications and expansions of the Settlement and its implementing documents

6    (including all Exhibits to this Settlement Agreement).

7        35.    Without affecting the finality of this Final Approval Order for purposes of appeal,

8    the Court retains jurisdiction as to all matters related to the administration, consummation,

9    enforcement, and interpretation of the Settlement Agreement and this Final Approval Order, and

10   for any other necessary purpose.

11       36.    Class counsel shall file a post-distribution accounting within 21 days after the

12   distribution of Robux to Class Members' accounts or after the Settlement checks or funds issued

13   to the few class members who have requested cash payments become stale, as required by the

14   Northern District of California's Procedural Guidance for Class Action Settlements, available at

15   https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/.  The post-

16   distribution accounting shall also discuss information regarding closed or inactive accounts (to the

17   extent that information is ascertainable), and discuss any significant or recurring concerns

18   communicated by class members to the settlement administrator or counsel since final approval,

19   any other issues in settlement administration since final approval, and how any concerns or issues

20   were resolved.  Counsel shall submit a declaration from the Settlement Administrator, describing

21   the costs of the administration that were paid from the Settlement Fund, not to exceed $350,000.

22   Finally, counsel shall propose distribution of any cash funds remining in the settlement account to

23   an appropriate cy pres recipient for Court approval.

24       37.    The Court will withhold 20% of the attorney's fees granted in this Order (those

25   funds shall be maintained by the Settlement Administrator) until the post-distribution accounting

26   has been filed.  Class counsel shall file a proposed order releasing the remainder of the fees when

27   they file their post-distribution accounting.

28       38.    This matter is set for a further case management conference on April 2, 2024, with

a case management statement due on March 26, 2024.  The parties may request that the case management conference be continued if additional time is needed to complete the tasks and compile the information required.  The conference may be vacated if the post-distribution accounting has been filed and the Court has released the remaining attorney's fees.

**IT IS SO ORDERED.**

Dated: October 5, 2023

William H. Orrick
United States District Judge